IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

'03 MR 25 PM 4:29

U.S. CLERK

| | |
|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>EOS GmbH Electro Optical Systems,<br><br>Defendant. | Civil Action No. A03 CA 113SS |

**ANSWER OF EOS GMBH ELECTRO OPTICAL SYSTEMS TO COMPLAINT
OF THE BOARD OF REGENTS, THE UNIVERSITY OF TEXAS SYSTEM,
AND 3D SYSTEMS, INC. FOR INFRINGEMENT
OF U.S. PATENT NO. 5,597,589 AND U.S. PATENT NO. 5,639,070**

Defendant EOS GmbH Electro Optical Systems ("EOS"), by counsel, answers the

Complaint by the Board of Regents, The University of Texas System ("UT"), and 3D

Systems, Inc. ("3D Systems") and asserts the following affirmative defenses and

counterclaims:

## THE PARTIES

1.    Plaintiff Board of Regents, The University of Texas System (the "University") is

the body delegated by the Texas Legislature to administer the University of Texas System, an

organization of academic universities, health institutions and schools located in the State of

Texas.

**ANSWER:**

EOS lacks sufficient information to either admit or deny the allegation of this

paragraph, and therefore denies the same.

3

2.    Plaintiff 3D Systems, Inc. ("3D Systems") is a California corporation that maintains its principal place of business in Valencia, California.

**ANSWER:**

Admitted on present information and belief.

3.    Defendant EOS GmbH Electro Optical Systems ("EOS") is an entity organized and existing under the laws of Germany and maintains its principal place of business in Planegg/Munich, Germany.  EOS does business on a regular basis in the United States, including in the state of Texas.

**ANSWER:**

EOS admits the allegation of the first sentence, except its principal place of business is Krailling, Germany.  EOS denies the allegations of the second sentence.

<u>**JURISDICTION AND VENUE**</u>

4.    This action arises under the patent laws of the United States, Title 35, United States Code. The jurisdiction of this Court is proper under 35 U.S.C. §§ 271, *et seq*., and 28 U.S.C. §§ 1331 and 1338.

**ANSWER:**

Admitted that the Complaint alleges an action for patent infringement, but denied that any infringement has occurred.

5.    Personal jurisdiction exists generally over EOS because EOS has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Texas and this district.

**ANSWER:**

Denied.

6.      Venue is proper in this Court under 28 U.S.C. §§ 1391(c) and 28 U.S.C.

§ 1400(b).

**ANSWER:**

Denied.

## BACKGROUND

7.      Laser sintering is a method for producing parts layer-by-layer by means of heat

sintering (that is, fusing or melting) powder with a laser. Dr. Carl R. Deckard initiated his

research and development of the method while a student at the University, which thereafter

exclusively licensed the technology (and patents relating thereto) to a company first known as

Nova Corporation, and which later changed its name to DTM Corporation. DTM Corporation

introduced the first commercial laser sintering machines. EOS, after having seen the DTM

Corporation laser sintering machines, manufactured and sold, and continues to manufacture

and sell, laser sintering machines. 3D Systems acquired DTM Corporation in 2001.

**ANSWER:**

This paragraph is vague and ambiguous in large measure. To the extent understood,

all allegations are denied, except that EOS does manufacture and sell machines for forming

objects through a so-called laser sintering process.

## COUNT I:
## INFRINGEMENT OF UNITED STATES PATENT NO. 5,597,589

8.     On January 28, 1997, United States Patent No. 5,597,589 ("the '589 Patent"),
entitled "Apparatus for Producing Parts by Selective Sintering," was duly and legally issued
to the University, with Carl R. Deckard named as inventor. Since that date, the University has
been, and still is, the owner of the '589 Patent.

**ANSWER:**

    Admitted that U.S. Patent 5,597,589 (the '589 Patent") indicates on its face that it was
issued on January 28, 1997 with Carl R. Deckard as a named inventor, with the Board of
Regents, The University of Texas System, as assignee. EOS is without sufficient knowledge
as to whether UT is the owner of the '589 Patent and therefore denies the same. It is denied
that the '589 Patent was duly and legally issued.

