

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No.  A03 CA 113SS |
| EOS GmbH Electro Optical Systems, | § § | |
| Defendant. | § § § | |

**PLAINTIFFS' MOTION TO BIFURCATE AND STAY ANTITRUST
COUNTERCLAIMS (COUNTS V AND VI) PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 42(b)**

Plaintiffs Board of Regents, The University of Texas System ("UT"), and 3D Systems, Inc. ("3D Systems"), hereby respectfully request that the Court bifurcate and stay two of defendant EOS GmbH Electro Optical Systems' ("EOS") counterclaims, specifically Counts V and VI, pursuant to Federal Rule of Civil Procedure 42(b). Plaintiffs also respectfully request a hearing on this motion.

## I.
## INTRODUCTION

In its answer to plaintiffs' complaint for patent infringement, defendant EOS asserts eight counterclaims against plaintiffs UT and 3D Systems. Six of those counterclaims (Counts I-IV and VII-VIII) allegedly are asserted only against 3D Systems, and relate to the patents at issue in plaintiffs' infringement claims and are, in many respects, "mirror image" claims. The remaining two counterclaims (Counts V and VI), however, allege violations of the federal antitrust laws,

with one of those claims (Count VI) being viable only if plaintiffs lose their patent claims and the Court finds that plaintiffs' attempt to enforce their patents was "objectively baseless."

The issues raised by the antitrust claims are complex and largely peripheral to the patent claims. Among other things, prosecution of the antitrust claims, if they are not dismissed pursuant to plaintiffs' concurrently filed motion to dismiss for failure to state a claim (which plaintiffs incorporate by reference), would involve sophisticated analysis of the "relevant product markets" potentially at issue in the case, the conduct of competitors and customers within such markets, and questions of the parties' "market power." The antitrust claims also would inevitably involve time-consuming analyses by economists and perhaps other retained experts. None of this activity would support the trial of the patent claims, and certainly not an early trial of the patent claims, as plaintiffs seek.

For these reasons, the two antitrust counterclaims should be bifurcated from the patent claims for purposes of the litigation. Keeping the antitrust and patent issues together would inevitably lead to a confusing and complicated trial. And, depending on the outcome of the patent litigation, at least one (and possibly both) of the antitrust claims will be rendered completely moot. Thus, staying the antitrust counterclaims will promote judicial economy.

In short, even if the Court were to deny plaintiffs' concurrently-filed motion to dismiss Counts V and VI, the Court should stay the resolution of the two antitrust claims until the patent issues are decided.[1]

---

[1] *Donnelly Corp. v. Reitter & Schefenacker USA Ltd.*, No. 1:00-CV-751, 2002 WL 31418042 (Aug. 13, 2002 W.D. Mich.) (court denied motion to dismiss but granted plaintiff's request to bifurcate the trial). Of course, if the Court grants plaintiffs' motion to dismiss Counts V and VI of the counterclaim, this motion to stay would become moot.

## II.
## STATEMENT OF FACTS

On February 26, 2003, plaintiffs filed suit against EOS alleging infringement of two patents, United States Patent No. 5,597,589 ("'589 Patent") and United States Patent No. 5,639,070 ("'070 Patent"), by making, offering to sell, selling, and/or using within the United States and importing into the United States machines covered by the '589 Patent and machines that practice the methods covered by the '070 Patent. (Complaint ¶¶ 8-16.)

On March 25, 2003, EOS filed its answer and counterclaims. Six of the eight counterclaims relate to the patent issues raised by the complaint. Two of the counterclaims, Counts V and VI, allege violations of United States antitrust laws, specifically the Sherman and Clayton Acts. (EOS Counterclaims, ¶¶ 29-55.) As explained more fully in plaintiffs' concurrently-filed motion to dismiss, EOS's antitrust claims have numerous fatal deficiencies that compel dismissal on the pleadings. But even if the Court permits either or both of those claims to proceed, the antitrust counterclaims should be bifurcated for trial, and all discovery regarding antitrust issues should be stayed pending resolution of the patent issues.

## III.
## ARGUMENT

A. **EOS's Antitrust Counterclaims Should Be Severed From The Patent Issues In The Litigation.**

Federal Rule of Civil Procedure 42(b) provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

FED. R. CIV. P. 42(b).[2] When deciding whether to bifurcate a trial, a court considers the following factors: (1) judicial economy; (2) convenience of the parties; (3) expedition; and (4) avoidance of prejudice and confusion. *See In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986).

It has become standard procedure for courts to bifurcate and sever patent issues (*i.e.*, infringement and validity) from antitrust issues. *Innotron*, 800 F.2d at 1084 ("The district court noted cases reflecting the now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim."); *Shell Oil Co. v. American Cyanamid Co.*, 219 U.S.P.Q. 275, 277 (S.D. Tex. 1982) ("It is common for courts to sever antitrust issues from patent validity and infringement issues.") (quoting *Henan Oil Tools, Inc. v. Eng'g Enterprises, Inc.*, 262 F. Supp. 629, 631 (S.D. Tex. 1966)); *Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 614 (D. Col. 2000) ("The majority of courts, when faced with a case involving claims of patent infringement by the patent holder and counterclaims of antitrust and unfair competition by the alleged patent infringer, bifurcate the case to hear the issues separately.").

