IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUG... DIVISION

2003 MY 22 PM 4:5

CLERK DISTRICT OF T...
U.S. CLERK'S OFFICE

BY: _____

DEPUTY

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc. | § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. A03 CA 113 SS |
| EOS GmbH Electro Optical Systems | § § | |
| Defendant | § | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO BIFURCATE AND STAY ANTITRUST COUNTERCLAIMS**

**I.  INTRODUCTION**

Defendant EOS GmbH Electro Optical Systems ("EOS") opposes the motion of Plaintiffs the Board of Regents, The University of Texas System ("UT") and 3D Systems, Inc. ("3D Systems") to bifurcate and stay the antitrust counterclaims pursuant to Fed. R. Civ. P. 42(b). EOS seeks a prompt resolution of this case. A single trial and discovery period covering all the issues in this case will result in the most efficient and equitable resolution of this dispute. In view of the greatly overlapping proofs in the patent and antitrust claims, bifurcation will only cause undue delay, increased costs, and needless duplication of judicial efforts.

Plaintiffs' memorandum points to no evidence supporting their position that bifurcation is warranted in this case. Rather, plaintiffs ask this Court to make the bold assumption that they will prevail on issues of infringement and validity of the patents-in-suit. Even if they did prevail, it *still* would not justify bifurcation because these issues only bear on a relatively small portion of EOS's counterclaims. In short, bifurcation will actually only cause this litigation to become

26

more complex, cumbersome, protracted, expensive, and inefficient. This Court should therefore not bifurcate the antitrust claims, and all of the claims and counterclaims should proceed through discovery to trial concurrently.

## II. LAW AND ANALYSIS

Federal Rule 42(b) provides that "the court, in furtherance of *convenience* or *to avoid prejudice*, or when separate trials will be *conducive to expedition and economy*, may order a separate trial of any . . . counterclaim . . ., or of any . . . number of . . . counterclaims . . . ." Fed. R. Civ. P. 42(b) (emphasis added). Plaintiffs, as the parties urging bifurcation, have the burden to show that bifurcation is warranted. *Home Elevators, Inc. v. Millar Elevator Service Co.*, 933 F. Supp. 1090, 1091 (N.D. Ga. 1996) ("The party requesting bifurcation has the burden to show that it is warranted in that particular case.").

Plaintiffs have failed to make this showing because they have provided **absolutely no proof** to support their motion—only attorney argument. 9 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE, § 2388 ("*[I]f any saving in time and expense is wholly speculative*, a separate trial will be denied") (emphasis added); *Home Elevators*, 933 F. Supp. at 1091 (denying motion to bifurcate patent infringement liability and damages where movant "failed to show how the proof of damages in this particular case will be especially complex."). As discussed below, bifurcation will frustrate judicial economy, result in duplicative discovery and evidence, and prejudice EOS.

### A.    Rule 42(b) Requires Furtherance of Efficient Judicial Administration.

Contrary to Plaintiffs' suggestion that the Federal Rules render bifurcation of patent and antitrust claims a foregone conclusion, courts evaluate bifurcation on a case-by-case basis in view of Rule 42(b)'s overriding policy:

> The provision for separate trials in Rule 42(b) is intended to further the parties' convenience, avoid delay and prejudice, and serve the ends of justice. *It is the interest of efficient judicial administration that is to be controlling under the rule*, rather than the wishes of the parties. *The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course.* Thus, Rule 42(b) should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule.

9 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE, § 2388. In addition, Plaintiffs' recitation that a number of patent cases have been bifurcated is irrelevant: "bifurcation is a matter to be decided by the trial judge, as a result of an informed decision, on a case-by-case basis." *Willemijn Houdstermaatschaapij BV, A, v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989) (denying motion to bifurcate patent liability and damages where movant "failed to make a sufficient showing that bifurcation would promote convenience or save the Court time . . . .").

In *ACS Communications, Inc. v. Plantronics, Inc.*, No. CIV. 95-20294 SW, 1995 WL 743726 (N.D. Cal. Dec. 1, 1995), the court denied a motion to bifurcate antitrust and patent claims. The movant argued that the patent claims should be tried first because (1) the antitrust issues were complex and (2) there was a high risk of jury confusion if the claims were tried together. *Id.*, 1995 WL 743726, at *2. The court held that trying the patent issues first was not conducive to the expeditious disposition of the case:

> According to [the movant], if [the non-movant's] products infringe on the [patent in suit] then [the non-movant] does not have a legal right to sell the infringing products in competition with [the movant.] Without a legal right [the non-movant] cannot recover under its antitrust claims. *However, it is unlikely that all of the products [the non-movant] sells in competition with [the movant] infringe on the [patent-in-suit.] Thus, [the non-movant] will still recover some damages even if it loses on the infringement issue.* Although disposition of the patent infringement claim may reduce the amount of damages for [the non-movant's] antitrust claim, *there is no evidence that it will simplify the antitrust issues.*

*ACS*, 1995 WL 743726, at *2 (emphasis added).

