

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. A03 CA 113SS |
| EOS GmbH Electro Optical Systems, | § § § | |
| Defendant. | § § | |

**REPLY TO PLAINTIFFS' MOTION TO DISMISS THE ANTITRUST COUNTERCLAIMS (COUNTS V AND VI) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Plaintiffs Board of Regents, the University of Texas System ("UT") and 3D Systems, Inc. ("3D Systems"), hereby reply to EOS GmbH Electro Optical Systems' (EOS) Opposition to Plaintiffs' Motion to Dismiss Defendant's Antitrust Counterclaims.

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    I.    COUNTERCLAIM V SHOULD BE DISMISSED AS A MATTER OF LAW. ............................................................................................................................. 2

        A.    EOS Has Failed to Allege a Plausible Relevant Market. ........................... 2

        B.    EOS's Conclusory Allegations Fail to Adequately Plead Antitrust Injury to EOS. ............................................................................................ 3

        C.    EOS's Section 2 Claim Must Fail. .............................................................. 7

        D.    EOS Has Failed to State a Claim For Conspiracy to Monopolize or to Restrain Trade Against UT ................................................................... 7

        E.    EOS Has Abandoned Its Request to Have the 3D Systems-DTM Merger Unwound. ........................................................................................ 9

    II.    COUNTERCLAIM VI SHOULD BE DISMISSED AS A MATTER OF LAW. ........................................................................................................................... 10

        A.    The Foreign Decisions on Corresponding Patents Are Favorable to Plaintiffs But Are Also Irrelevant. ........................................................ 11

        B.    EOS Cannot Meet Either Part of the Test For an Exception to Immunity to Apply. .................................................................................. 12

CONCLUSION .......................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Advanced Health-Care Serv. Inc. v. Radford Cmty. Hosp.*,
   910 F.2d 139 (4th Cir. 1990) ...................................................................................9

*American Tobacco Co. v. United States*,
   328 U.S. 781 (1946) ............................................................................................8, 9

*BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Assoc.*,
   36 F.3d 664 (7th Cir. 1994) ...................................................................................6

*Bar Techs., Inc. v. Conemaugh & Black Lick R.R. Co.*,
   73 F. Supp. 2d 512 (W.D. Pa. 1999) .....................................................................4

*Baum Research & Dev. Co. v. Hillerich & Bradsby Co., Inc.*,
   31 F. Supp. 2d 1016 (E.D. Mich. 1998) ................................................................4

*Baxter Intern., Inc. v. McGaw, Inc.*,
   149 F.3d 1321 (Fed. Cir. 1998) ...........................................................................13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) ............................................................................................5, 6

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
   157 F.3d 1340 (Fed. Cir. 1998) ...........................................................................14

*Dial A Car, Inc. v. Transportation, Inc.*,
   82 F.3d 484 (D.C. Cir. 1996) ................................................................................4

*Floors-N-More, Inc. v. Freight Liquidators*,
   142 F. Supp. 2d. 496 (S.D.N.Y. 2001) ...............................................................4, 6

*Fruehauf Corp. v. FTC*,
   603 F.2d 345 (2nd Cir. 1979) ................................................................................6

*Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*,
   789 F. Supp. 760 (S.D. Miss. 1992) ....................................................................10

*Great W. Directories v. Southwestern Bell Tel. Co.*,
   63 F.3d 1378 (5th Cir. 1995) .................................................................................9

*Handgards, Inc. v. Ethicon, Inc.*,
   601 F.2d 986 (9th Cir. 1979) ..........................................................................11, 15

*Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.*,
    964 F. Supp. 624 (D. Conn. 1997) ................................................................................... 11, 15

*Heatransfer Corp. v. Volkswagenwerk, A.G.*,
    553 F.2d 964 (5th Cir. 1977) ................................................................................................ 7

*Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*,
    21 F.3d 1068 (Fed. Cir. 1994) ............................................................................................ 13

*Indeck Energy Servs., Inc. v. Consumers Energy Co.*,
    250 F.3d 972 (6th Cir. 2000) ............................................................................................ 4, 6

*J.P. Stevens & Co. v. Lex Tex Ltd.*,
    747 F.2d 1553 (Fed. Cir. 1984) .......................................................................................... 13

*Mathias v. Daily News, L.P.*,
    152 F. Supp. 2d 465 (S.D.N.Y. 2001) ................................................................................. 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................................. 5

