**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT,
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2003 JN 12 PM 5: 01

U.S. CLERKS OFFICE

BY._____ DEPUTY

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No.  A03 CA 113SS |
| EOS GmbH Electro Optical Systems, | § § | |
| Defendant. | § § | |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO BIFURCATE AND STAY ANTITRUST COUNTERCLAIMS (COUNTS V AND VI) PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42(b)

Plaintiffs Board of Regents, the University of Texas System ("UT") and 3D Systems, Inc.

("3D Systems") hereby reply to EOS GmbH Electro Optical Systems' ("EOS") Opposition to

Plaintiffs' Motion to Bifurcate and Stay Defendant's Antitrust Counterclaims.

### INTRODUCTION

In its Opposition, defendant EOS completely misstates applicable case law to avoid

bifurcation of the patent issues that are the basis of the complaint in this litigation from EOS's

two antitrust counterclaims (Counts V and VI).  Plainly, bifurcation of patent and antitrust claims

has become the legal norm, and there is substantial reason in this case to follow that norm.  EOS

not only fails to cite to the Court any case law that justifies its position, but fails to deal with the

very significant areas of non-overlap raised by EOS's antitrust counterclaims that are irrelevant

to the patent and patent-related claims.

Bifurcating and staying discovery of the antitrust counterclaims would prevent time-

consuming and expensive analysis from taking place prematurely.  Embroiling the parties in

percipient and expert discovery on the antitrust counterclaims would require a substantial amount of activity that would do <u>nothing</u> to expedite or enlighten the trial of the patent claims (and certainly not an early trial of the patent claims). Notably, EOS admits that the resolution of the patent claims will determine, at a minimum, whether one of the two antitrust claims (Count VI) will proceed <u>at all</u>, and the resolution of the patent claims undoubtedly will shed significant light on the value (for litigation and settlement purposes) of EOS's second antitrust claim. Moreover, EOS never explains why it would be efficient to keep the largely separate antitrust issues entangled with patent issues – having also conceded that Count V, the principal antitrust Counterclaim, "stands independent of the potential validity issues[.]" (EOS Opp. at 4-6.) In short, resolving the patent claims before the antitrust claims would undoubtedly be efficient for both the parties and the Court.

Although EOS argues that it will be prejudiced by bifurcation, that "prejudice" is hollow in view of the fact that EOS was not the party that initiated this litigation, and it delayed asserting the antitrust claims for over eighteen months after the Department of Justice allowed the 3D Systems-DTM Corporation merger – the centerpiece of the antitrust counterclaims – to close. If EOS genuinely sustained damage from this merger, as it claims, then it certainly would have moved more quickly to assert its antitrust counterclaims. Indeed, EOS's delay suggests that its motivation in asserting these claims is either punitive (because patent claims were asserted against it), or is based on contentions that substantially disappear if plaintiffs' patent claims are resolved first. In contrast, plaintiffs <u>would</u> be prejudiced if the resolution of the patent claims had to be delayed in order to accommodate the complex discovery into quite separate issues associated with the antitrust claims.

In short, EOS gives the Court no reason to deviate from the standard practice in patent litigation where the defendant has asserted antitrust counterclaims that are based on the alleged invalidity of the underlying patents. The Court should stay the antitrust counterclaims, including discovery related to those claims, for the sake of judicial efficiency and to spare the massive discovery costs that might prove unnecessary (at least in part) once the patent claims are resolved.

## ARGUMENT

### I.    Plaintiffs Have Met Their Burden For Severing the Antitrust Counterclaims From the Patent Claims.

Nothing in EOS's opposition calls into question the standard set forth by *In re Innotron Diagnostics*, 800 F.2d 1077, 1084-85 (Fed. Cir. 1986), nor the observation by the Federal Circuit that it is "now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim." *See also Shell Oil Co. v. American Cyanamid Co.*, 219 U.S.P.Q. 275, 277 (S.D. Tex. 1982); *Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 614 (D. Col. 2000). Indeed, as noted in those cases, there are literally dozens of instances where courts have severed patent issues from antitrust issues because they almost always involves different evidence, different legal principles and different witnesses, and resolution of the patent issues almost always informs the resolution of – if not entirely decides – the antitrust issues. None of the central and complex issues raised by the antitrust counterclaims, such as the practices and events alleged in paragraph 42 of the Counterclaim, the DTM merger and its effects, a relevant market definition, antitrust injury and measurement of alleged damages suffered by EOS, will be at stake in a trial of patent issues (including the patent-related Counterclaims, Counts VII and VIII). EOS only superficially asserts the contrary. (EOS Opp. at 5-6.) Resolution of the patent issues in plaintiffs' favor will entirely eliminate Count VI of the Counterclaims, but even if plaintiffs

lose the patent issues, both Counts V and VI will require development and discovery of significant additional issues (such as market definition, antitrust injury and antitrust damages).

