ORIGINAL
FILED

2003 AU 20 PM 4: 41

U.S. CLERK

BY:_____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

Board of Regents, The University of Texas §
System, and 3D Systems, Inc., §
§
§
Plaintiffs, §
§
v. §    Civil Action No. A03 CA 113SS
§
EOS GmbH Electro Optical Systems, §
§
Defendant. §

## COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE ALLEGATIONS IN AMENDED COUNTERCLAIM COUNT V AND TO DISMISS AMENDED COUNTERCLAIM COUNT V

Plaintiff and counterclaim defendant 3D Systems, Inc. and its corporate parent

counterclaim defendant 3D Systems Corporation (collectively, "3D Systems") hereby

respectfully request that the Court, pursuant to Federal Rule of Civil Procedure 12(f), strike

Paragraphs 40(e)(1)-(3), 44, and the last sentence of Paragraph 46 of Count V in the Amended

Counterclaims asserted by defendant EOS GmbH Electro Optical Systems ("EOS").

Alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss

Count V in its entirety. 3D Systems also respectfully requests a hearing on this motion.

Gray Cary\AU\4112304.1

58

# TABLE OF CONTENTS

Page

I. <u>INTRODUCTION</u> .................................................................................................... 1

II. <u>STATEMENT OF FACTS</u> ...................................................................................... 2

III. <u>ARGUMENT</u>. ......................................................................................................... 3

    A.    <u>Amended Allegations in Count V that Ignore the Court's Rulings and
Do Not Allege or Support Requisite Antitrust Injury to EOS Would
Prejudice 3D Systems and Should Be Stricken</u>. ................................................. 4

        1.    *"Higher Prices" Allegations (Paragraph 44)* .......................................... 5

        2.    *"DOJ Consent Decree License" Allegations
(Paragraph 40(e)(1)-(2)* ........................................................................ 6

        3.    *"Entry Cost" Allegations (Last Sentence of Paragraph 46)* ................. 7

        4.    *"Grand Jury Investigation" Allegations (Paragraph 40(e)(3))* ............. 8

    B.    <u>None of the Remaining Allegations of Improper Conduct in Count V
Allege or Support Requisite Antitrust Injury to EOS</u>. ..................................... 9

        1.    *"Exclusive Materials Distribution Agreements" Allegations
(Paragraph 40(a))* .............................................................................. 10

        2.    *"Termination of Development / Distribution Agreements"
Allegations (Paragraph 40(b))* ............................................................ 10

        3.    *"Acquisition of Materials Manufacturer" Allegations
(Paragraph 40(c))* .............................................................................. 11

        4.    *"Threats to Warranty and Service" Allegations
(Paragraph 40(d))* .............................................................................. 11

IV. <u>CONCLUSION</u> ..................................................................................................... 12

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107 (5th Cir. 1979)........................................10

*Anago, Inc. v. Tecnol Medical Products, Inc.*, 976 F.2d 248 (5th Cir. 1992)..................4,9

*Apani Southwest, Inc. v. Coca-Cola Enterp., Inc.*, 300 F.3d 620 (5th Cir. 2002) .............11

*Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105 (6th Cir. 1989)..................................................9

*Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300 (5th Cir. 1984)................................6

*Brader v. Allegheny General Hospital*, 64 F.3d 869 (3d Cir. 1995)....................................2

*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986)....................................4,11

*City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365 (1991) ..............................7

*Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*,
    129 F.3d 240 (2d Cir. 1997)........................................................................................10

*Fruehauf Corp. v. FTC*, 603 F.2d 345 (2d Cir. 1979) ......................................................11

*Futurevision Cable System, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760
    (S.D. Miss. 1992)............................................................................................................9

*George Haug Co., Inc. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136 (2d Cir.
    1998) ..............................................................................................................................9

*In re Grand Jury Subpoena*, 478 F. Supp. 59 (M.D. La. 1979)...........................................8

*In re Livent, Inc. Noteholders Security Litigation*, 151 F. Supp. 2d 371 (S.D.N.Y.
    2001) ............................................................................................................................11

*Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385 (D. Del. 1984),
    aff'd, 769 F.2d 152 (3d Cir. 1985) ................................................................................6

*Muenster Butane, Inc. v. Stewart Co.*, 651 F.2d 292 (5th Cir. 1981) ................................10

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574
    (1986)..............................................................................................................................5

*Paul M. Harrod Co. v. A.B. Dick Co.*, 194 F. Supp. 502 (N.D. Ohio 1961) ......................3

*Pearl Brewing Co.*, Civ. No. SA-93-LA-205, 1993 WL 424236 (W.D. Tex. Mar.
    31, 1993)....................................................................................................................4,11

*Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95 (5th Cir. 1988) ..............4,9,10,11,12

*Pool Water Products v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001)....................................9

*Reiter's Beer Distributing, Inc., v. Christian Schmidt Brewing Co.*, 657 F. Supp.
     136 (E.D.N.Y. 1987)..............................................................................................3

*Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992 (N.D. Cal.
     2003) ......................................................................................................................3

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966)........................................................9

*Viacom Int'l, Inc. v. Tele-Communications, Inc.*, No. 93 Civ. 6658 (LAP), 1994
     WL 561377 (S.D.N.Y. Oct. 12, 1994) ......................................................................7

## FEDERAL STATUTES

Fed. R. Civ. P. 12.................................................................................................................3,5

Fed. R. Civ. P. 26.................................................................................................................5

# I.
# INTRODUCTION

This Motion is necessary because, in amending its counterclaim, EOS has ignored the Court's rulings by continuing to base its antitrust claim on alleged conduct that the Court has ruled did not cause anti-competitive effects. In its July 2, 2003 Order that governs EOS's amended pleading, the Court held that "[m]ost of the injuries EOS describes are not appropriate antitrust injuries." (July 2, 2003 Order ["Order"], p. 9.) The Court also held that "EOS cannot claim to be injured by the alleged higher prices customers have been forced to pay for RP systems, because it is not a customer"; that "the fact that EOS lost its bid to become 3D Systems' licensee as a result of the Justice Department consent decree is not an antitrust injury"; and that "EOS's expenditures of resources to break into the U.S. market for RP systems is simply a cost of doing business." (*Id.*)

Ignoring these rulings, EOS has filed an amended Count V, still alleging that (i) higher prices to customers, (ii) EOS's loss of its bid to become 3D Systems' licensee under the Justice Department consent decree; and (iii) increased costs of entry into the U.S. market constitute antitrust injury to EOS. (Amended Counterclaims ["AC"], ¶¶ 40(e)(1)-(2), 44, 46.) EOS's amended Count V also adds a new allegation of conduct that is similarly immaterial to the requisite antitrust injury to EOS. (*Id.*, ¶ 40(e)(3).)

Because EOS's adjustments to these allegations do not avoid the import of the Court's prior ruling, the allegations should all be stricken from Count V of EOS's Amended Counterclaim. And because EOS — here an alleged participant in the industry — apparently cannot plead facts establishing how any of 3D Systems' alleged conduct is predatory in antitrust

terms, the inference is compelling that its suit has no substance.[1]  Thus, because the paucity of

EOS's amendments and their conflict with the Court's Order underscores the insufficiency of

Count V, the Court should dismiss Count V in its entirety.

## II.
## STATEMENT OF FACTS

In its original Count V, EOS alleged that 3D Systems committed "acts . . . with the intent

of excluding competition" consisting of:

(a)     agreements with "materials" manufacturers that gave 3D Systems exclusive
        distribution rights in the U.S.;

(b)     terminating distribution and development agreements with a materials
        manufacturer — evidently not EOS — "in order to exclude competition" with
        respect to such materials;

(c)     acquiring a manufacturer of materials in order to exclude competition from that
        manufacturer with respect to materials sales;

(d)     threatening not to honor warranty or service claims unless customers agreed to
        buy materials and services solely from 3D Systems; and

(e)     complying with the Justice Department consent decree on terms that, EOS
        alleges, were not pro-competitive.

(Counterclaims, ¶ 42(a)-(e); *compare* AC, ¶ 40(a)-(e).)

