**ORIGINAL**

FILED

2003 AU 20 PM 4:42

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. A03 CA 113SS |
| EOS GmbH Electro Optical Systems, | § § | |
| Defendant. | § § | |

**DECLARATION OF ELIZABETH J. BROWN FORE IN SUPPORT OF COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE ALLEGATIONS IN AMENDED COUNTERCLAIM COUNT V AND TO DISMISS AMENDED COUNTERCLAIM COUNT V**

I, Elizabeth J. Brown Fore, declare that:

1. I am an attorney with the law firm of Gray Cary Ware & Freidenrich, L.L.P., counsel for Plaintiffs and Counter-Defendants Board of Regents, The University of Texas System, and 3D Systems, Inc. I have personal knowledge of the facts stated herein and if called as a witness, could and would competently testify hereto.

2. Attached hereto as Exhibit A is a true and correct copy of a portion of 3D Systems, Inc.'s June 30, 2003 Form 10-K, which is entitled Legal Proceedings. A complete copy of the Form 10-K can be located at: http://www.sec.gov.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of August, 2003, at Austin, Texas.

ELIZABETH J. BROWN FORE

Gray Cary\AU\4112324.1
9999990-999898

59

-2-

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was sent via United States certified mail, return receipt requested to the following counsel of record on this 20th day of August, 2003.

Thomas H. Watkins
State Bar No. 20928000
Albert A. Carrion, Jr.
State Bar No. 03883100
HILGERS & WATKINS P.C.
98 San Jacinto Boulevard
San Jacinto Center, Suite 1300
Austin, Texas 78701
(512)476-4716
(512) 476-5139 Facsimile

Michael H. Baniak
Michael D. Gannon
BANIAK PIKE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 Facsimile

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

*Elizabeth J. Brown Fore*
ELIZABETH J. BROWN FORE

```
================================================================================
                         UNITED STATES
              SECURITIES AND EXCHANGE COMMISSION
                     Washington, D.C. 20549

                           FORM 10-K

[X]  ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE
     ACT OF 1934

              For the fiscal year ended December 31, 2002

[_]  TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
     EXCHANGE ACT OF 1934

                  Commission file number 0-22250

                       3D SYSTEMS CORPORATION
         (Exact name of Registrant as specified in its charter)

            Delaware                               95-4431352
    (State or other jurisdiction of             (I.R.S. Employer
    incorporation or organization)             Identification No.)

                          26081 Avenue Hall
                      Valencia, California 91355
         (Address of principal executive offices and zip code)

                           (661) 295-5600
         (Registrant's telephone number, including area code)

          Securities registered pursuant to Section 12(b) of the Act:

                               None

          Securities registered pursuant to Section 12(g) of the Act:

                  Common Stock, par value $.001 per share

                    Preferred Stock Purchase Rights
```

Indicate by check mark whether the Registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [_] No [X]

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of Registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. Yes [_] No [X]

Indicate by check mark whether the Registrant is an accelerated filer (as defined in Rule 12b-2 of the Act). Yes [X] No [_]

At June 28, 2002, there were outstanding 12,863,396 shares of the Common Stock of Registrant, and the aggregate market value of the shares held on that date by non-affiliates of Registrant, based on the closing price ($12.20 per share) of the Registrant's Common Stock on the NASDAQ National Market on that date, was $107,335,893. For purposes of this computation, it has been assumed that the shares beneficially held by directors and officers of Registrant were "held by affiliates"; this assumption is not to be deemed an admission by these persons that they are affiliates of Registrant.

At June 13, 2003, there were outstanding 12,734,301 shares of the Common Stock of Registrant.

================================================================================

3D SYSTEMS CORPORATION

Annual Report on Form 10-K for the
Year Ended December 31, 2002

| | | |
|---|---|---:|
| PART I | | 3 |
| Item 1 | Business | 3 |
| Item 2 | Properties | 11 |
| Item 3 | Legal Proceedings | 11 |
| Item 4 | Submission of Matters to a Vote of Security Holders | 13 |
| PART II | | 13 |
| Item 5 | Market for Registrant's Common Equity and Related Stockholder Matters | 13 |
| Item 6 | Selected Financial Data | 15 |
| Item 7 | Management's Discussion and Analysis of Results of Operations and Financial Condition | 16 |
| Item 7a | Quantitative and Qualitative Disclosures about Market Risk | 36 |
| Item 8 | Financial Statements and Supplementary Data | 37 |
| PART III | | 38 |
| Item 10 | Directors and Executive Officers of the Registrant | 38 |
| Item 11 | Executive Compensation | 41 |
| Item 12 | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 44 |
| Item 13 | Certain Relationships and Related Transactions | 47 |
| Item 14 | Controls and Procedures | 49 |
| Item 15 | Principal Accountant Fees and Services | 50 |
| PART IV | | 51 |
| Item 16 | Exhibits, Financial Statement Schedules, and Reports on Form 8-K | 51 |

Employees

At December 31, 2002, we had 416 full-time employees. In addition, at that same date we utilized the services of six independent contractors and one consultant. None of these employees or independent contractors is covered by labor agreements. We consider our relations with our employees and independent contractors to be satisfactory.