9.     3D Systems is the exclusive licensee of the '589 Patent and has the right, with
the University, to enforce the '589 Patent against infringement by third parties, including
infringement by EOS.

**ANSWER:**

    EOS is without sufficient knowledge as to the present standing of the alleged patent
rights of 3D Systems and therefore denies the same, although on information and belief, DTM
Corporation was an exclusive licensee of the '589 Patent and 3D Systems succeeded to those
rights. Denied that there is any infringement by EOS.

10.   EOS is infringing the '589 patent, under 35 U.S.C. §§ 271, *et seq.*, by making, offering to sell, selling, and/or using within the United States and, upon information and belief, importing into the United States machines covered by the '589 Patent.

**ANSWER:**

Denied.

11.   EOS will continue to infringe the '589 Patent unless enjoined by this Court.

**ANSWER:**

Denied.

12.   On information and belief, EOS was aware of the '589 Patent prior to its infringement thereof, and EOS's infringement has been willful and continues to be willful.

**ANSWER:**

Denied.

## COUNT II:
## INFRINGEMENT OF UNITED STATES PATENT NO. 5,639,070

13.   On June 17, 1997, United States Patent No. 5,639,070 ("the '070 Patent"), entitled "Method for Producing Parts by Selective Sintering," was duly and legally issued to the University, with Carl R. Deckard named as inventor.  Since that date, the University has been, and still is, the owner of the '070 Patent.

**ANSWER:**

Admitted that U.S. Patent 5,639,070 ("the '070 Patent") indicates on its face that it was issued on June 17, 1997 with Carl R. Deckard as a named inventor, with the Board of Regents, The University of Texas System, as assignee.  EOS is without sufficient knowledge

as to whether UT is the owner of the '070 Patent and therefore denies the same.  It is denied that the '070 Patent was duly and legally issued.

14.    3D Systems is the exclusive licensee of the '070 Patent and has the right, with the University, to enforce the '070 Patent against infringement by third parties, including infringement by EOS.

**ANSWER:**

EOS is without sufficient knowledge as to the present standing of the alleged patent rights of 3D Systems and therefore denies the same, although on information and belief, DTM Corporation was an exclusive licensee of the '070 Patent and 3D Systems succeeded to those rights.  Denied that there is any infringement by EOS.

15.    EOS is infringing the '070 Patent, under 35 U.S.C. §§ 271, *et seq*., by making, offering to sell, selling, and/or using within the United States and, upon information and belief, importing into the United States machines which practice the methods covered by the '070 Patent.

**ANSWER:**

Denied.

16.    By virtue of its importation, offers to sell and sales of machines which practice the methods covered by the '070 Patent, EOS has contributed to, continues to contribute to, and/or induces infringement of the '070 Patent under 35 U.S.C. §§ 271, *et seq*.

**ANSWER:**

Denied.

17.   EOS will continue to infringe the '070 Patent unless enjoined by this Court.

**ANSWER:**

Denied.

18.   On information and belief, EOS was aware of the '070 Patent prior to its infringement thereof, and EOS's infringement has been and continues to be willful.

**ANSWER:**

Denied.

### RELIEF

19.   EOS will continue to infringe the '589 and '070 Patents unless enjoined by this Court.

**ANSWER:**

Denied.

20.   The University and 3D Systems have suffered damages as a result of EOS's infringement of the '589 and '070 Patents.

**ANSWER:**

Denied.

### JURY TRIAL DEMANDED

21.   The University and 3D Systems request a trial by jury of all issues so triable in this action.

**ANSWER:**

No answer is required.

## EOS'S AFFIRMATIVE DEFENSES

1.    EOS does not infringe and has not infringed either the '589 Patent or the '070 Patent.

2.    Each of Plaintiffs' counts, and every purported cause of action asserted therein, fails to state a cause of action upon which relief can be granted.

3.    Plaintiffs are not entitled to any relief for alleged infringement because EOS is licensed under the '589 and '070 Patents.