In *Innotron*, after defendant Innotron included an antitrust counterclaim in its answer to the complaint and refused to agree to separately try the issues, plaintiff Abbott moved to stay Innotron's antitrust claims and for a separate, early trial of the patent infringement claims under Rule 42. *Id.*, 800 F.2d at 1078. Abbott argued that:

> denying separation would: (1) require extended delay of the patent trial, because discovery on the increasingly broad and complex antitrust issues was not even scheduled to be complete for well over a year; (2) unduly complicate presentation of the patent issues; and (3) reverse the court's earlier rulings. Abbott also argued that the trial of the patent issues would render it unnecessary to try many of Innotron's antitrust claims.

---

[2] Courts refer to the procedure sought under Federal Rule of Civil Procedure 42(b) interchangeably as a motion to separate, bifurcate, or sever issues for trial.

*Id.* at 1079. The district court agreed with Abbott, as did the Federal Circuit, and ordered "that the patent issues 'will be severed and tried first before the antitrust issues.'" *Id.* at 1078. After Abbott cited twenty-three cases from eight circuits, the court explained that the situation justifying bifurcation in those cases also applied in *Innotron*:

> (1) Economy is served because in the trial of the patent issues the validity of the patent and Innotron's affirmative defenses will be determined and will become law of the case and thus removed from trial on the [ ] antitrust issues;
> (2) Convenience of all is served in trying the less complex patent issues first;
> (3) Expedition is served because the patent issues on the present schedule will be ready for trial [first]; (4) Avoidance of prejudice and confusion is served in trying first the patent issues, without injecting the different counterclaim issues which require different proof and different witnesses.

*Id.* at 1085. *See also Ecrix*, 191 F.R.D. at 614 ("Bifurcation allows for (1) quicker resolution of the patent infringement issue as there is less discovery required, and (2) judicial economy as the antirust and unfair competition claims may not have to be heard if patent infringement is proved in the first trial"); *ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444, *5 (Jan. 9, 2002 N.D. Cal.) ("One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues") (quoting *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970).

Here, the facts clearly warrant bifurcation of the patent and antitrust issues. Just like the cases cited above, plaintiffs filed a complaint for infringement of two patents. EOS filed an answer and eight counterclaims, two of which assert violations of the Sherman and Clayton Acts. The issues underlying both categories of claims are, by their very nature, complex. Combining complicated and not overlapping issues results in extensive pre-trial and trial practice that is extremely cumbersome, all of which is highly likely to result in substantial jury confusion. *Shell Oil*, 219 U.S.P.Q. at 277 ("The burden placed on the trier of fact, be it judge or jury, in a case

involving patent validity, patent infringement . . . and antitrust violations . . . is at best a heavy one to bear.") Severing the antitrust claims from the patent issues would eliminate these problems entirely.

**B.     Discovery Concerning EOS's Antitrust Counterclaims Should Be Stayed Pending The Outcome Of The Patent-Related Claims.**

Patent claims typically are tried before any antitrust counterclaims. *ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444, *6 (N.D. Cal. Jan. 9, 2002) ("It is common practice in federal court to stay antitrust counterclaims until after the trial of the invalidity issue."). This sequencing is logical and efficient because, if the patents are valid, the antitrust claims often are moot or substantially diminished. *Shell Oil*, 219 U.S.P.Q. at 277 (holding that plaintiff's patent validity/infringement claims should be tried first and staying discovery on antitrust issues pending the termination of the first trial); *Henan Oil*, 262 F. Supp. at 631-32 (ordering trial of patent infringement/validity claims first and staying discovery related to antitrust issues until termination of the first trial); *Ecrix*, 191 F.R.D. at 613-14 ("Bifurcation in cases involving patent infringement, antitrust and unfair competition claims generally furthers judicial economy as antitrust and unfair competition claims need not be heard by a court if patent infringement is proved. If patent infringement is not proved, a focused trial on antitrust and unfair competition can then be held.").

There is great logic in staying discovery associated with the antitrust claims in order to further judicial economy and minimize the costs that the parties will incur in discovery. In *Shell Oil*, plaintiffs who brought a patent infringement suit subsequently filed a "Motion for Separate Trial and Stay of Discovery pursuant to Rule 42(b)." *Id.* at 276. The District Court for the Southern District of Texas granted the motion, explaining that "[p]atent validity and infringement claims and antitrust actions both involve large and complex bodies of laws.

Antitrust actions frequently require protracted trials." *Id.* at 277 (quoting *Henan Oil*, 262 F. Supp. at 631).