The same reasoning that supported a denial of the motion to bifurcate in *ACS* applies to the case at bar. EOS alleges in Counterclaim Count V, *inter alia*, that Plaintiffs violated §§ 1 and 2 of the Sherman Act (15 U.S.C. §§ 1-2) and the Clayton Act (15 U.S.C. § 18) by reducing the number of competitors in the U.S. for Laser Rapid Prototyping equipment from two to one; using their alleged patent rights to eliminate competition; improperly maintaining and exercising market power and unreasonably restraining trade in the relevant U.S. markets; attempting to monopolize and actually monopolizing the relevant U.S. markets; and engaging in a pattern of conduct through which Plaintiffs have intended to exclude competitors in the relevant U.S. markets. (*See, e.g.,* Counterclaims, ¶¶ 29-50.) EOS additionally alleges in Counterclaim Count VI that Plaintiffs violated § 2 of the Sherman Act by, among other things, attempting to enforce a patent that they know is invalid. (*See, e.g.,* Counterclaims, ¶¶ 51-55.) Contrary to Plaintiffs' assertions, Counterclaim Count V stands independent of the patent validity issues—it will not be rendered moot even if plaintiffs' patents are held to be valid and enforceable. With regard to Counterclaim Count VI, only the aspect of the § 2 Sherman Act regarding enforcement of invalid patent claims may be significantly affected by resolving any patent-specific issues. In addition, bifurcation in this instance would require the parties to duplicate their discovery efforts, and stretch this action out over years. Such a result is directly contrary to the rule's purpose: promoting judicial economy. *Home Elevators*, 933 F. Supp. at 1092 ("[T]wo separate trials at remote times with different juries will not promote judicial economy.").

**B.    A Single Trial Is Most Likely to Result in a Fair and Final Resolution of this Case.**

Generally, "a single trial . . . tends to lessen delay, expense, and inconvenience to all concerned." 5 J. Moore, MOORE'S FEDERAL PRACTICE § 42.03[1] (2d ed. 1982). While courts have found that bifurcation may be advisable if a case contains numerous dissimilar and complex

issues that might confuse the jury, or when a decision in the first trial may eliminate the need for a second trial, the Court must balance these factors with the potential for delay, additional expense, or prejudice that bifurcation would impose. *See, e.g. Willemijn*, 707 F. Supp. at 1433-35 (denying bifurcation in view of the prejudice that bifurcation could cause).

In order to grant bifurcation of claims, the issues to be explored at the separate trials should be so distinct and separable that separate trials may be had without injustice. *See Willemijn*, 707 F. Supp. at 1434; 5 J. Moore, MOORE'S FEDERAL PRACTICE § 42.20[7] (3d ed. 1997). That is, even if bifurcation might somehow promote judicial economy, courts should not order separate trials when "bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Willemijn*, 707 F. Supp. at 1433.

Bifurcation of EOS's counterclaims would cause unnecessary delay, additional expense, and prejudice. As discussed below, bifurcation would result in duplicative discovery efforts and presentation of evidence at trial regarding, for example, expert witnesses testifying about the relevant market for both the infringement and antitrust issues. Separate trials would necessarily result in delaying justice on EOS's counterclaims, and further cause defendant EOS to suffer more expenses in connection with a second trial. These problems will be avoided by trying the claims and counterclaims in a single trial.

**C.    Bifurcation Does Not Serve Judicial Economy Where Issues Overlap.**

Overlapping issues, and, by extension, overlapping evidence are significant factors to be weighed in determining the providence of bifurcation. *Willemijn*, 707 F. Supp. at 1434. In *Willemijn*, the court denied a motion to bifurcate where evidence relevant to one issue (patent infringement damages) was also relevant to the "commercial success" factor of non-obviousness (patent invalidity). *Id.*. Where it was "indisputable that such evidence would be considered by a

court assessing damages . . . bifurcation would require [presentation of] the same evidence at both trials." *Id.*. Similarly, judicial economy is not served where the same witnesses would testify regarding issues related to both the patent infringement liability claims and the antitrust claims. *Home Elevators*, 933 F. Supp. at 1091-92 (denying motion to bifurcate and noting that "several of the witnesses named in the parties' responses to mandatory discovery are expected to testify regarding issues related to both liability and damages . . . . Plainly, judicial economy is not served if the same witnesses have to be called at both trials.").