*Medtronic, Inc. v. Daig Corp.*,
    789 F.2d 903 (Fed. Cir. 1986) ............................................................................................ 13

*Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*,
    795 F. Supp. 639 (S.D.N.Y. 1992) ...................................................................................... 7

*North Jersey Secretarial School, Inc. v. McKiernan*,
    713 F. Supp. 577 (S.D.N.Y. 1989) ...................................................................................... 3

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. ("PRE")*,
    508 U.S. 49 (1993) ....................................................................................................... 11, 13

*St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*,
    605 F.2d 1169 (10th Cir. 1979) ......................................................................................... 12

*Syufy Enters. v. American Multicinema, Inc.*,
    793 F.2d 990 (9th Cir. 1986) ........................................................................................... 8, 9

*TCA Bldg. Co. v. Northwestern Res. Co.*,
    861 F. Supp. 1366 (S.D. Tex. 1994) .................................................................................... 7

*Taylor Publ'g Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) ............................................................................................... 7

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001)..................................................................................................3

## STATUTES

35 U.S.C. § 282............................................................................................................................15

Fed. R. Evid. 201(b)......................................................................................................................12

## **INTRODUCTION**

EOS fails to explain away the critical gaps in its antitrust allegations in Counts V and VI that prompted 3D Systems' motion to dismiss. It argues that its lack of factual allegations in support of critical elements that must be satisfied to avoid dismissal is excused because failure to assert those elements (antitrust injury, market definition, and specific intent, among others) does not allow dismissal. But the authorities cited in 3D Systems' original Memorandum and the additional authorities cited below provide abundant examples of antitrust claims dismissed at the pleadings stage because the plaintiff failed to allege <u>facts</u>, rather than mere conclusory allegations, in support of its antitrust claims (including those against UT).

EOS fails to plead antitrust injury. It merely repeats the vague and conclusory statements in its Counterclaims and fails to explain how those allegations (especially those in paragraph 42 of the Counterclaims) resulted in an anticompetitive effect that caused antitrust injury to EOS (as opposed to consumers, for example).

Nor has EOS adequately articulated the plausibility of its market definition. Contrary to its Opposition (EOS Opp. at 4-7), neither of its alleged markets – "Laser RP Systems" or "Industrial RP Systems," the latter of which includes materials as well as equipment, according to EOS (Counterclaims, ¶ 31) – constitute a plausible relevant antitrust market. Its allegations are not saved by the Department of Justice allegations, which in fact is inconsistent with EOS's.

Finally, EOS does not (and cannot) plead facts that would permit it to evade the application of the *Noerr-Pennington* doctrine to Count VI. The only facts EOS pleads are demonstrably wrong, and even if those facts were true, they would not suffice to state a claim for relief.

## ARGUMENT

I. **COUNTERCLAIM V SHOULD BE DISMISSED AS A MATTER OF LAW.**

    A.     **EOS Has Failed to Allege a Plausible Relevant Market.**

EOS seeks to justify its allegations regarding relevant market in two ways. First, it claims that issues of market definition cannot be addressed on a motion to dismiss. EOS attempts to distinguish the numerous Rule 12(b)(6) cases cited in 3D Systems' moving papers on the ground that in those cases the "antitrust plaintiffs offered no plausible basis for their market limitations." (EOS Opp. at 6.) This begs the critical question: has EOS alleged sufficient facts to establish a plausible relevant market? The answer is no: EOS's counterclaim fails to deal with the cross-elasticity issue that is critical to market definition. (*See* Plaintiffs' Br. at 7-10.)

Second, EOS's contention that its allegations are adequate because they are similar to the DOJ's allegations as to the 3D Systems-DTM merger is plain wrong. The DOJ complaint <u>did not</u> define the alleged relevant market in the same terms as those proposed by EOS. First, the DOJ did not define a market for "<u>Laser</u> RP Systems" in the U.S. (*See* DOJ Complaint, ¶ 10, attached hereto as Exhibit A.) The DOJ complaint did not limit its product market to rapid prototyping equipment using laser technology. (*Compare* Counterclaims, ¶ 30.) Nothing in paragraph 10 of the DOJ complaint that EOS cites (EOS Opp. at 5) limits the DOJ alleged market to "laser technology" systems; indeed, the DOJ complaint included in its market a company called "Stratasys" that, as EOS well knows, is <u>not</u> a laser technology company. (*See* DOJ Complaint, ¶ 33.) Nowhere does EOS's Counterclaim suggest why its "Laser RP Systems" market excludes non-laser equipment for rapid prototyping, which the DOJ includes in its alleged relevant market. (*See* Plaintiffs' Br. at 8-9.) Contrary to EOS's suggestion in its brief (EOS Opp. at 5), there are no facts in either EOS's Counterclaims or the DOJ Complaint that

2

suggest that non-laser machines are non-substitutable for laser technology machines. Paragraphs 10 and 14 of the DOJ Complaint, which EOS cites, say nothing of the sort. (*See* EOS Opp. at 5).