In *Innotron*, the Federal Circuit denied Innotron's writ of mandamus, upholding the district court's decision to stay Innotron's antitrust claims and to try the patent issues before the antitrust issues. *Id.* at 1078. EOS asserts that "only a single patent-type antitrust counterclaim was at issue in *Innotron*" and, therefore, the case is distinguishable because here there are two antitrust counterclaims – one that EOS contends could only partially be classified as a "patent-type antitrust counterclaim," and another that is a "pure" Sherman Act claim. (EOS Opp. at 8.) *See Innotron*, 800 F.2d at 1084. But EOS is wrong: as the Federal Circuit stated, "the present case involves two species of antitrust claims . . . while [t]he present petition [for a writ of mandamus] concerns only a 'patent type antitrust' counterclaim." *Id.* Thus, the plaintiff in *Innotron* did not even challenge via its writ the district court's decision to sever the "pure" antitrust counterclaim, which is the type that EOS asserts it has "predominantly" alleged.

Nor does EOS's focus on the procedural posture of *Innotron* – the denial of a writ of mandamus – aid EOS's cause. The Federal Circuit there recognizes that the district court has significant discretion to grant a motion to bifurcate and to stay discovery on antitrust counterclaims.[1] That the Federal Circuit declined to reverse via writ hardly diminishes the importance of the decision.[2]

---

[1]  EOS cites an unpublished decision to support the notion that writs of mandamus can be denied where the district courts have denied bifurcation, but that is hardly the point. (EOS Opp. at 9); *In re Theodor Croz & Sohne*, No. 92M-338, 1992 WL 188908 (Fed. Cir. May 18, 1992). Moreover, the court in *In re Theodor Croz* found that "unlike *Innotron*, the patent and antitrust claims in the present case are so interwoven as to preclude effective separation." *Id.* at *2. Here, by contrast, most of the antitrust issues are not at all "interwoven" with the patent issues and EOS does not argue seriously to the contrary.

[2]  EOS argues that plaintiffs have not met the requirements of Federal Rule of Civil Procedure 42(b) "because [plaintiffs] have provided absolutely no proof to support their motion – only attorney argument." (EOS Opp. at 2.) No case law supports EOS's contention that attorney argument on a motion such as this is inadequate, and, of course, EOS's opposition to plaintiffs' motion is limited to attorney argument as well.

EOS then cites a series of cases where the courts addressed bifurcation of <u>liability</u> and

<u>damages,</u> a context completely different than bifurcating different types of liability claims such

as patent and antitrust. <u>None</u> involved antitrust claims. *See Home Elevators, Inc. v. Millar*

*Elevator Serv. Co.*, 933 F. Supp. 1090 (N.D. Ga. 1996) (defendants' motion for bifurcation and

stay of discovery on damages issue in patent infringement case denied); *Willemijn*

*Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429 (D. Del. 1989) (same);

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir.

2001) (motion to bifurcate denied in patent case with no antitrust claims); *H.B. Fuller Co. v.*

*National Starch & Chem. Corp.*, 595 F. Supp. 622 (D. Del. 1984) (denying request for separate

trials on liability and damages). And, while there are frequently good reasons to bifurcate

liability and damages, the rationale for doing so is far less compelling than the reasons for

bifurcating patent and antitrust claims. Not only do issues associated with liability and damages

tend to involve the same witnesses, but may, under the Seventh Amendment, require the same

juries. Here, EOS cannot assert the need for the same jury to hear the patent and antitrust claims;

the law is clear that separate juries are acceptable. *Innotron*, 800 F.2d at 1086.

The other cases that EOS cites (EOS Opp. at 3, 6) likewise are inapplicable. For

example, in *Genentech, Inc. v. Wellcome Found. Ltd.*, 14 U.S.P.Q.2d 1363, 1373 (D. Del. 1990),

the court denied the motion to bifurcate a fraudulent and inequitable conduct defense from an

antitrust counterclaim because "the validity of the patents and the defense of fraudulent and

inequitable conduct will require exploration of <u>much of the same evidence</u> that will be presented

on Defendants' antitrust claim." *Id.* (emphasis added). Here, the antitrust counterclaims will not

require "much the same evidence." Even EOS admits that Count V "stands independent of the

patent validity issues" (EOS Opp. at 4.); Count VI disappears if plaintiffs prevail on their patent

claims but, even if they do not, significant additional antitrust issues must be developed.