In Count V of its Amended Counterclaims, EOS purports to improve its claim of antitrust

injury with the following additions:

(1)     that 3D Systems "specifically did not select EOS as the New Licensee knowing
        that EOS would be the most effective and immediate competition, and with the
        specific intent in combination with DTM to damage EOS by continuing to
        exclude EOS from entering the U.S. market" (AC, ¶ 40(e)(1));

-----------------------

[1]  The issue is not whether EOS will be able to sustain its burden of proof on antitrust
injury, but whether it has stated any facts indicating cognizable anti-competitive conduct and
antitrust injury as a matter of law.  *Compare Brader v. Allegheny Gen. Hosp.,* 64 F.3d 869, 876
(3d Cir. 1995).

(2)   that the "Justice Department and a federal grand jury are now investigating 3D Systems for possible criminal violations of the antitrust laws, as reported in 3D Systems' annual and quarterly reports with the U.S. Securities and Exchange Commission" (*Id.*, ¶ 40(e)(3));

(3)   that "[c]ustomers have had substantially reduced competition for Laser RP Systems, Industrial RP Systems, related materials and supplies, and services, resulting in higher prices, lower quality, and fewer products and services than would have existed but for the anticompetitive conduct of 3D Systems" (*Id.*, ¶ 44); and

(4)   that "EOS been [sic] excluded from participating in markets in the United States for RP equipment, materials, and services as a result of the anticompetitive conduct of 3D Systems described in paragraphs 28 through 40. EOS has lost substantial profits as a result of being excluded from the U.S. markets for RP equipment, materials, and services by 3D Systems' anticompetitive conduct described in paragraphs 28 through 40. EOS has expended funds and resources substantially greater than it would have been required to enter the U.S. markets for RP equipment, materials and services but for 3D Systems' anticompetitive conduct described in paragraphs 28 through 40." (*Id.*, ¶ 46.)

These additional allegations (i) ignore the Court's prior rulings; (ii) include another incident (*i.e.*, the grand jury investigation) that is no more relevant to establishing requisite antitrust injury than that conduct already rejected by the Court; and (iii) underscore the insufficiency of EOS's entire antitrust counterclaim, Count V.

## III.
## ARGUMENT

Under Federal Rule of Civil Procedure 12(f), the Court may strike "from any pleading . . . any . . . immaterial . . . matter." Fed. R. Civ. P. 12(f); *Paul M. Harrod Co. v. A.B. Dick Co.*, 194 F. Supp. 502, 504 (N.D. Ohio 1961) (granting motion to strike allegation that defendant had violated a consent decree in an amended antitrust complaint on grounds that court had previously dismissed that portion of the complaint based on the consent decree); *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.,* 259 F. Supp. 2d 992, 1001-1003 (N.D. Cal. 2003) (granting motion to strike allegations in antitrust claim that did not "state a claim for an antitrust violation"); *Reiter's Beer*

*Distrib., Inc., v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 143-45 (E.D.N.Y. 1987)

(granting motion to strike allegations in antitrust claim because matters alleged were immaterial).

A.    **Amended Allegations in Count V that Ignore the Court's Rulings and Do Not Allege or Support Requisite Antitrust Injury to EOS Would Prejudice 3D Systems and Should Be Stricken.**

A critical element of any private antitrust action is that the plaintiff must properly allege

that it has suffered "antitrust injury" — *i.e.*, "injury of the type the antitrust laws were intended

to prevent and that flows from that which makes the defendants' acts unlawful." *Phototron*

*Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 99 (5th Cir. 1988) (denying claim for injunctive relief

asserted by a competitor of two other competitors who were merging) (quoting *Brunswick Corp.*

*v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). The plaintiff must make a threshold

showing that the defendant has caused antitrust injury to the plaintiff. *Id.* at 100.[2]

In its Order, the Court recognized the importance of this inquiry and held that "[m]ost of

the injuries EOS describes are not appropriate antitrust injuries." (Order, p. 9.) The Court ruled

that EOS's initial allegations regarding higher prices paid by customers, EOS's failed bid for the

3D Systems license, and costs of entry into the U.S. market do not constitute antitrust injury.