On July 24, 2002, we substantially completed a reduction in workforce, which eliminated 109 positions out of our total workforce of 523 or approximately 20% of the total workforce. In addition, we closed our existing office in Austin, Texas that we acquired as part of our acquisition of DTM, as well as our sales office in Farmington Hills, Michigan. This was the second reduction in force completed in 2002. On April 9, 2002, the Company eliminated approximately 10% of its total workforce.

Website Availability of Our Reports Filed with the Securities and Exchange Commission

We maintain a website with the address www.3dsystems.com. We are not including the information contained on our website as a part of, or incorporating it by reference into, this filing. We make available free of charge through our website our Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q, and Current Reports on Form 8-K, and amendments to these reports, as soon as reasonably practicable after we electronically file that material with, or furnish that material to, the Securities and Exchange Commission

Item 2.  Properties

Our principal administrative functions, sales and marketing, product development, technology center and training facilities are located in a 78,320 square foot building in Valencia, California. The lease for this property, which was originally to expire on December 31, 2002, has been extended until December 31, 2007, and is subject to an optional five-year extension.

We also lease sales and service offices in Texas. The space leased for sales and service offices is generally for one or two occupants and for terms of a year or less. Sales and service offices are also located in four countries in the European Community (France, Germany, the United Kingdom and Italy), Malaysia, Japan and Hong Kong.

A significant portion of our manufacturing and United States customer support operations are located in a 67,000 square foot facility located in Grand Junction, Colorado  The construction cost of the Colorado facility has been financed through a $4.9 million industrial development bond  To secure the reimbursement agreement with Wells Fargo relating to the letter of credit collateralizing these bonds, we executed a deed of trust, security agreement and assignment of rents, an assignment of rents and leases, and a related security agreement encumbering the Grand Junction facility and certain personal property and fixtures located there. In addition, the Grand Junction facility is encumbered by a second deed of trust in favor of Mesa County Economic Development Council, Inc. ("MCEDCI"), securing $.8 million in allowances granted to us by MCEDCI pursuant to an Agreement dated October 4, 1995.

We closed our facility located in Austin, Texas. Approximately 50,000 square feet of space remains subject to a lease until December 31, 2006. Of this space, approximately 20,000 square feet has been sublet.

We believe that the facilities described above will be adequate to meet our needs for the immediate future.

Item 3.  Legal Proceedings

3D Systems, Inc. vs. Aaroflex, et al. On January 13, 1997, we filed a complaint in U.S. District Court, Central District of California, against Aarotech Laboratories, Inc., Aaroflex, Inc. and Albert C. Young. Aaroflex is the parent corporation of Aarotech. Young is the Chairman of the Board and Chief Executive Officer of both Aarotech and Aaroflex. The original complaint alleged that stereolithography equipment manufactured by Aaroflex infringes six of our patents. In August 2000, two additional patents were added to the complaint. The Company seeks damages and injunctive relief from the defendants, who have threatened to sue the Company for trade libel. To date, the defendants have not filed such a suit.

Following decisions by the District Court and the Federal Circuit Court of Appeals on jurisdictional issues, Aarotech and Mr. Young were dismissed from the suit, and an action against Aaroflex is proceeding in the District Court  Motions for summary judgment by Aaroflex on multiple counts contained in our complaint and on Aaroflex's counterclaims have been dismissed and fact discovery in the case has been completed. Our motions for summary judgment for patent infringement and validity and Aaroflex's motion for patent invalidity were heard on May 10, 2001. In February 2002, the court denied Aaroflex's invalidity motions. On April 24, 2002, the court denied our motions for summary judgment on infringement, reserving the right to revisit on its own initiative the decisions

11

following the determina_ of claim construction. The court also gra_ in part our motion on validity. The case is scheduled for trial commencing on August 5, 2003, and the trial is scheduled to last for three weeks.