4.    The '589 and '070 Patents are invalid for failure to satisfy the conditions of patentability set forth in at least 35 U.S.C. §§ 101, 102, 103 and 112, *et seq.*

5.    Plaintiffs have waived any right they otherwise may have had to assert each purported cause of action against EOS.

6.    Plaintiffs are not entitled to relief because each purported cause of action is barred, in whole or in part, by laches and/or equitable estoppel.

7.    Plaintiffs are not entitled to relief because each purported cause of action is barred, in whole or in part, by unclean hands, breach of fiduciary duty of 3D Systems to its exclusive licensee, and promissory estoppel.

8.    Plaintiffs are not entitled to relief because each purported cause of action is barred, in whole or in part, by collateral estoppel.

9.    Plaintiffs' enforcement, and attempts to enforce, the '589 and '070 Patents against EOS through accusations of infringement and the filing of patent infringement suits, based upon patent claims that they know are invalid and do not cover the accused products, constitutes patent misuse.

**WHEREFORE**, EOS prays for judgment on Plaintiff's Complaint as follows:

a.    That Plaintiffs take nothing by their claims against EOS, that judgment be entered in favor of EOS and that Plaintiffs' claims be dismissed with prejudice;

b.    That the '589 and '070 Patents be found invalid and/or unenforceable;

c.    That EOS be found not to infringe and that it has not infringed either the '589 Patent or the '070 Patent;

d.    That EOS is licensed under the '589 and '070 Patents;

e.    That EOS be awarded its attorneys' fees and costs of suit, and that EOS be awarded such other and further relief as this Court deems just and proper as against Plaintiffs on their Complaint.

## EOS'S COUNTERCLAIMS

EOS GmbH Electro Optical Systems ("EOS"), by and through its attorneys, makes the following counterclaims against Plaintiffs:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over EOS's counterclaims: for breach of contract, estoppel, breach of fiduciary duty and specific performance pursuant to pendant jurisdiction as well as 28 U.S.C. § 1338, the amount in controversy exceeding $100,000 (one hundred thousand dollars); and for violation of the Antitrust Laws of the United States under Title 15 United States Code § 1, *et seq.*, by 3D and UT, over which this Court has jurisdiction pursuant to 15 U.S.C. §§ 4, 15, 22, 26, and 28 U.S.C. § 1337(a); and for a declaratory judgment of invalidity and non-infringement, over which this Court has jurisdiction pursuant to 35 U.S.C. §§ 2201-02.

## PARTIES

2.    EOS is an entity organized and existing under the laws of Germany and having its principal place of business in Krailling, Germany.

3.    3D Systems, Inc. is a corporation organized and existing under the laws of the State of California. 3D Systems Corp. is, on information and belief, a Delaware corporation and an affiliate of 3D Systems, Inc. (collectively for these Counterclaims herein "3D"). Each has its principal place of business at 26081 Avenue Hall, Valencia, California 91355.

4.    DTM Corporation ("DTM") was a corporation organized and existing under the laws of the State of Delaware and having a place of business at 1611 Headway Circle, Building 2, Austin, Texas 78754. On information and belief, 3D acquired DTM on August 24, 2001, and merged DTM into 3D on August 31, 2001. 3D has asserted that it has succeeded to and assumed all of DTM's patent rights.

5.    The University of Texas System Board of Regents ("UT") is, on information and belief, an organization delegated by the Texas Legislature and existing under Texas law, which on information and belief has licensed patents to DTM/3D, including the patents asserted against EOS herein.

### COUNT I:  BREACH OF SETTLEMENT AGREEMENT AND LICENSE AGREEMENT BY 3D

6.    EOS incorporates ¶¶ 1 through 5 of its Counterclaims as if fully set forth herein.

7.    On August 27, 1997, 3D and EOS entered into a Settlement, Purchase and Transfer Agreement ("Settlement Agreement") under which they were, *inter alia*, settling proceedings then pending between 3D and EOS. In partial consideration of the settlement

between 3D and EOS, 3D Systems Corporation and EOS entered into a license agreement ("License Agreement").