The procedural setting in *Henan Oil* was the reverse of that here, but the outcome was the same. In *Henan Oil*, plaintiff brought suit for a declaration of non-infringement on a patent as well as claims based on alleged antitrust violations. The defendant then filed a counterclaim for patent infringement. Plaintiff then requested that the antitrust claims be bifurcated and tried first. *Id.* at 630. Plaintiff's main reasons for requesting the severance were "saving of time and expense" because trial preparation for all issues would take one to two years longer to prepare for and the trial length, naturally, would all expand dramatically as well as the overall preparation costs for both the parties would increase exponentially. *Id.* at 631. However, the court ordered that:

> the patent infringement/validity claims will be held first and pretrial discovery directed at those exact issues should continue. At the termination of the trial on the patent infringement/validity issues, counsel may then proceed at once with their pretrial discovery on the remaining antitrust [and other] claims. When such pretrial discovery is completed, a date will be fixed for trial of these causes of action.

*Id.* at 631-32.

Here, plaintiffs allege that their patents have been infringed by EOS. EOS denies that it has infringed plaintiffs' patents and asserts that plaintiffs have violated federal antitrust laws by bringing this case and by their actions in the marketplace. Both the patent and the antitrust claims are complex and would result in demanding discovery. As plaintiffs' concurrently-filed motion to dismiss demonstrates, much is needed to establish an antitrust claim (and EOS has failed in critical respects). Since the same is true for issues that can easily be separated (in this case the patent issues), if it does not dismiss the antitrust claims, the Court should stay discovery of the antitrust issues awaiting resolution of the patent issues.

For example, in paragraph 42 of the counterclaim, EOS alleges a "pattern of conduct" in an attempt to exclude competition, identifying that pattern in six different sub-allegations. In paragraph 46, EOS alleges that customers have paid higher prices, and in paragraph 47, EOS alleges that it has lost "substantial profits." None of these allegations would need to be the subject of discovery in order to resolve the underlying patent claims. Since the amount of legal and judicial resources devoted to litigating the antitrust claims would be substantial, and since some or all of that amount could be avoided depending on the outcome of the patent claims, there is enormous logic in staying discovery associated with the antitrust claims until after the patent issues are tried. *Donnelly Corp. v. Reitter & Schefenacker USA Ltd.*, No. 1:00-CV-751, 2002 WL 31418042 (Aug. 13, 2002 W.D. Mich.) (bifurcation is common because patent claims and antitrust claims require voluminous and complex proof and because the proof is non-duplicative).

Indeed, no matter what the outcome of the patent litigation, the Court's findings with respect to the patent claims no doubt will have an important effect on the viability of the antitrust claims if either survives dismissal. For example, if the antitrust claims are not dismissed at the pleading stage, and if plaintiffs' patents are ruled to be valid, there can be no claim that plaintiffs' decision to file suit against EOS to enforce the patents was not "objectively baseless," which means that Count VI of the counterclaim would be dismissed.[3]

## IV.
## CONCLUSION

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 42(b), this Court should grant plaintiffs' motion, order that the patent issues be severed from the antitrust issues,

---

[3] *See* concurrently-filed motion to dismiss Count VI for failure to state a claim.

and order that discovery of the antitrust issues be stayed pending the outcome of the patent issues.

## CERTIFICATE OF CONFERENCE

The parties have conferred and the defendant opposes this Motion.

Dated: April 24, 2003

Respectfully submitted,

*Philip E. Cook, by permission EJBF*

PHILIP E. COOK
California State Bar No. 149067
Admitted *pro hac vice*
ROBERT W. DICKERSON
California State Bar No. 89367
Admitted *pro hac vice*
JONES DAY
555 West Fifth Street
Suite 4600
Los Angeles, California 90013-1025
Telephone: (213) 489-3939

ROBERT W. TURNER
Texas State Bar No. 20329000
JONES DAY
2727 North Harwood Street
P.O. Box 660623
Dallas, Texas 75266-0623
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

GRAY, CARY, WARE & FREIDENRICH LLP
ALAN D ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-6875
Telephone: (512) 457-7000
Facsimile: (512) 457-7001
Attorneys for Plaintiffs
BOARD OF REGENTS, THE
UNIVERSITY OF TEXAS SYSTEM,
and 3D SYSTEMS, INC.

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was sent via United States certified mail, return receipt requested to the following counsel of record on this 24th day of April, 2003.

Thomas H. Watkins
State Bar No. 20928000
Albert A. Carrion, Jr.
State Bar No. 03883100
HILGERS & WATKINS P.C.
98 San Jacinto Boulevard
San Jacinto Center, Suite 1300
Austin, Texas 78701
(512)476-4716
(512) 476-5139 Facsimile

Michael H. Baniak
Michael D. Gannon
BANIAK PIKE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 Facsimile

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

*/s/ Elizabeth J. Brown Fore*
ELIZABETH J. BROWN FORE