Bifurcation of the patent claims and the antitrust claims in this case is not warranted because both claims involve a substantial overlap in the evidence. *See, e.g., Genentech, Inc. v. The Wellcome Foundation, Ltd.*, 14 U.S.P.Q.2d 1363, 1373 (D. Del. 1990) (denying motion to bifurcate antitrust claims from patent claims because overlapping evidence would require "exploration of much the same evidence"). In this case, evidence will be presented twice if this Court bifurcates EOS's antitrust claims and EOS prevails on the patent issues. For example, determining patent damages requires evaluating the relevant market for the allegedly infringing goods. *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir.2001) ("[T]o determine a patentee's market share, the record must accurately identify the market. This requires an analysis which excludes alternatives to the patented product with disparately different prices or significantly different characteristics"). Likewise, a § 2 Sherman Act violation requires identifying the relevant market for EOS's goods. *See, e.g., Oltz v. St. Peter's Comm. Hosp.*, 861 F.2d 1440, 1466 (9th Cir. 1988) ("The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand"). At a minimum, evidence of the relevant markets will be presented twice if Plaintiffs get their way.

**D.    Bifurcation Would Prejudice EOS.**

Justice delayed is justice denied.  Courts have recognized that "[p]erhaps the most important consideration for a court ruling on a motion to bifurcate is whether separate trials would unduly prejudice the non-moving party." *Willemijn*, 707 F. Supp. at 1435 (citing *H.B. Fuller Co. v. National Starch & Chem. Corp.*, 595 F. Supp. 622, 625 (D. Del. 1984). "Justice includes, as [Rule] 42(b) suggests, a consideration of the potential prejudice to the parties in determining whether separate trials should be conducted on the issues in a single case." *H.B. Fuller*, 595 F. Supp. at 625.  In evaluating whether bifurcation is justified, the Court should be aware that "[p]rejudice . . . may simply amount to unfair delay of the final disposition of the matter." *Willemijn*, 707 F. Supp. at 1435; *see also H.B. Fuller*, 595 F. Supp. at 625 (denying motion to bifurcate patent invalidity and unenforceability defenses from infringement liability where bifurcation would unduly extend final disposition of the case to non-movant's detriment). If Plaintiffs' motion to bifurcate and stay discovery is not denied, bifurcation will significantly delay adjudication of EOS's Counterclaims V and VI, impermissibly resulting in prejudice to EOS.

**E.    Discovery on the Antitrust Claims Should Not Be Stayed.**

Staying discovery on EOS's antitrust Counterclaims makes no sense if the end game is to promote judicial economy and prevent EOS from being unduly prejudiced.  Even where courts have bifurcated antitrust claims from patent infringement claims, they still recognize that discovery on the bifurcated antitrust claims should proceed. *See Donnelly Corp. v. Reitter & Schefenacker USA Ltd.*, No. 1:00-CV-751, 2002 WL 31418042 (W.D. Mich. Aug. 13, 2002) ("The Court will not . . . stay any discovery in this matter."); *Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 614 (D. Col. 2000) ("Discovery of information related to the antitrust claims will not

be stayed. I do not want to be the mediator in disputes over what information relates to antitrust violations and what information relates to patent infringement."); *Brandt, Inc. v. Crane*, 97 F.R.D. 707 (N.D. Ill. 1983) (bifurcating claims but not staying discovery); *Alarm Device Mfg. Co. v. Alarm Prods., Int'l, Inc.*, 60 F.R.D. 199 (E.D.N.Y. 1973) (denying portion of bifurcation motion requesting stay of antitrust discovery). In addition, staying discovery is improper where discovery has not commenced and thus plaintiffs have no basis to assert that discovery would be complex. *See ACS*, No. CIV. 95-20294 SW, 1995 WL 743726, at *2 (N.D. Cal. Dec. 1, 1995).

**F.    Plaintiffs Misapprehend the Law Regarding Bifurcation.**

As discussed above, Plaintiffs' failed to meet their burden to show that bifurcation is appropriate. In addition, Plaintiffs' legal analysis is misguided.

Plaintiffs rely heavily on *In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986) to support their argument that bifurcation is somehow warranted here. The *Innotron* case, however, is completely distinguishable from the case at bar. Only a single patent-type antitrust counterclaim was at issue in *Innotron*. *Id.* at 1084. As such, the court reasoned that the patent validity issues would become the law of the case and could be removed from trial on the antitrust issues. *Id.* As explained above, however, EOS's Sherman Act §§ 1 and 2 claims and a Clayton Act claim will remain irrespective of any patent validity determinations—only one facet of EOS's § 2 Sherman Act claim would be affected. Moreover, *Innotron* involved a patent infringement defendant seeking a *writ of mandamus* to overturn a district court's order bifurcating patent and antitrust issues, which requires a showing of "exceptional circumstances" to show that the petitioner's right to the writ is "clear and indisputable."[1] *Id.*, at 1086. In contrast, the Federal Circuit, when faced with a reverse situation from *Innotron*, denied a writ of