As for EOS's "Industrial RP Systems" alternative market (Counterclaims, ¶ 31), EOS provides no justification for lumping equipment, materials and services together in a single market.[1] Since there is no allegation that equipment, materials and services are substitutes or interchangeable with each other, EOS has not alleged a "plausible" antitrust market. *See, e.g., North Jersey Secretarial School, Inc. v. McKiernan*, 713 F. Supp. 577, 583 (S.D.N.Y. 1989). As EOS concedes, antitrust claims are inadequate when "plaintiffs offer[] no plausible basis for their market limitations." (EOS Opp. at 6); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001).

### B. EOS's Conclusory Allegations Fail to Adequately Plead Antitrust Injury to EOS.

EOS is simply incorrect in asserting antitrust injury "is an issue not appropriate for resolution on a motion to dismiss." (EOS Opp. at 7.) Antitrust complaints are frequently dismissed for failure to allege facts sufficient to establish antitrust injury.[2]

---

[1] Nor did the DOJ adopt EOS's "Industrial RP Systems" market comprising "proprietary materials," "associated services" as well as equipment. (Counterclaims, ¶ 31.) The DOJ specifically distinguished between "systems" and "materials" in its relevant market allegation (*see* DOJ Complaint, ¶¶ 10, 12, 21), and there is no suggestion that a market including materials could be limited to just three competitors, as the DOJ alleged. (DOJ Complaint, ¶ 20.) As EOS is aware, companies other than the three equipment producers identified in the DOJ Complaint sold materials when that case was filed (*e.g.*, DTM, RPC), and another company known as Vantico currently sells materials to U.S. customers.

[2] *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 977 (6th Cir. 2000) (affirming district court's granting of motion to dismiss antitrust claims because "the antitrust damages alleged by [the plaintiff] are too indirect and speculative to justify assertion of federal antitrust jurisdiction over this matter"); *Dial A Car, Inc. v. Transportation, Inc*, 82 F.3d 484, 487 (D.C. Cir. 1996) (affirming dismissal of antitrust claim because plaintiff failed to adequately allege antitrust injury); *Mathias v. Daily News, L P*, 152 F. Supp. 2d 465, 479-80 (S.D.N.Y. 2001) (granting motion to dismiss antitrust claim because "[d]espite [the plaintiffs'] varied and conclusory assertions of antitrust injury in this case, the Court finds that the harms they claim do not extend beyond injury to themselves"); *Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d. 496, 502 (S.D.N.Y. 2001) (conclusory allegations of antitrust injury are "insufficient to survive a motion to dismiss"); *42nd Parallel North v. E. St. Denim Co*, 2001-2 Trade Cases P 73,368, 2001 WL 761129, at *2 (N.D. Ill. July 6, 2001) (dismissing

EOS's discussion of antitrust injury is inadequate because EOS never explains, as the antitrust injury test requires, how any "exclusion" of EOS resulted <u>from</u> any anti-competitive effect of the acts alleged in Count V. For example, EOS fails to state how any of the acts alleged in paragraph 42 of the Counterclaim had an anticompetitive effect on any relevant market, much less how those effects had a causal connection with any harm to EOS as a competitor or customer. (*See* Plaintiffs' Br. 11-14.) In fact, the "Antitrust Injury" section of EOS's brief (*see* EOS Opp. at 7-10) makes clear that EOS never focuses on the allegations at paragraph 42 of the Counterclaim. Instead EOS takes refuge in conclusory statements about "a competitor barred from competing," without explaining how. (EOS Opp. at 8.) And of course, EOS actually alleges that it <u>does</u> compete. (Counterclaims, ¶ 44.) In short, EOS has failed to allege not only that the 3D Systems-DTM Corporation merger has had an anticompetitive impact, but that EOS has been harmed by that effect. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 479 (1977).