In *ACS Communications, Inc. v. Plantronics, Inc.*, No. Civ. 95-20294 SW, 1995 WL

743726 (N.D. Cal. Dec. 1, 1995), the court denied defendant's motion for separate trials and a

stay but explained that cases involving patent claims and antitrust counterclaims, as is the case

here, should be treated differently than those with antitrust claims and patent counterclaims,

which was the case before the *ACS* court.

The facts warrant and the law clearly supports bifurcation of the patent claims and

antitrust counterclaims here. For example, in *Willemijn*, the court explained that "if one of the

three factors supporting bifurcation listed in Rule 42(b) is present, a court may order separate

trials." *Id.* at 1433. (emphasis added). Those three factors are: (1) "in furtherance of

convenience;" (2) "to avoid prejudice;" or (3) "when separate trials will be conducive to

expedition and economy." Fed. R. Civ. P. 42(b). As set forth more fully in plaintiffs' moving

papers, separate trials (and a stay in discovery on the antitrust claims) will permit faster

resolution of the patent issues in this case, will save the resources of the parties and the Court by

avoiding a premature investment of time and money, will avoid prejudice to plaintiffs, and will

avoid jury confusion. EOS, which showed no interest in asserting antitrust claims against

plaintiffs until this suit was filed, is in no position to claim that necessity and fairness require

entangling the patent claims with complex and factually independent antitrust issues belatedly

raised by EOS.

## II.    Discovery Concerning EOS's Antitrust Counterclaims Should Be Stayed Pending the Outcome of the Patent Claims.

EOS correctly notes that, when courts sever antitrust counterclaims from patent claims in

the same case, they do not always stay discovery of the antitrust counterclaims. (EOS Opp. at 7.)

But courts often do grant such a stay, and a stay is appropriate here. *ASM Am., Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444, at *6 (N.D. Cal. Jan. 9, 2002) ("It is common practice in federal court to stay antitrust counterclaims until after the trial of the invalidity issue."); *Shell Oil*, 219 U.S.P.Q. at 277 (holding that plaintiff's patent validity/infringement claims should be tried first and staying discovery on antitrust issues pending the termination of the first trial); *Henan Oil Tools, Inc. v. Engineering Enter., Inc.*, 262 F. Supp. 629, 631-32 (ordering trial of patent infringement/validity claims first and staying discovery related to antitrust issues until termination of the first trial).

The only cases EOS cites (EOS Opp. at 8-9) are easily distinguishable. *Brandt, Inc. v. Crane*, 97 F.R.D. 707 (N.D. Ill. 1983), involved two separate cases with different parties that were consolidated for discovery purposes only and then separated for trial. *Id.* at 707 ("Civil action number 81 C 6989 was brought by Brandt against Crane alleging that one of its patents is infringed by a Billcon machine sold by Crane. . . Civil action number 82 C 3504 was brought by Billcon against Brandt," alleging somewhat similar claims to Crane's counterclaims in the first suit). And in *Alarm Device Mfg. Co. v. Alarm Prods. Int'l, Inc.*, 60 F.R.D. 199 (E.D.N.Y. 1973), the court decided not to stay discovery but did so based on its conclusion that there was "relatively little law" in the area. *Id.* at 203.[3] Needless to say, the law in this area has come a long way in the last 30 years. *ASM Am.*, 2002 WL 24444 at *6; *Shell Oil*, 219 U.S.P.Q. at 277.

In addition to the solid legal basis for doing so, staying discovery on the antitrust counterclaims is logical and will not prejudice EOS. Both the patent and antitrust claims could require demanding discovery, but in wholly unrelated areas. EOS contends that the "market" analysis is the same for patent and antitrust issues, and that "[a]t a minimum, evidence of

---

[3] In *Alarm Device,* the court also focused on the fact that bifurcation would save none of counsels' time.

relevant markets will be presented twice if Plaintiffs get their way." (EOS Opp. at 6.) But, EOS is wrong. Where there are only two suppliers of the patented invention (the patent owner and the infringer), then the traditional *Panduit*[4] factors apply, and resort to any "market share" evidence is unnecessary. Indeed, evidence as to "market share" is only relevant where the patent owner seeks lost profit damages in something other than a two-supplier industry such that the patent owner cannot prove *Panduit* factor No. 2 – the absence of non-infringing alternatives. *State Indus., Inc. v. More-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989) (*en banc*) ("the question then becomes whether an established market share combined with the other *Panduit* factors is sufficient to show State's loss to a reasonable probability."). Because EOS has contended in other litigation that there are only two suppliers, world-wide, for the laser sintering machines covered by the patents-in-suit, there will likely be no need even in trying damages for the patent claims to resort to "market share." Moreover, even were that to occur, the focus in the patent damages context is by definition on the *patented* product itself. In contrast, antitrust relevant market inquiry is much broader and more complicated and would be determined by evaluating *economic* substitutes for the product and the cross-elasticity of demand for the product. *See Apani Southwest, Inc. v. Coca-Cola Enter.*, 300 F.3d 620, 628 (5th Cir. 2002). EOS's argument that discovery and proof on plaintiffs' patent infringement claims will overlap the discovery and proof on its antitrust counterclaims is disingenuous at best.