Yet those three allegations *remain* in EOS's amended Count V. And, a fourth allegation

appearing for the first time in the amended Count V — the "grand jury investigation"

---

[2] *See also Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 115-16 (1986); *Phototron*, 842 F.2d at 100 ("the notion that merely facing the specter of a monopoly is enough to create standing in a competitor is not the law"); *Anago, Inc. v. Tecnol Med. Prods., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992) (denying relief to target of merger and noting that this "circuit has narrowly interpreted the meaning of antitrust injury, excluding from it the threat of decreased competition"); *Pearl Brewing Co. v. Miller Brewing Co.*, Civ. No. SA-93-LA-205, 1993 WL 424236, at *4 (W.D. Tex. Mar. 31, 1993) (denying relief to competitor challenging merger of two other competitors for failure to show antitrust injury).

allegation — suffers from the same deficiency as those allegations already rejected by the Court. Indeed, allegations relating to the grand jury investigation are included in the Amended Counterclaims — like the DOJ consent decree license allegations that continue to appear there — solely to burden and harass 3D Systems during the course of discovery.[3]

As shown below, because each of the four allegations contained in Paragraphs 40(e)(1)-(3), 44, and the last sentence of Paragraph 46 of EOS's Amended Counterclaim fail to support a claim of antitrust injury and would prejudice 3D Systems if they are permitted to remain, they should be stricken.

1. *"Higher Prices" Allegations (Paragraph 44)*: The Court held that as an alleged competitor, EOS cannot be harmed by "higher prices" because, as the Supreme Court has stated, such prices "could not injure . . . competitors" since they "stand to gain" from any "raise[d] . . . market price" in the products in question. (Order, p. 9 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986)).) Nonetheless, EOS continues to allege in its amended Count V that it has suffered antitrust injury because "[c]ustomers have had substantially reduced competition for Laser RP Systems, Industrial RP Systems, related materials and supplies, and services, resulting in higher prices, lower quality, and fewer products and services." (AC, ¶ 44.) These effects cannot constitute antitrust injury to EOS as a matter of law

---

[3] Because Federal Rule of Civil Procedure 26 permits parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," allegations about the DOJ license or current grand jury proceedings — which are immaterial to EOS's antitrust counterclaim — should be stricken to prevent what is certain to be unduly burdensome and harassing discovery into these transactions. While EOS appears to have a persistent interest in these interactions between 3D Systems and the federal government, the interactions are irrelevant to EOS's antitrust claim and the discovery should not be permitted.

because EOS is not alleged to be a "customer" for any of these items, and thus has not itself paid

higher prices, or received lower quality or fewer products and services.

     **2.** *"DOJ Consent Decree License" Allegations (Paragraph 40(e)(1)-(2))*: EOS's

amendment also ignores the Court's holding that "the fact that EOS lost its bid to become 3D

Systems' licensee as a result of the Justice Department consent decree is not an antitrust injury."

(Order, p. 9.)  Despite this ruling, EOS continues to rely on its lost bid for the 3D Systems

license to support its antitrust counterclaim, repeating its initial allegation that in "[a]greeing to

settle the Justice Department Antitrust Litigation," 3D Systems did not choose a "New Licensee"

that would be an "effective competitor" and chose one that has not sold any Laser RP System

equipment to date.  (AC, ¶ 40(e)(1).)  To this, EOS has added in its amended pleading the

additional allegation that 3D Systems "specifically did not select EOS as the New Licensee

knowing that EOS would be the most effective and immediate competition, and with the specific

intent *in combination with DTM* to damage EOS by continuing to exclude EOS from entering the

U.S. market."  (*Id.*) (emphasis added).[4]  This does not constitute antitrust injury to EOS because,

as the Order recognizes, EOS has no entitlement to have been chosen as the licensee.[5]

     Further, that choice was subject to specific clearance by the Department of Justice under

---

    4  As EOS is well aware, DTM was merged into 3D Systems on August 31, 2001 and ceased to exist as a legal entity at that time, well before 3D Systems made its choice of a licensee.