DTM vs. EOS, et al. The plastic sintering patent infringement actions against EOS began in France (Paris Court of Appeals), Germany (District Court of Munich) and Italy (Regional Court of Pinerolo) in 1996. Legal actions in France, Germany and Italy are proceeding. EOS had challenged the validity of two patents related to thermal control of the powder bed in the European Patent Office, or EPO. Both of those patents survived the opposition proceedings after the original claims were modified. One patent was successfully challenged in an appeal proceeding and in January 2002, the claims were invalidated. The other patent successfully withstood the appeal process and the infringement hearings were re-started. In October 2001, a German district court ruled the patent was not infringed, and this decision is being appealed. In November 2001, we received a decision of a French court that the French patent was valid and infringed by the EOS product sold at the time of the filing of the action and an injunction was granted against future sales of the product. EOS filed an appeal of that decision in June 2002. That action is pending. In February 2002, we received a decision from an Italian court that the invalidation trial initiated by EOS was unsuccessful and the Italian patent was held valid. The infringement action in a separate Italian court has now been recommenced and a decision is expected based on the evidence that has been submitted.

In 1997, DTM initiated an action against Hitachi Zosen Joho Systems, the EOS distributor in Japan. In May 1998, EOS initiated two invalidation trials in the Japanese Patent Office attempting to have DTM's patent invalidated on two separate bases. The Japanese Patent Office ruled in DTM's favor in both trials in July 1998, effectively ruling that DTM's patent was valid. In September 1999, the Tokyo District Court then ruled in DTM's favor and granted a preliminary injunction prohibiting further importation and selling of the infringing plastic sintering EOS machine. In connection with this preliminary injunction, DTM was required to place 20 million yen, which is approximately $200,000, on deposit with the court towards potential damages that Hitachi might claim should the injunction be reversed. Based on the Tokyo District Court's ruling, EOS then filed an appeal in the Tokyo High Court to have the rulings of the Japanese Patent Office revoked. On March 6, 2001, the Tokyo High Court ruled in EOS's favor that the rulings of the Japanese Patent Office were in error. As a result, the Tokyo High Court found that Hitachi Zosen was not infringing DTM's patent. These rulings were unsuccessfully appealed by DTM to the Tokyo Supreme Court. We amended the claims and the patent was reinstated in a corrective action in 2002 and no further challenges to the patent are pending in this matter.

Hitachi Zosen vs. 3D Systems, Inc. On November 25, 2002, 3D Systems was served with a complaint through the Japanese Consulate General from EOS' Japanese distributor, Hitachi Zosen, seeking damages in the amount of 535,293,436 yen (approximately $4.5 million), alleging lost sales during the period in which DTM Corporation had an injunction in Japan prohibiting the sale of EOS EOSint P350 laser sintering systems. Initial procedural hearings occurred in March and April 2003 in Tokyo District Court, with a third preliminary hearing scheduled for June 30, 2003.

EOS vs. DTM and 3D Systems, Inc. In December 2000, EOS filed a patent infringement suit against DTM in the U.S. District Court, Central District of California. EOS alleges that DTM has infringed and continues to infringe certain U.S. patents that 3D licenses to EOS. EOS has estimated its damages to be approximately $27 million for the period from the fourth quarter of 1997 through 2002. In April 2001, consistent with an order issued by the federal court in this matter, we were added as a plaintiff to the lawsuit. On October 17, 2001, we were substituted as a defendant in this action because DTM's corporate existence terminated when it merged into our subsidiary, 3D Systems, Inc. on August 31, 2001. In February 2002, the court granted summary adjudication on our motion that any potential liability for patent infringement terminated with the merger of DTM into 3D Systems, Inc. Concurrently, the court denied EOS's motion for a fourth amended complaint to add counts related to EOS's claim that 3D Systems, Inc. is not permitted to compete in the field of laser sintering under the terms of the 1997 Patent License Agreement between 3D Systems, Inc. and EOS. 3D Systems, Inc. filed counterclaims against EOS for the sale of polyamide powders in the United States based on two of the patents acquired in the DTM acquisition. The discovery cut off date was on January 20, 2003. A motion by 3D Systems, Inc. for a preliminary injunction was denied by the court on May 14, 2002. The court rescheduled the trial date to October 7, 2003.

3D Systems, Inc. vs. AMES. In April 2002, we filed suit for patent infringement against Advanced Manufacturing Engineering Systems of Nevada, Iowa for patent infringement related to AMES' purchase and use of EOS powders in the Company's SLS system. On June 24, 2002, upon motion by the defendants, this matter was stayed pending trial of the EOS vs. DTM and 3D Systems, Inc. matter described immediately above. We have been informed that Ames is no longer in business and is in the process of requesting a dismissal of the action.