8.    The Settlement Agreement granted EOS, *inter alia*, "the exclusive and worldwide royalty-free license for all patent rights applicable to the field of laser sintering." The License Agreement between 3D Systems Corporation and EOS granted to EOS "an exclusive, worldwide, personal, non-transferable and paid-up license under the Licensed Patents, to make, use, lease, sell, offer for sale, and import, products solely for use in the field of Laser Sintering." 3D Systems, Inc. ratified the License Agreement in the Settlement Agreement.

9.    EOS provided substantial consideration for the Settlement Agreement and the License Agreement and relied on 3D to honor its obligations, including its obligation to preserve, protect, and uphold EOS's exclusive rights under the Settlement Agreement and the License Agreement.

10.    3D has recently claimed that as a result of its merger with DTM, and the purported assignment of the License Agreement from 3D Systems Corporation to 3D Systems, Inc. effected therewith, 3D now can make, use and offer for sale laser sintering machines, systems, and methods under the patents which EOS has an exclusive license. As set forth above, 3D is so violating that exclusive license.

11.    3D has no right to make, use, sell, or offer for sale any machines, systems or methods falling within the scope of EOS's exclusive license in laser sintering. 3D is in breach of the Settlement Agreement and the License Agreement to the extent it does so.

12.   As a result of 3D's breach of its Settlement Agreement and License Agreement with EOS, EOS has been damaged and continues to incur damages in an amount to be determined at trial.

13.   Such breach by 3D was willful and malicious, as 3D had full knowledge that 3D has no rights under either the Settlement Agreement or the License Agreement as to the field of Laser Sintering.

## COUNT II:  LEGAL AND EQUITABLE ESTOPPEL AGAINST 3D

14.   EOS incorporates ¶¶ 1-13 of its Counterclaims as if fully set forth herein.

15.   3D made intentional and repeated representations to EOS, both orally and in writing, that the license set forth in the Settlement Agreement and the License Agreement was, in fact, an exclusive license to EOS in the field of Laser Sintering.  3D, by its words and conduct, did not reserve unto itself any rights under the licensed patents in the field of Laser Sintering.

16.   EOS entered into the Settlement Agreement and License Agreement with reliance upon the representations and conduct of 3D that this was an exclusive license to EOS, and that 3D had no reserved rights in the field of Laser Sintering, and 3D so intended EOS to act upon its representations and conduct.  These include, but are not limited to, oral representations made on February 5th and 6th 1997 by 3D (Charles Hull, Sidney Alpert and Art Sims) to Hans Langer; correspondence from Alpert to Steininger (EOS) of July 28, 1997, and of July 29, 1997; and the letter of intent executed on August 6, 1997.  EOS was never aware of any representations made by 3D, either implicitly or explicitly, that EOS did not have an exclusive license in the field of Laser Sintering or that 3D had reserved rights in the field of Laser Sintering.

17.   Both as an inducement to enter into the Settlement Agreement and License Agreement, and then after entry into the Settlement Agreement and License Agreement, 3D made specific representations of fact to EOS, including but not limited to written representations, including correspondence of December 17, 1996 from Charles Hull to Dr. Hans Langer; a March 27, 1997 letter from Sidney Alpert to Langer; and a March 25, 1998 letter from Dennis Smalley (3D) to Langer, that the exclusive rights conveyed to EOS covered infringements thereof by DTM and that these patent rights were enforceable against DTM.

18.   EOS reasonably relied upon the representations of complete exclusivity and patent coverage made by 3D as inducements in entering into the Settlement Agreement and License Agreement, and further relied upon the same thereafter in asserting the licensed patents against DTM, in a case that is currently pending in the Central District of California.

19.   EOS's reliance upon the representations and conduct of 3D was to EOS's great detriment, since EOS provided substantial consideration and greatly changed its position to obtain the sole and exclusive rights in Laser Sintering, and has committed tremendous resources in thereafter enforcing those rights against DTM.  That change in position included, among other things, EOS entering into certain covenants not to compete with 3D in liquid stereolithography and the transfer of intellectual property rights and other assets to 3D in the field of liquid stereolithography.  3D's present denial of the sole and exclusive rights in Laser Sintering conveyed to EOS, and its assertion that EOS cannot assert these rights against 3D in the field of Laser Sintering, is of extreme prejudice to EOS.