---

[1] Here, however, Plaintiffs—not EOS—have the burden to show that bifurcation is warranted. *Home Elevators*, 933 F. Supp. at 1091.

mandamus to a petitioner seeking to compel bifurcation of antitrust and patent claims. *See In re Theodor Groz & Sohne*, Misc. No. 338, 1992 WL 188908 (Fed. Cir. May 18, 1992). In fact, the Federal Circuit confirmed that the decision to bifurcate rests with the discretion of the trial court: "[t]hat district courts may generally favor the separation of patent and antitrust issues for trial, as we recognized in *Innotron*, does not render every order refusing to sever such claims an abuse of discretion." *Theodor Groz*, 1992 WL 188908, at *2. Viewing *Innotron* in light of *Thoedor Groz*, it is clear that the Federal Circuit does not mandate or expressly sanction bifurcation of patent and antitrust claims.

The rest of Plaintiffs' cases are similarly distinguishable. *Ecrix* appears to deal mostly with patent-type antitrust counterclaims as well as unfair competition counterclaims. *See Ecrix*, 191 F.R.D. at 613-14. As such, the court explained that numerous issues would be removed from trial by resolving the patent issues. *Id.* Likewise, *Donnelly*, 2002 WL 31418042, at *1, involves only patent type antitrust counterclaims. Here, however, the resolution of the Plaintiffs' issues will have very little effect, of any, on EOS's antitrust counterclaims. Thus, the reasoning of *Ecrix* and *Donnelly* is largely inapplicable to the case at bar.

In *Shell Oil Co. v. American Cyanamid Co.*, 219 U.S.P.Q. 275, 276-77 (S.D. Tex. 1982), the parties had nearly completed discovery on the patent validity and infringement issues and had taken "virtually no discovery as to the antitrust" issues. Similarly, in *Henan Oil Tools, Inc. v. Engineering Enterprises, Inc.*, 262 F. Supp. 629, 631 (S.D. Tex. 1966), significant to the court was the moving party's showing that "it would be in a position to proceed to trial on the validity and infringement claims in three or four months, whereas the time required for preparation prior to trial on all of [the] claims would require one and one-half years." Here, discovery is just beginning, thus no such justifications exist.

In *ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444 (N.D. Cal. Jan. 9, 2002), the district court based its decision to bifurcate antitrust and patent claims on an incorrect standard.  The court declared that the motion would be granted because the non-movant "failed to demonstrate prejudice resulting from a stay that would outweigh the judicial economy certain to result from a stay." *ASM*, 2002 WL 24444, at *7.  In fact, it is the *movant's* burden to show bifurcation is warranted, *Home Elevators*, 933 F. Supp. at 1091, and courts should not order separate trials when "bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Willemijn*, 707 F. Supp. at 1433.  As such, the *ASM* case should be disregarded.

## III. CONCLUSION

Plaintiffs have utterly failed to meet their burden to show that bifurcation of EOS's counterclaims is proper.  They have further failed to provide any justification for staying discovery on EOS's counterclaims, particularly in light of the overriding policies of judicial economy and avoiding prejudice to EOS.  As such, EOS respectfully requests that this Court deny the motion.

Respectfully submitted,


HILGERS & WATKINS, P.C.
1300 San Jacinto Center
98 San Jacinto Boulevard
P.O. Box 2063
Austin, Texas 78768-2063
(512) 476-4716
(512) 476-5139 (Telecopier)


By: _____
    THOMAS H. WATKINS
    State Bar No. 20928000
    ALBERT A. CARRION, JR.
    State Bar No. 03883100

MICHAEL H. BANIAK
MICHAEL D. GANNON
BANIAK PINE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 (Telecopier)

ATTORNEYS FOR DEFENDANT
EOS GMBH ELECTRO OPTICAL SYSTEMS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was provided to counsel of record by the method indicted below on this the 22nd day of May 2003:

Thomas R. Jackson                                                    *via first-class mail*
JONES DAY
2727 North Harwood St.
P.O. Box 660623
Dallas, Texas 75266


Philip E. Cook                                                       *via first-class mail*
Robert W. Dickerson
JONES DAY
555 W. Fifth Street, Suite 4600
Los Angeles, California 90013-1025


Alan D. Albright                                                     *via first-class mail*
Elizabeth J. Brown Fore
GRAY CARY WARE & FREIDENRICH, LLP
1221 South Mopac Expressway, Suite 400
Austin, Texas 78746-6875

_____
ALBERT A. CARRION, JR.