EOS's allegation of "higher prices for Laser RP Systems, Industrial RP Systems, related material and supplies, and services" (Counterclaims, ¶ 44) is plainly insufficient because EOS is an alleged <u>supplier, and not a customer</u>, of such equipment and services. It defies economic sense, as the Supreme Court has noted, that a competitor has suffered antitrust injury when another competitor with alleged market power raises prices. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986); Plaintiffs' Br. at 11, 12, & n.8.

---

(continued...)
antitrust claims because plaintiff's "failure to sufficiently allege an anticompetitive effect on the market is fatal to its complaint"); *Bar Techs., Inc. v. Conemaugh & Black Lick R.R. Co.*, 73 F. Supp. 2d 512, 519-20 (W.D. Pa. 1999) (dismissing antitrust claim because plaintiff failed to adequately allege antitrust injury); *Baum Research & Dev Co. v. Hillerich & Bradsby Co., Inc.*, 31 F. Supp. 2d 1016, 1022-24 (E.D. Mich. 1998) (same); *Rock TV Entm't, Inc. v. Time Warner*, 1998-1 Trade Cases P 72,144, 1998 WL 37498, at *4 (S.D.N.Y. Jan. 30, 1998) (allegations of antitrust injury "are conclusory and, therefore, insufficient for an antitrust complaint").

EOS still has not alleged or even explained how 3D Systems' alleged "agreement with manufacturers of materials" caused harm to EOS in any way, much less harmed competitors with respect to any market. (Counterclaims, ¶ 42-a.) (*See, e.g.*, EOS Opp. at 9.) EOS offers no explanation of how or even whether these alleged agreements prevented EOS access to the materials market, and fails to explain how the unspecified "materials" hampered EOS's ability to compete. This failure to allege a "causal connection between the [alleged] antitrust violation and harm to the [antitrust] plaintiff . . ." mandates dismissal. *Indeck Energy Servs.*, 250 F.2d at 976.³

With regard to 3D Systems' alleged acquisition of an unnamed "manufacturer of materials" (Counterclaims, ¶ 42-c), EOS's brief again does not explain how this caused injury to EOS, a competing seller of equipment and materials, or injured competition as a whole. (*See* Counterclaims, ¶ 44.) A vertical merger – that is, an acquisition of a supplier of goods used with or in another product such as machines – does not eliminate a competing buyer or seller from the market. It "does not amount to a per se substantial lessening of competition. Indeed, it may even operate to increase competition." *Fruehauf Corp. v. FTC*, 603 F.2d 345, 351-52 (2nd Cir. 1979) (citing 2 P. Areeda & D. Turner, Antitrust Law, ¶ 527a, 376 (1978)).⁴

As for 3D Systems' alleged threat not to honor some of its customers' warranty claims, (Counterclaims, ¶ 42-d), there is again no suggestion of harm to competition in a relevant market (or that it caused harm to EOS). In the words of the *Brunswick* Court, the antitrust laws "were enacted for the protection of *competition*, not *competitors*." *Brunswick Corp.*, 429 U.S. at 489 (citations omitted) (emphasis in original).

---

³ As for 3D Systems' alleged termination of a distribution agreement with an unnamed materials manufacturer (Counterclaims, ¶ 42-b), it has the same defect – a lack of any causal connection. Nor has EOS alleged facts that "the challenged action has had an actual adverse effect on competition as a whole in the relevant market . . ." *Rock TV*, 1998 WL 37498, at *2 (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs., Inc.*, 996 F.2d 537, 543 (2d. Cir. 1993)).

⁴ *See BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Assoc.*, 36 F.3d 664, 669 (7th Cir. 1994) (dismissing antitrust claim because, in part, plaintiffs failed to allege "impact on competition as a whole within the relevant market."); *Floors-N-More*, 142 F. Supp. 2d at 501 ("plaintiff bears the initial burden of showing the challenged action has had an actual adverse effect on competition as a whole in the relevant market . . .").

Finally, EOS does not suggest that its allegation regarding 3D Systems' choice of a "New Licensee" in settlement of the DOJ Litigation is adequate.[5] (Counterclaims, ¶ 42-e.)