The core elements of plaintiffs' patent infringement claims require different proof, different discovery, and different witnesses than the elements of Sherman Act antitrust claims.

---

[4] *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978) (holding that to obtain as damages the profits on sales, a patent owner would have made absent the infringement, a patent owner must prove: (1) demand for the patented product; (2) absence of acceptable noninfringing substitutes; (3) his manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit he would have made).

For example, to establish a Sherman Act section 1 or 2 violation, in addition to properly pleading and establishing a relevant market, EOS must show that it has suffered antitrust injury. *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 99 (5th Cir. 1988). EOS would also likely need an economist to testify that the allegedly illegal actions of plaintiffs harmed competition and were the cause of EOS's damages and to testify how much those damages were and why. For a patent infringement claim, however, plaintiffs must merely prove infringement of a single claim in either of the patents in suit, and defendant has the burden to establish invalidity. Again, by definition the focus is on the patents, on their scope, on the accused products, and on any prior art or other evidence EOS may present in its attempt to show that the patents are invalid, or to rebut plaintiffs' proof of infringement. None of this evidence is relevant to the antitrust claims.

Clearly, judicial economy and the parties' resources would be sacrificed if simultaneous discovery is required.[5] Moreover, patent and antitrust discovery issues are easily and commonly separated. The proof required for the patent issues is not at all duplicative of the proof required for the antitrust claims. *Brandt*, 97 F.R.D. at 708 ("it is apparent that the antitrust claims will require proof quite different in nature and scope than the proof relevant to the patent issues"); *see also ASM Am.*, 2002 WL 24444 at *6; *Shell Oil*, 219 U.S.P.Q. at 277. The Court should stay discovery and address the two antitrust claims only after the patent issues are decided.

---

[5] EOS's contention that it would be acceptable to bifurcate the trial on the antitrust counterclaims, but not discovery on those claims suggests that EOS's motives are indeed punitive, and that the antitrust claims have been asserted in order to increase plaintiffs' costs for enforcing their intellectual property rights. But, as discussed above, depending on the patent claims' resolution, discovery on the antitrust claims could become entirely unnecessary, or the relevant and disputed facts would be significantly narrowed.

# CONCLUSION

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 42(b), this Court should grant plaintiffs' motion, order that the patent issues be severed from the antitrust issues, and order that discovery of the antitrust counterclaims be stayed pending the outcome of the patent claims.

Dated:  June 12, 2003                 Respectfully submitted,

*Philip E. Cook, by permission EJBF*

PHILIP E. COOK
California State Bar No. 149067
Admitted *pro hac vice*
ROBERT W. DICKERSON
California State Bar No. 89367
Admitted *pro hac vice*
JONES DAY
555 West Fifth Street
Suite 4600
Los Angeles, California 90013-1025
Telephone: (213) 489-3939

ROBERT W. TURNER
Texas State Bar No. 20329000
JONES DAY
2727 North Harwood Street
P.O. Box 660623
Dallas, Texas 75266-0623
Telephone:  (214) 220-3939
Facsimile:   (214) 969-5100

GRAY, CARY, WARE & FREIDENRICH LLP
ALAN D ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-6875
Telephone:  (512) 457-7000
Facsimile:  (512) 457-7001

Attorneys for Plaintiffs
BOARD OF REGENTS, THE
UNIVERSITY OF TEXAS SYSTEM,
and 3D SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent via facsimile and United States certified mail, return receipt requested to the following counsel of record on this 12th day of June, 2003.

Thomas H. Watkins
State Bar No. 20928000
Albert A. Carrion, Jr.
State Bar No. 03883100
HILGERS & WATKINS P.C.
98 San Jacinto Boulevard
San Jacinto Center, Suite 1300
Austin, Texas 78701
(512)476-4716
(512) 476-5139 Facsimile

Michael H. Baniak
Michael D. Gannon
BANIAK PIKE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 Facsimile

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

ELIZABETH J. BROWN FORE