    5  Losing bidders do not have standing to attack acquisitions — in this case, the acquisition of a license from 3D Systems. *E.g., Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300, 304 (5th Cir. 1984); *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1397, 1400 (D. Del. 1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985).

Section IV of the Consent Decree.[6] Thus, any anti-competitive effect resulting from the choice

of the "New Licensee" has been caused ultimately by a decision of the United States

government, which cannot be attacked on antitrust grounds as a matter of law. *City of Columbia*

*v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 379-80, 382 (1991) (noting, "the federal antitrust

laws . . . do not regulate the conduct of private individuals in seeking anticompetitive action from

the government" and rejecting, as a matter of law, the claim that "government officials

conspire[d] with a private party to employ government action as a means of stifling

competition").

     3. *"Entry Cost" Allegations (Last Sentence of Paragraph 46)*: The Court held that

"EOS's expenditure of resources to break into the U.S. market for RP Systems is simply a cost of

doing business:  any business must expend resources to break into a new market in a new

country." (Order, p. 9.)  Ignoring this ruling, EOS's amended Count V continues to rely on

EOS's "entry cost" as part of its alleged antitrust injury, alleging that "EOS has expended funds

and resources substantially greater than would have been required to enter the U.S. markets for

RP equipment, materials and services but for 3D's anticompetitive conduct described in

paragraphs 28 through 40." (AC, ¶ 46 (last sentence).)  The expenditure of funds, however, is

not antitrust injury because it does not reflect reduced output or loss of competition. *See Viacom*

*Int'l, Inc. v. Tele-Communications, Inc.*, No. 93 Civ. 6658 (LAP), 1994 WL 561377, at *4-6

(S.D.N.Y. Oct. 12, 1994) (any increased costs plaintiff suffered as a result of defendant's alleged

---

     6  In the Order, the Court took judicial notice of, among other things, the Consent Decree
(Order, p. 17), which was filed as Exhibit A to the April 24, 2003 Declaration of Elizabeth J.
Brown Fore.

acts did not constitute antitrust injury as a matter of law). Nor can loss of possible customers be inferred from the mere expenditure of funds to compete.

    **4.** ***"Grand Jury Investigation" Allegations (Paragraph 40(e)(3)):*** The only novel conduct alleged in EOS's Amended Counterclaims, appearing in Paragraph 40(e)(3) and referring to a pending grand jury investigation, adds nothing to EOS's claim regarding the Department of Justice controlled licensing process. The allegations instead appear to be a crude, transparent attempt to cast aspersions and to permit discovery into a sensitive but irrelevant matter.[7] First, EOS misstates the contents of 3D Systems' SEC filings concerning the grand jury proceedings, which do not support EOS's allegation that 3D Systems is the target of a criminal investigation:

> [O]n May 6, 2003, we received a subpoena from the U.S.
> Department of Justice to provide certain documents to a grand jury
> investigating antitrust and related issues within our industry. We
> have been advised that we currently are not a target of the grand
> jury investigation, and we are complying with the subpoena.

(Declaration of Elizabeth J. Brown Fore, ¶ 2, Ex. A.) Second, and equally important here, the fact of the grand jury does not constitute antitrust injury to EOS. The grand jury has not excluded EOS from competing in the United States, and EOS has made no allegation of any conduct that inflicted any injury, much less antitrust injury to EOS. The grand jury does not add anything to or undermine the Court's prior ruling that EOS's failure to get a license under the Consent Decree does not constitute antitrust injury.

---

    [7] Mere receipt of a grand jury subpoena does not imply that any wrongdoing has occurred. *See In re Grand Jury Subpoena*, 478 F. Supp. 59, 62 (M.D. La. 1979).