EOS GmbH Electro Optical Systems vs. 3D Systems, Inc. On January 21, 2003, we were served with a complaint that had been filed in May of 2002 in Regional Court, Commerce Division, Frankfurt, Germany, seeking 1,000,000 Euros for the alleged breach of a non-competition agreement entered into in 1997. We answered the complaint on April 25, 2003. At a hearing on June 27, 2003, the court advised the parties that it intends to issue a decision in this matter on September 27, 2003.

Board of Regents, The University of Texas System and 3D Systems, Inc. v. EOS GmbH Electro Optical Systems. On February 25, 2003, 3D Systems, along with the Board of Regents of the University of Texas, filed suit against EOS GmbH Electro Optical Systems ("EOS") in the United States District Court, Western District of Texas seeking damages and injunctive relief arising from violation of

12

U.S. Patents Nos. 5,597,  and 5,639,070, which are patents relating  laser sintering which have been licensed by the University of Texas to 3D. On March 25, 2003, EOS filed its answer to this complaint, along with counterclaims including breach of contract and antitrust violations.

Regent Pacific Management Corporation v. 3D Systems Corporation. On June 11, 2003, Regent Pacific Management Corporation filed a complaint against us for breach of contract in the Superior Court of the State of California, County of San Francisco  Regent provided management services to us from September 1999 through September 2002. Regent alleges that we breached non-solicitation provisions in our contract with it by retaining the services of two Regent contractors following the termination of the contract. Regent seeks $780,000 in liquidated damages together with reasonable attorney's fees and costs. We currently are evaluating the complaint.

SEC Inquiry. We received an inquiry from the SEC relating to our revenue recognition practices. The Audit Committee has completed its own inquiry into the matter and shared its findings with the SEC. To date, the Company has not been notified that the SEC has initiated a formal investigation.

In addition, on May 6, 2003, we received a subpoena from the U.S. Department of Justice to provide certain documents to a grand jury investigating antitrust and related issues within our industry. We have been advised that we currently are not a target of the grand jury investigation, and we are complying with the subpoena.

The Company is engaged in certain additional legal actions arising in the ordinary course of business, and, on the advice of legal counsel, the Company believes it has adequate legal defenses and that the ultimate outcome of these actions will not have a material adverse effect on the Company's consolidated financial position, results of operations or cash flows.


Item 4.  Submission of Matters to a Vote of Security Holders

No matters were submitted to a vote by security holders during the fourth quarter of fiscal 2002


                                    PART II


Item 5.  Market for Registrant's Common Equity and Related Stockholder Matters

       The following table sets forth, for the periods indicated, the range of high and low bid information per share of our common stock as quoted on the Nasdaq Stock Market's National Market. The Company's stock was traded under the symbol "TDSC" until April 15, 2003 when, due to delinquent filings, the symbol was changed to "TDSCE."

|      |                                | Historic Prices |       |
|------|--------------------------------|-----------------|-------|
| Year | Period                         | High            | Low   |
| 2001 | First Quarter                  | $ 14.56         | $ 8.81 |
|      | Second Quarter                 | 18.52           | 9.69  |
|      | Third Quarter                  | 16.70           | 11.51 |
|      | Fourth Quarter                 | 15.09           | 9.73  |
| 2002 | First Quarter                  | 15.90           | 9.16  |
|      | Second Quarter                 | 15.80           | 10.80 |
|      | Third Quarter                  | 13.55           | 5.75  |
|      | Fourth Quarter                 | 8.51            | 4.98  |
| 2003 | First Quarter                  | 10.15           | 4.10  |
|      | Second Quarter (through May 30)| 6.70            | 4.00  |

As of May 30, 2003, the outstanding common stock was held of record by 435 stockholders.

Dividends


We have not paid any dividends on our common stock and currently intend to retain any future earnings for use in our business. In addition, our loan documents place limitations on our ability to pay dividends or make other distributions in respect of our common stock. Also, holders of our Series B Convertible Preferred Stock are entitled to receive, when, and if declared by our Board of Directors, but only out of funds that are legally available therefor, cash dividends at the rate of 8% of the Series B issuance price per share per annum, which may be increased to 10% under certain circumstances. No dividends may be paid on any shares of common stock or on shares of any other stock ranking junior to the Series B Convertible Preferred Stock unless all accrued and unpaid dividends have first been declared and paid in full with respect to the Series B Convertible Preferred Stock.