20. 3D is estopped by the terms of the Settlement Agreement and the License Agreement from taking any position that the rights extended to EOS thereunder are not exclusive to EOS alone, and that 3D has any rights thereunder whatsoever in Laser Sintering.

21. 3D is further estopped by its representations and conduct, upon which EOS justifiably relied to its great detriment, from taking any position that the rights extended to EOS thereunder are not exclusive to EOS alone and that 3D has any rights thereunder whatsoever in Laser Sintering, including ongoing post-merger conduct of 3D that is in violation of EOS's exclusive rights, to the extent 3D represented to EOS that these rights did so extend.

22. Unless so estopped, EOS has and will continue to be damaged, such damage including irreparable harm to EOS.

## COUNT III: SPECIFIC PERFORMANCE AGAINST 3D

23. EOS incorporates ¶¶ 1-22 of its Counterclaims as if fully set forth herein.

24. Under the terms of the Settlement Agreement and the License Agreement, 3D has been and remains bound to extend to EOS all exclusive rights under the licensed patents in the field of Laser Sintering. By virtue of the merger with DTM, this encompasses rights held by DTM, including the UT patent rights asserted against EOS herein.

25. Unless the terms of the Settlement Agreement and the License Agreement are specifically enforced, such that EOS has the bargained-for exclusivity, including the exclusion of 3D from the field of Laser Sintering encompassed by the licensed patents, EOS has been and will continue to be damaged, such damage including irreparable harm to EOS.

## COUNT IV:  BREACH OF FIDUCIARY DUTY BY 3D

26.   EOS incorporates ¶¶ 1-25 of its Counterclaims as if fully set forth herein.

27.   3D is in a position of trust with respect to its exclusive licensee EOS.  That position of trust includes a fiduciary duty not to diminish or otherwise harm the exclusivity granted to EOS.

28.   By merging with DTM and continuing thereafter the manufacture, use, sale and offer for sale of Sinterstation and VANGUARD Systems, and further by denying EOS's rights under the patent rights held by DTM, and now 3D, 3D has breached its trust and fiduciary duty to EOS.  As a result, EOS has been and will continue to be damaged, such damage including irreparable harm to EOS.

## PRAYER FOR RELIEF AGAINST 3D ON COUNTS I THROUGH IV

**WHEREFORE**, EOS prays for relief against 3D as follows:

a.     That 3D, its officers, agents, servants, employees and attorneys, and other persons in active concert or participation with 3D be permanently enjoined from breach of contract and breach of fiduciary duty;

b.     That 3D be found in breach under the Settlement Agreement and License Agreement it entered into with EOS, and that 3D be required to compensate EOS for 3D's breach of the Settlement Agreement and License Agreement in an amount to be determined at trial and in an accounting, and that all profits from 3D's breach of fiduciary duty be held in trust for EOS *pendente lite*;

c.     That the Court adjudge EOS be accorded specific performance of its exclusive rights under the Settlement Agreement and License Agreement;

d.    That the Court adjudge 3D to be estopped from denying, or otherwise taking any position or interest adverse to, exclusive rights in EOS under the Settlement Agreement and License Agreement, including the exclusion of 3D from making, using, selling or offering to sell machines, methods and the like under the licensed patents in the field of Laser Sintering;

e.    That EOS be awarded its attorneys' fees and costs of this action, interest on the award and other charges to the maximum extent permitted; and

f.    That EOS be awarded such other further relief as the Court deems just and proper under the circumstances.

## COUNT V:  FIRST ANTITRUST VIOLATION OF THE SHERMAN AND CLAYTON ACTS

29.    EOS incorporates ¶¶ 1 through 28 of its Counterclaims as if fully set forth herein.

30.    With only minor exception, 3D is the only manufacturer and seller of rapid prototyping ("RP") systems and related equipment based upon laser technology ("Laser RP Systems"), proprietary materials used in Laser RP Systems, and associated services for Laser RP Systems, in the United States.

31.    3D is the largest manufacturer and supplier of all types of industrial rapid prototyping systems and related equipment ("Industrial RP Systems"), which includes but is not limited to Laser RP Systems, proprietary materials used in Industrial RP Systems, and associated services for Industrial RP Systems in the United States.  3D sells its Laser RP Systems to customers located throughout the United States.