### C.  EOS's Section 2 Claim Must Fail.

Although EOS asserts that it has adequately alleged actual or attempted monopolization under Section 2 of the Sherman Act (EOS Opp. at 10-13), EOS's allegations are too vague and conclusory as a matter of law. Every supposed item of anticompetitive conduct mentioned in Count V is devoid of even the barest factual allegation indicating how these practices harmed the competitive process in a relevant market and how they caused EOS's alleged exclusion.

For example, EOS fails to make any factual allegation indicating that 3D Systems had a specific intent to monopolize, as is required for an attempted monopolization claim. *E.g., Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 474 (5th Cir. 2000). Instead, it relies on a quote from a Private Placement Memorandum allegedly prepared by 3D Systems, a quote that in fact says nothing about 3D Systems' intent to do anything. (Counterclaims, ¶ 39.) Nor does its reference to having a "sufficiently strong patent portfolio to prevent others from competing" suggest that

---

[5] The cases cited by EOS do not establish that it has adequately alleged antitrust injury. (EOS Opp. at 8-9.) *TCA Bldg. Co. v. Northwestern Res. Co.*, 861 F. Supp. 1366, 1380 (S.D. Tex. 1994), involved summary judgment, not a motion to dismiss, and, thus, does not address the standard for pleading antitrust injury. Moreover, in *TCA*, the court granted summary judgment as to certain of plaintiff's antitrust claims because of plaintiff's "inability to allege" antitrust injury. *Id.* at 1379. Plaintiff alleged that its competitors had fixed prices for a product that it also sold (lignite). *Id.* at 1378-79. The Court held that, as a competitor, plaintiff could not be harmed by higher prices charged by its competitors to consumers. *Id.* This is exactly the argument made by 3D Systems as to EOS' claim that it has been harmed by 3D Systems' alleged "higher prices" to consumers. (Plaintiffs' Br. 11.) Thus, *TCA* supports 3D Systems' motion to dismiss.

*Heatransfer Corp. v. Volkswagenwerk, A.G.*, 553 F.2d 964, 969 (5th Cir. 1977), involved an appeal from a jury trial with "a record of giant proportions." This "giant" record included detailed evidence regarding the effects of an alleged tying scheme by defendant. *Id* at 975-79. Nothing remotely comparable is alleged in EOS's Counterclaim.

In *Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*, 795 F. Supp. 639, 646 (S.D.N.Y. 1992), the counterplaintiff's antitrust claim survived a motion to dismiss on the basis of its highly-detailed factual allegations regarding exclusionary acts by the counterdefendant, including the identification of thirteen allegedly fraudulently-obtained copyrights, bribery of customers (including the provision of cocaine and prostitutes) and the theft of the designs of competitors. The detailed allegations of blatantly inexcusable and illegal behavior which allegedly caused competitive injury in *Michael Anthony Jewelers* – a far cry from the allegations in paragraph 42 of the Counterclaim – hardly validates the vague and conclusory allegations of competitively neutral incidents in EOS's Counterclaims.

3D Systems intended to "prevent" others from competing. *Id.* And as the Counterclaims admit (Counterclaims, ¶ 42-d), 3D Systems was forced to license another company to settle with the DOJ.

### D. EOS Has Failed to State a Claim For Conspiracy to Monopolize or to Restrain Trade Against UT

EOS does not contest that UT is not a producer of rapid prototyping equipment or related items. (EOS Opp. at 19-20.) Nonetheless, EOS maintains that UT has conspired (with 3D Systems) with the specific intent to monopolize the market for such equipment and related items by consenting to the transfer of intellectual property licenses to 3D Systems. But a Section 2 conspiracy claim requires a "unity of purpose or a common design or understanding, or a meeting of minds in an unlawful agreement." *American Tobacco Co. v. United States,* 328 U.S. 781, 810 (1946). EOS's sole allegation regarding UT's supposed conspiratorial intent is that UT consented to certain intellectual property transfers as part of the DTM merger. (*See* Counterclaims, ¶ 35.) But EOS misses a critical point: "a supplier who licenses a product to another does not join the licensee in a conspiracy to monopolize merely because the licensee turns around and exploits the license for its own monopolistic purposes." *Syufy Enters. v. American Multicinema, Inc.,* 793 F.2d 990, 1000 (9th Cir. 1986). EOS must allege facts suggesting that UT specifically intended to monopolize, not merely that UT acquiesced to 3D Systems' alleged monopoly by allowing the intellectual property transfer. *Id.* at 1001 (mere "acquiescence in conduct with knowledge that it was anticompetitive" not sufficient for liability to conspire to monopolize in violation of Section 2). There is "no authority that a Section 2 conspiracy claim may be established without some showing that more than one of the alleged co-conspirators had at least some awareness that the underlying conduct was anticompetitive or monopolistic." *Id.* In the absence of facts showing specific intent, and with no allegation that