**B.     None of the Remaining Allegations of Improper Conduct in Count V Allege or Support Requisite Antitrust Injury to EOS.**

Even with the language EOS has added to its counterclaims at the Court's invitation, Count V is devoid of any facts that show the requisite predatory nature of the conduct in which 3D Systems is alleged to have engaged. It is not enough to say, as EOS has, that 3D Systems has an overwhelming market share in the alleged markets, and then to provide vague descriptions of alleged conduct that are conclusorily alleged to be exclusionary. Rather, Section 2 requires EOS to specify why the alleged conduct constitutes acts of willful maintenance of monopoly power. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Count V fails this requirement and, in so doing, it also fails to satisfy the related requirements of pleading facts that indicate causation and antitrust injury. The Fifth Circuit decisions in *Phototron* and *Anago* make it clear that EOS must plead facts regarding anti-competitive effects, antitrust injury and causation; if the requisite facts are absent, there is no claim. *Anago*, 976 F.2d at 249, *Phototron*, 842 F.2d at 100.[8] EOS fails the test of these cases on each of the four remaining allegations of conduct in Count V:

---

[8]  *See also Futurevision Cable Sys., Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 769-70 (S.D. Miss. 1992) (dismissing antitrust claim because plaintiff failed to plead how defendant's alleged conduct had an anticompetitive effect on the relevant market as well as on plaintiff); *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1111- 12 (6th Cir. 1989) (affirming dismissal of antitrust claim because plaintiff failed to allege facts that its injury was "inflicted by reason of [defendant's] newly-acquired position in the market and the elimination of one competitor"); *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1035-36 (9th Cir. 2001) (affirming dismissal of antitrust claim because plaintiff failed to allege facts demonstrating how it suffered injury from alleged anticompetitive acts); *George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 140 (2d Cir. 1998) (affirming dismissal of antitrust claims because plaintiff failed to allege facts demonstrating antitrust injury).

1. *"Exclusive Materials Distribution Agreements" Allegations (Paragraph 40(a)):*
EOS first alleges that the unlawful conduct includes 3D Systems' "agreements with manufacturers of materials" needed for Laser RP or Industrial RP Systems, which give 3D Systems "exclusive distribution rights" in the United States. (AC, ¶ 40(a).) There is no allegation that these agreements had a significant effect on competition for the sale of materials, or that these unspecified "agreements" prevented EOS from access to materials it needed in order to compete. In fact, EOS alleges that it has its own independent materials business in the U.S. (*See* AC, ¶ 42 ("EOS is participating in the U.S. . . . market through sales of powder used in RP machines.")) Nor is there an allegation that the "agreements" gave 3D Systems market or monopoly power or caused any anti-competitive result with respect to the "materials." Since exclusive distribution agreements are "presumptively legal," *Electronics Communications Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 245 (2d Cir. 1997), this allegation fails to support EOS's antitrust claim without some anti-competitive effect in a relevant market that results in harm to EOS. *See Muenster Butane, Inc. v. Stewart Co.*, 651 F.2d 292, 296-98 (5th Cir. 1981); *Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1117 (5th Cir. 1979); *Phototron*, 842 F.2d at 101.

2. *"Termination of Development / Distribution Agreements" Allegations (Paragraph 40(b)):* EOS alleges that 3D Systems has terminated "distribution and development agreements" with an unnamed materials manufacturer in "order to exclude competition for the sale of such materials in the United States." (AC, ¶ 40(b).) Again, there are no facts alleged that remotely suggest how this vague conduct harms the competitive process in the "materials industry" business. There is no allegation that the unnamed manufacturer — evidently not EOS — has been hampered in competition, nor is there any allegation as to how, if at all, EOS has been harmed by the alleged termination. If anything, this allegation is at odds with the

preceding one: In the first, 3D Systems allegedly caused harm by obtaining exclusive distribution rights; in the second, it allegedly caused harm for concluding a distribution arrangement. This contradiction demonstrates the reason EOS's Count V fails to state a claim.[9]

**3. *"Acquisition of Materials Manufacturer" Allegations (Paragraph 40(c)):*** EOS alleges that 3D Systems, apart from the DTM acquisition, has also acquired a "manufacturer of materials" in order to "exclude competition from that competitor for sale of such materials in the United States." (AC, ¶ 40(c).) Missing is an allegation that the acquisition of a supplier of a complementary product (*i.e.*, materials needed for use in rapid prototyping equipment) affected competition in any of the alleged markets. And that allegation is critical, as such acquisitions are often legal.[10] Nor is there an allegation that EOS — evidently not the manufacturer — has been harmed. Even if EOS is a competitor as it claims (*e.g.*, AC, ¶ 44), EOS has no cognizable claim because it has not alleged (and cannot identify) any means by which this transaction somehow caused it to suffer antitrust injury. *See Cargill*, 479 U.S. at 111; *Phototron*, 842 F.2d at 100; *Pearl Brewing Co.*, 1993 WL 424236, at *4.