32.    Prior to August 2001, DTM designed, manufactured, marketed, and serviced Laser RP Systems and related materials used in Laser RP systems.

-16-

33.    RP is a process by which a machine transforms a computer design for a mechanical or other part into a three-dimensional prototype or model. Laser RP Systems and Industrial RP Systems are large machines, costing hundreds of thousands of dollars, that are able to create functional prototypes, tooling inserts, and low volume production quantities of parts.

34.    On April 2, 2001, 3D and DTM entered into an agreement and plan of merger, pursuant to which 3D acquired all outstanding voting securities of DTM in a cash tender offer (the "Merger Agreement".). According to the Merger Agreement, DTM became a wholly owned subsidiary of 3D.

35.    On information and belief, UT consented to the transfers of certain intellectual property that was required in order for the merger to occur. UT was an active participant in seeing that the merger occurred, and without UT's consent, the Merger Agreement would not have been entered into and the merger of 3D and DTM would not have taken place.

36.    The acquisition by 3D of and merger with DTM effectively reduced the number of competitors in the U.S. for Laser RP Systems from two to one. After the DTM merger, 3D equipment accounted for virtually 100% of the sales in the United States of Laser RP Systems. The acquisition by 3D of and merger with DTM reduced the number of competitors in the U.S. for Industrial RP Systems from three to two and have resulted in the combined company having a U.S. market share of at least 80% of the revenues from sales of industrial RP systems. The acquisition by 3D of and merger with DTM eliminated competition between 3D and DTM in the development, manufacture and sale of Laser RP Systems and of Industrial RP Systems.

37.   The development, manufacture, and sale of Laser RP Systems is a line of commerce or relevant product market within the meaning of the Antitrust laws. EOS and the merged 3D/DTM participate in the relevant market. Alternatively, the development, manufacture, and sale of Industrial RP systems is a line of commerce or relevant product market within the meaning of the antitrust laws. EOS and the merged 3D/DTM participate in the relevant market.

38.   DTM, 3D, and UT have used their patent rights as a barrier to imports of Industrial RP systems, and to suppress and eliminate domestic competition in Laser RP Systems and Industrial RP Systems and related materials and services.

39.   3D acquired and merged with DTM in part because 3D's management believed that, following the merger with DTM, "[3D] will have a sufficiently strong patent portfolio to prevent others from competing in the United States with respect to key technologies" for Laser RP Systems and Industrial RP Systems, according to a Private Placement Memorandum prepared by the investment banking firm of A.G. Edwards & Sons, Inc. for 3D.

40.   3D's acquisition of DTM eliminated any competition between the two companies, and substantially lessened competition and created an unlawful monopoly in interstate trade and commerce. 3D and DTM, by merging, through the agreement and active participation of UT, have improperly maintained and exercised market power and unreasonably restrained trade in the relevant markets in the United States. 3D, DTM, and UT have attempted to monopolize, and in fact have monopolized the foregoing markets, with an ongoing probability of continuing to successfully monopolize those markets in the future.

41.   On June 6, 2001, the U.S. Department of Justice, Antitrust Division, filed a complaint in the District Court in the District of Columbia, claiming that 3D's acquisition of

and merger with DTM violated the antitrust laws (the "Justice Department Antitrust Litigation").

42.   3D, with UT, have engaged in a pattern of conduct through which 3D has intended to exclude competitors in the Laser RP Systems and Industrial RP Systems markets from competition in the United States.  Among the acts that 3D and UT have committed with the intent of excluding competition are the following:

a.  Entering into agreements with manufacturers of materials that are necessary for the operation of Laser RP Systems and Industrial RP Systems through which 3D acquired exclusive distribution rights of such materials in the United States;

b.  Terminating distribution and development agreements with a manufacturer of materials that are necessary for the operation of Laser RP Systems and Industrial RP Systems in order to exclude competition for sale of such materials in the United States;

c.  Acquiring a manufacturer of materials that are necessary for the operation of Laser RP Systems and Industrial RP Systems in order to exclude competition from that competitor for sale of such materials in the United States;

d.  Threatening not to honor warranty or service claims made by customers of 3D's Laser RP Systems unless the customers agreed to purchase materials and services solely from 3D;

e.  Agreeing to settle the Justice Department Antitrust Litigation by licensing to a company (the "New Licensee") the rights to market Laser RP Systems in the United States, such that:

1. 3D purposefully did not select as the New Licensee any company that would be an effective competitor to 3D in the United States; and

2. 3D selected as the New Licensee a company that has to date, on information and belief, not sold any Laser RP System equipment in the United States; and

f. Engaging in the acts described in Count VI of this Counterclaim.

43.   3D and UT have maintained, and are attempting to continue to use, their monopoly power to prevent competition, and are engaging in anti-competitive conduct, resulting in damages to EOS and to U.S. consumers, including but not limited to costs and attorneys' fees in bringing this to Court, which damage is also irreparable if 3D and UT are not enjoined.

44.   EOS manufactures, markets, and services Laser RP Systems and related materials.  Since approximately 1997, EOS has planned to enter the United States to sell its Laser RP Systems and has expended substantial resources on attempts to begin sales of Laser RP Systems in the United States.  EOS is participating in the U.S. Industrial RP systems market through sales of powder used in RP machines, which sales are in interstate commerce in the U.S., and now has begun selling Laser RP Systems in the U.S.

45.   The customers for Laser RP Systems and Industrial RP Systems ("RP Customers") include original equipment manufacturers, governmental entities, and "service bureaus," which are companies that purchase industrial RP systems and then create prototypes for customers on an as-needed basis.

46.  As a result of the conduct of 3D and UT described in paragraphs 29 through 42, RP customers have paid higher prices for Laser RP Systems, Industrial RP Systems, related material and supplies, and services.

47.  As a result of the conduct of 3D and UT described in paragraphs 29 through 42, competitors of 3D and UT ("RP Competitors"), (a) have been excluded from participating in markets in the United States for RP equipment, materials, and services, and (b) have lost substantial profits as a result of being excluded from the U.S. markets for RP equipment, materials, and services.  EOS has been so affected, and 3D and UT have actively attempted to exclude EOS from participating in the relevant markets.

48.  Laser RP Systems and Industrial RP Systems manufactured outside of the United States by RP Competitors are in many cases less expensive than those made in the United States.  U.S. customers have not had access to foreign producers in the U.S. markets.  As a result of the conduct of 3D and UT described in paragraphs 29 through 47, RP Customers have not had access to the lower priced equipment and services produced by RP Competitors.

49.  As a result of the conduct of 3D and UT described in paragraphs 29 through 48, competition In the United States for Laser RP Systems, Industrial RP Systems, and related material and supplies has been substantially lessened and impaired.

50.  The conduct of 3D and UT described in this Count violates §§ 1 and 2 of the Sherman Act, and § 7 of the Clayton Act, as amended, 15 U.S.C. §§ 1, 2, and 18.

## COUNT VI:
## SECOND ANTITRUST VIOLATION OF § 2 OF THE SHERMAN ACT

51.  EOS incorporates ¶¶ 1-50 of its Counterclaims as if fully set forth herein.

52.   3D and UT have threatened and instituted infringement litigation based upon knowingly wrongful assertions of infringement that are objectively baseless with the intent by 3D and UT of restricting competition for the sale in the United States of Laser RP Systems and Industrial RP Systems.  3D and UT have improperly maintained and exercised market power and unreasonably restrained trade in the relevant markets for Laser RP Systems and Industrial RP Systems in the United States.  These activities have included not only an attempt to monopolize, with a dangerous probability of success of monopolization of, the foregoing market, but actual monopolization.

53.   3D and UT have unlawfully maintained their monopoly power through assertion of patent claims that 3D and UT know to be invalid.  In particular, corresponding patents EP 0 287 657, EP 0 542 729, JP 2620353 and G8718128 (German Utility model) all share the same priority (US 920580 and US 105316) as the '589 and '070 Patents.  Of these, the latter three have all been deleted or declared invalid by the corresponding patent offices and courts, and the former has been further restricted to the original disclosure.