7

UT believed its acquiescence served monopolistic ends, there can be no conspiracy to monopolize claim. *Id.* at 998-99. None of EOS's cited cases involve a mere supplier of intellectual property, and none supports EOS's claim that it has sufficiently alleged UT's specific intent to monopolize.[6]

Even EOS does not argue that the facially lawful transfer of intellectual property rights can be an unlawful agreement in violation of Section 1. It concedes that such a transfer only constitutes evidence of an unlawful agreement if the transfer is "part of a contract that materially restrains competition in the relevant markets." (EOS Opp. at 18-19) (emphasis added). While EOS is correct in stating that there must be some agreement involving UT that unreasonably restrains trade, it still must identify the actual agreement into which UT supposedly entered that restrained trade in a relevant market. Having conceded that there must be something more than UT's transfer of intellectual property rights, EOS has failed to aver any facts indicating that UT had a "'conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 773 (S.D. Miss. 1992) (citation omitted).[7] For this reason, dismissal is required.

---

[6] The cases that EOS cites provide no support for its position that UT's willingness to transfer the intellectual property assets to 3D Systems demonstrates a specific intent to monopolize sales in a market where it has no share or any alleged intent to enter. (EOS Opp. at 20.) *American Tobacco Co.*, involved a conspiracy between competitors (tobacco companies) and executives of those competitors to monopolize the market in which they were participants. *Great W. Directories v. Southwestern Bell Tel. Co.*, 63 F.3d 1378 (5th Cir. 1995) *opinion withdrawn and superseded in part by* 74 F.3d 613 (5th Cir. 1996), *vacated pursuant to settlement*, did not involve an allegation of "conspiracy to monopolize," only monopoly and attempted monopoly, neither of which apply to UT, which was not a competitor in any alleged relevant market. *Id.* at 1384. The defendant in *Great W. Directories* was a direct competitor of the plaintiffs, not a supplier like UT. *Advanced Health-Care Serv Inc v. Radford Cmty. Hosp.*, 910 F.2d 139, 150 (4th Cir. 1990) (EOS Opp. at 10), involved allegations of conspiracy to monopolize between medical equipment companies and hospitals that marketed that equipment, which were plainly involved in the actual production and sale of the allegedly monopolized product.

[7] EOS's citations to various cases that hold that "specific intent" is not necessary for liability under Section 1 are beside the point. (EOS Opp. at 14.) EOS's Section 2 claim against UT fails (in part) because there is no allegation of specific intent. EOS's Section 1 claim fails because it has not identified any conduct by UT that, apart from what EOS concedes was a facially lawful license transfer, shows conscious participation in an illegal scheme. *Futurevision*, 789 F. Supp. at 773.

### E. EOS Has Abandoned Its Request to Have the 3D Systems-DTM Merger Unwound.

In its Prayer for Relief, EOS asks:

> That the acquisition of DTM by 3D, with the participation of UT, as well as the attempted enforcement of the '589 and '070 Patents, be adjudged and decreed to be unlawful and in violation of the Antitrust laws; and
>
> That 3D and UT, and all persons acting on their behalf, be permanently enjoined and restrained from carrying out any contract, agreement, understanding or plan, the effect of which would be to combine DTM with the operations of 3D, and which furthermore would restrain competition by EOS through enforcement of any patent rights acquired by 3D through merger with DTM.

(Counterclaims Prayer, ¶¶ 2-3.)

EOS now concedes that it does not seek relief that would "'undo' or 'halt' the merger between 3D and DTM." (EOS Opp. at 20.) Accordingly, this Court should strike paragraphs 2 and 3 from EOS's Prayer for Relief.

Moreover, EOS is barred by laches from seeking equitable relief that would have the effect of undoing the 3D Systems-DTM merger (which would include any attempt to bar 3D Systems from using or enforcing DTM's property rights in the merger). EOS concedes that it was not only fully aware of the merger but "was in fact an active participant in the administrative proceedings that preceded and followed the merger." (EOS Opp. at 21.) EOS offers no justification for its 18-month delay to sue to overturn the merger. With no excuse for its lack of diligence in bringing suit against the merger, laches bars EOS from its claim for equitable relief.