**4. *"Threats to Warranty and Service" Allegations (Paragraph 40(d)):*** Finally, EOS alleges that 3D Systems has threatened not to honor warranty or service claims unless its customers "agreed to purchase materials or services solely from 3D." (AC, ¶ 40(d).) However, there is no impairment of the competitive process alleged in any relevant market. *See Apani Southwest, Inc. v. Coca-Cola Enterp., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002) ("it must then be

---

[9] *E.g., In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent").

[10]*See Fruehauf Corp. v. FTC*, 603 F.2d 345, 351-52 (2d Cir. 1979) (vertical merger may operate to promote competition).

determined whether the arrangement foreclosed competition in a substantial share of the established market"). And, because allegations specifying how EOS has been injured are absent, the Court cannot find that the alleged practice satisfies the *Phototron* requirement that EOS indicate ***how*** it is threatened with anti-competitive harm. *Phototron*, 842 F.2d at 101. If EOS were genuinely injured by this alleged conduct, it would have been easy enough to say so in factual terms.

## IV.
## CONCLUSION

Amending Count V, EOS ignored the Court's ruling dismissing three allegations and added a fourth that is immaterial to its antitrust claim but is certain to make mischief during discovery. Despite new verbiage, Count V fails to explain why any of 3D Systems' alleged acts are unlawful or how, in fact, they caused any competitive harm to EOS. Because these facts lie in EOS's hands, its failure to offer any factual support is good grounds for dismissal. Accordingly, this Court should grant 3D Systems' Rule 12(f) Motion to Strike Paragraphs 40(e)(1)-(3), 44, and the last sentence of Paragraph 46 of the Amended Counterclaims or, alternatively, its Rule 12(b)(6) Motion to Dismiss Count V in its entirety.

## CERTIFICATE OF CONFERENCE

The parties have conferred and defendant does oppose this Motion.

Dated:  August 20, 2003                    Respectfully submitted,

*Philip E. Cook, by permission EJBF*

PHILIP E. COOK
Calif. State Bar No. 149067
Admitted *pro hac vice*
ROBERT W. DICKERSON
Calif. State Bar No. 89367
Admitted *pro hac vice*
JONES DAY
555 West Fifth Street, Suite 4600
Los Angeles, CA  90013-1025
Telephone: (213) 489-3939


ROBERT W. TURNER
Texas State Bar No. 20329000
JONES DAY
2727 North Harwood Street
P.O. Box 660623
Dallas, TX  75266-0623
Telephone: (214) 220-3939

GRAY, CARY, WARE & FREIDENRICH LLP
ALAN D. ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
1221 South MoPac Expressway, Suite 400
Austin, TX  78746-6875
Telephone:  (512) 457-7000

Attorneys for Plaintiff
BOARD OF REGENTS, THE
UNIVERSITY OF TEXAS SYSTEM,
Plaintiff and Counterclaim Defendant
3D SYSTEMS, INC., and
Counterclaim Defendant
3D SYSTEMS CORPORATION

OF COUNSEL:

JOHN A. HERFORT
Admitted *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
Telephone: (212) 351-3832
Facsimile: (212) 351-5258

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing document was sent via United States certified mail, return receipt requested, to the following counsel of record on this 20th day of August, 2003.

Thomas H. Watkins
State Bar No. 20928000
Albert A. Carrion, Jr.
State Bar No. 03883100
HILGERS & WATKINS P.C.
98 San Jacinto Boulevard
San Jacinto Center, Suite 1300
Austin, Texas 78701
(512)476-4716
(512) 476-5139 Facsimile

Michael H. Baniak
Michael D. Gannon
BANIAK PIKE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 Facsimile

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

ELIZABETH J. BROWN FORE