54.   3D's and UT's acts of accusing EOS of infringing the patents in suit and filing this patent infringement suit based on knowingly invalid patent claims, and continuing to maintain their claim of infringement, are in bad faith and intend to exclude competition in the United States for sales of Laser RP Systems and Industrial RP Systems, all in violation of § 2 of the Sherman Act.

55.   EOS has been irreparably injured by these attempts to unlawfully monopolize the relevant market, and has been damaged in its business, including by being forced to defend against the claims of infringement, and will continue to be irreparably injured if 3D and UT are not enjoined from their activities.

## COUNT VII:  DECLARATORY JUDGMENT OF INVALIDITY

56.  EOS incorporates ¶¶ 1-55 of its Counterclaims as if fully set forth herein.

57.  The '589 Patent is invalid under 35 U.S.C. §§ 102, 103 and/or § 112.

58.  The '070 Patent is invalid under 35 U.S.C. §§ 102, 103 and/or § 112.

## COUNT VIII:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT

59.  EOS incorporates ¶¶ 1-58 of its Counterclaims as if fully set forth herein.

60.  EOS has not infringed and is not infringing the '589 Patent.

61.  EOS has not infringed and is not infringing the '070 Patent.

## PRAYER FOR RELIEF AGAINST 3D AND UT ON COUNTS V THROUGH VIII

**WHEREFORE**, EOS prays for relief against 3D and UT as follows:

1.  That this case be declared an exceptional case under 35 U.S.C. § 285 as to the Plaintiffs, and that EOS be awarded its attorney fees incurred in this action; and that EOS be awarded its attorney fees under the Antitrust laws;

2.  That the acquisition of DTM by 3D, with the participation of UT, as well as the attempted enforcement of the '589 and '070 Patents, be adjudged and decreed to be unlawful and in violation of the Antitrust laws;

3.  That 3D and UT, and all persons acting on their behalf, be permanently enjoined and restrained from carrying out any contract, agreement, understanding or plan, the effect of which would be to combine DTM with the operations of 3D, and which furthermore would restrain competition by EOS through enforcement of any patent rights acquired by 3D through merger with DTM;

4.  That the '589 Patent be adjudged invalid and not infringed;

5.   That the '070 Patent be adjudged invalid and not infringed;

6.   For an award of EOS's costs of this action, interest on the award and other

charges to the maximum extent permitted and that the same be trebled as allowed under the

Patent Laws and under the Antitrust laws;

7.   3D and UT be found to have misused the '589 and '070 Patents;

8.   EOS be awarded its actual damages, according to proof, trebled pursuant to law;

and

9.   That EOS be awarded such other and further relief as the Court may deem just in

the circumstances.

Respectfully submitted,

Date: March 25, 2003

Thomas H. Watkins
State Bar No. 20928000
Albert A. Carrion Jr.
State Bar No. 03883100
HILGERS & WATKINS P.C.
98 San Jacinto Boulevard
San Jacinto Center, Suite 1300
Austin, Texas  78701
(512) 476-4716
(512) 476-5139  Facsimile

Michael H. Baniak
Michael D. Gannon
BANIAK PINE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois  60606
(312) 673-0360
(312) 673-0361  Facsimile

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of ANSWER OF EOS

GMBH ELECTRO OPTICAL SYSTEMS TO COMPLAINT OF THE BOARD OF REGENTS,

THE UNIVERSITY OF TEXAS SYSTEM, AND 3D SYSTEMS, INC. FOR INFRINGEMENT

OF U.S. PATENT NO. 5,597,589 AND U.S. PATENT NO. 5,639,070 were served upon:

> Thomas R. Jackson
> JONES DAY
> 2727 North Harwood St.
> P.O. Box 660623
> Dallas, Texas   75266
>
> Philip E. Cook
> Robert W. Dickerson
> JONES DAY
> 555 W. Fifth Street
> Suite 4600
> Los Angeles, California   90013-1025

by deposit with the U.S. Postal Service as first class mail on March 25, 2003.

_____
Albert A. Carrion Jr.