## II. COUNTERCLAIM VI SHOULD BE DISMISSED AS A MATTER OF LAW.

EOS asserts that "[e]ach and every element of EOS's *Handgards*-type claim . . . has been set forth with particularity, including more than enough factual support." (EOS Opp. at 2.) EOS is simply wrong: EOS has not, and cannot, set forth these supposedly particularized statements

from the Complaint because the allegations do not exist. Thus, EOS's opposition provides no basis to avoid the application of the *Noerr-Pennington* immunity that bars Count VI.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.* ("*PRE*"), 508 U.S. 49, 60 (1993), the Supreme Court set forth the two elements that must be shown before the very limited "sham exception" to the *Noerr-Pennington* immunity could apply: (1) "the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits;" and (2) the lawsuit was instituted with no probable cause as an attempt to interfere directly with a competitor's business relationships through the use of governmental process. *See also Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.*, 964 F. Supp. 624 (D. Conn. 1997). Thus, where a patent-holder files suit for infringement, the *Noerr-Pennington* doctrine ordinarily will insulate the patent-holder from an antitrust counterclaim related to efforts to enforce the patent. While a litigant can, in some circumstances, assert facts to overcome that presumption, EOS's effort, which is based on incorrect facts and inapplicable case law, must fail.

### A.    The Foreign Decisions on Corresponding Patents Are Favorable to Plaintiffs But Are Also Irrelevant.

Throughout its opposition, EOS repeatedly states that plaintiffs know the patents are invalid. This allegation is based solely on EOS's incorrect assertion that the prosecution of patents similar to or corresponding with patents '589 and '070 in foreign courts and offices resulted in findings of invalidity or nullification. (EOS Opp. at 14-15.)

EOS is wrong for multiple reasons. First, 3D Systems' corresponding patents in foreign jurisdictions have <u>not</u> been rejected. In fact, in France and Italy, the corresponding patents were found to be valid; in Germany, the court held that the patent was not infringed, not that the patent was invalid; and in Japan, the patent was narrowed but not found to be invalid. *See* Declaration

of Elizabeth J. Brown Fore, ¶¶ 2 – 3, Ex. A (Italian decision and translation) and Ex. B (French decision and translation).[8]

Second, EOS uses shaky precedent[9] in an attempt to establish that it has met the two prongs of the *PRE* test. But even if any foreign court or patent office had found a 3D Systems patent to be invalid, this does not render the related United States patent invalid much less demonstrate that that it is "objectively baseless" for 3D Systems to believe that the patent that the United States Patent Office issued is invalid. *See Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 907 (Fed. Cir. 1986); *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1072 (Fed. Cir. 1994) (cautioning against considering the action of a foreign patent examiner, since "'international uniformity' in theory and practice of patent law has not been achieved").

### B.  EOS Cannot Meet Either Part of the Test For an Exception to Immunity to Apply.

As explained more fully in plaintiffs' moving papers, the first prong of the test that EOS must meet in order to establish the fraud exception to *Noerr-Pennington* immunity is that 3D Systems' claims are objectively baseless. *PRE*, 508 U.S. at 63. It cannot be sufficient for EOS simply to assert that plaintiffs' patent claims are objectively baseless; otherwise, *Noerr-Pennington* immunity would be rendered toothless. Instead, EOS must allege <u>facts</u> on which the

---

[8] As explained more fully in the concurrently-filed Request For Judicial Notice, judicial notice can be taken of decisions of foreign jurisdictions. Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *see also St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

[9] EOS cites *J.P. Stevens & Co v. Lex Tex Ltd.*, 747 F.2d 1553 (Fed. Cir. 1984), but the case (which has been overruled by *Baxter Intern., Inc. v. McGaw, Inc*, 149 F.3d 1321 (Fed. Cir. 1998)) simply states that it constitutes "inequitable conduct" before the United States Patent and Trademark Office if there is no *disclosure* of the fact that foreign courts and patent offices have rejected claims in a foreign application corresponding to a U.S. application. *J.P. Stevens*, 747 F.2d at 1566.

Court could conclude, should those facts be proven at trial, that plaintiffs' claims are objectively baseless.

EOS's counterclaims contain no such factual allegations. In its opposition, EOS cites to the following allegation: "A Settlement, Purchase and Transfer Agreement between EOS and 3D [Systems] granted EOS 'exclusive and worldwide royalty-free license for all patent rights applicable to the field of laser sintering.' (Counterclaims ¶ 8.)." (EOS Opp. at 14.) Obviously, granting a license to use the patents does not qualify as a fact establishing that plaintiffs have brought an objectively baseless suit to enforce the patents.

EOS next alleges that "3D [Systems] and UT know the '589 and '070 Patent claims are invalid based upon invalidity and nullification of corresponding patents. (*Id.* ¶ 53.)" (EOS Opp. at 14-15.) EOS is alluding to the foreign patents, *none* of which have been found invalid or nullified. Thus, the two "facts" that EOS avers to try to meet the objectively baseless test are either irrelevant or wrong factually. And EOS's opposition does not even hint at any other facts that EOS might be able to allege (or prove) that might show that plaintiffs' patent claims are objectively baseless.

EOS's attempt to escape the application of *Noerr-Pennington* immunity under the second element is equally meritless. In fact, EOS misstates the legal standard. EOS cites *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998), to support the statement that "[a]lthough the law presumes an assertion of a duly granted patent is made in good faith; this presumption is overcome by evidence of bad faith." (EOS Opp. at 16.) But EOS fails to mention that the presumption of validity afforded a United States patent and the corresponding presumption that an infringement suit is in good faith can only "be rebutted by clear and convincing evidence." *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979);

12

35 U.S.C. § 282. Thus, it is inaccurate for EOS to claim that "[a]ll that is required for a finding of bad faith in the context of an infringement suit is that the patent holder know that its patent was invalid in which the patent holder attempts to enforce a government granted monopoly to which the patent holder knows he has no right." (EOS Opp. at 16.) And even if this were the standard, EOS has failed to set forth any allegations that have not already been shown to be false.

The probable cause necessary to justify instituting civil proceedings requires no more than a "'reasonabl[e] belie[f] there is a chance that [a] claim may be held valid upon adjudication.'" *Hartford Life Ins.*, 964 F. Supp. at 627 (citing *PRE*, 508 U.S. at 63).[10] Because there is no indication that patents '589 and '070 would be held invalid, plaintiffs have met this burden. Thus, EOS has not established either element of the *PRE* exception to *Noerr-Pennington* immunity, and Count VI must fail.

## CONCLUSION

For the foregoing reasons, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court should grant plaintiffs' motion to dismiss EOS' two antitrust counterclaims.

---

[10] EOS devotes a page to "showing" that the elements of a *Handgards* claim have been satisfied. (EOS Opp. at 16-17.) Because plaintiffs have already shown that the first element (that plaintiffs are attempting to enforce a patent known to be invalid) has not and cannot be established, and because many of these remaining elements are discussed in Section A, *supra*, regarding dismissal of Count V, plaintiffs will not point out all the other inadequacies and inaccuracies in EOS's conclusions.

Dated: June 12, 2003							Respectfully submitted,

*[signature: Philip E. Cook, by permission EJBF]*

PHILIP E. COOK
California State Bar No. 149067
Admitted *pro hac vice*
ROBERT W. DICKERSON
California State Bar No. 89367
Admitted *pro hac vice*
JONES DAY
555 West Fifth Street
Suite 4600
Los Angeles, California 90013-1025
Telephone: (213) 489-3939

ROBERT W. TURNER
Texas State Bar No. 20329000
JONES DAY
2727 North Harwood Street
P.O. Box 660623
Dallas, Texas 75266-0623
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

GRAY, CARY, WARE & FREIDENRICH LLP
ALAN D ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-6875
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

Attorneys for Plaintiffs
BOARD OF REGENTS, THE
UNIVERSITY OF TEXAS SYSTEM,
and 3D SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent via facsimile and United States certified mail, return receipt requested to the following counsel of record on this 12th day of June, 2003.

Thomas H. Watkins
State Bar No. 20928000
Albert A. Carrion, Jr.
State Bar No. 03883100
HILGERS & WATKINS P.C.
98 San Jacinto Boulevard
San Jacinto Center, Suite 1300
Austin, Texas 78701
(512)476-4716
(512) 476-5139 Facsimile

Michael H. Baniak
Michael D. Gannon
BANIAK PIKE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 Facsimile

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

ELIZABETH J. BROWN FORE