RECEIVED

SEP 1 7 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF T...
BY_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

SEP 1 7 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc. | § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. A03 CA 113 SS |
| EOS GmbH Electro Optical Systems | § § | |
| Defendant | § § | |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE ALLEGATIONS IN AND TO DISMISS DEFENDANT'S AMENDED ANTITRUST COUNTERCLAIM (COUNT V)

Defendant EOS GmbH Electro Optical Systems ("EOS") hereby responds to Plaintiff 3D

Systems, Inc.'s ("3D") Motion to Strike Allegations in Amended Counterclaim Count V And To

Dismiss Amended  Counterclaim Count V ("3D Motion to Strike").

## TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION** ...........................................................................................1

II.   **3D Fails To Meet the RULE 12(F) Standard For A Motion to STRIKE** .....................2

    A.    **3D's Admitted Investigation by and Litigation with the U.S. Department of Justice for Antitrust Violations is Relevant and Material to EOS's Claims of 3D's Antitrust Violations.** ...................4

        1.    **The DOJ Antitrust Litigation Allegation is Relevant and Material to EOS's Amended Antitrust Claim** ...............................5

        2.    **3D's Investigation by A Federal Grand Jury for Criminal Violations of the Antitrust Laws is Relevant and Material to EOS's Claims of 3D's Antitrust Violations** ...........................................................................7

    B.    **EOS's Allegation that Customers Have Paid Higher Prices for Rapid Prototyping Systems is A Material Allegation of Competitive Harm to the Industry** ........................................9

    C.    **EOS's Allegations that it Has Incurred Greater Costs Than Would Have Been Required But For 3D's Antitrust Violations that Excluded EOS from the U.S. Market Are Valid Claims For Antitrust Damages** ..................................................10

III.  **3D's Motion to Dismiss EOS's Amended Antitrust Claim Should Be Denied, as the Court has Already Denied This Request by 3D in the Court's July 2 Order** ...............................................................11

IV.   **CONCLUSION** ...........................................................................................12

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Aspen Skiing Co v. Aspen Highlands Skiing Co.*,
  452 US. 585 (1985)...............................................................................9

*Avery Dennison Corporation vs. Acco Brands, Inc.*,
  2000 U.S. Dist. Lexis 3938 at 20, 2000-1 Trade Cas. (CCH) ¶ 72,882
  (C.D. Cal. 2000)..............................................................................10

*Brader v. Allegheny Gen. Hosp.*,
  64 F.3d 869, 876 (3d Cir. 1995)...............................................................11

*City of Columbia v. Omni Outdoor Adver., Inc.*,
  499 U.S. 365 (1991)...............................................................................5

*City of Mishawaka v. American Elec. Power Co.*,
  616 F.2d 976, 986 (7th Cir 1980) ..............................................................4

*Daishowa Int'l v. North Coast Export Co.*,
  1982 U.S. Dist. LEXIS 13018, 1982-2 Trade Cas. (CCH)
  ¶ 64,774 (N.D. Cal. 1982)........................................................................3

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961)...............................................................................6

*F.D.I.C. v. Niblo*,
  821 F. Supp. 441, 448-49 (N.D. Tex. 1993) ................................................3

*Illinois ex rel. Hartigan v. Panhandle E. Pipeline Co.*,
  730 F. Supp. 826, 908-09 (C.D. Ill. 1990) .................................................4

*In re Busipirone Patent Litigation*,
  185 F. Supp. 2d 363 (S.D.N.Y. 2002)........................................................6

*Mishawaka*,
  616 F.2d 976 .......................................................................................12

*Taylor Publ'g Co. v. Jostens, Inc.*,
  216 F.3d 465, 474 (5th Cir. 2000) ..........................................................3, 7

## TABLE OF AUTHORITIES

**Page(s)**

*United Mine Workers v. Pennington,*
    381 U.S. 657 (1965)..................................................................................................6

*United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966) ...................................................3, 7


**Other Authorities**

5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE,
    § 1380 at 647-49 (2d ed. 1990).........................................................................................3

ABA, ANTITRUST SECTION, ANTITRUST LAW DEVELOPMENTS
    1223-36 (5th ed. 2002).......................................................................................................6

I P. AREEDA & D. TURNER, ANTITRUST LAW,
    ch. 2, ¶¶ 200-06 (1988 ed.) ..............................................................................................6

U.S. ATTORNEYS' MANUAL
    § 9-11.150 ........................................................................................................................8

## I.    INTRODUCTION

1.      On July 2, 2003, the Court denied Plaintiffs' motion to dismiss one of two antitrust counterclaims asserted by Defendant EOS, and the Court permitted EOS to replead its remaining antitrust claim.  (July 2, 2003 Order).  3D now moves to strike Paragraphs 40(e)(1)-(3), 44, and the last Sentence of Paragraph 46 (the "Amendments") of Count V in the Amended Counterclaims asserted by EOS (the "Amended Antitrust Claim").  3D alternatively moves to dismiss the Amended Antitrust Claim under Rule 12(b)(6).

2.      In its July 2 Order, the Court has in large part already adequately addressed the substance of the sections of the Amended Antitrust Claim that 3D now seeks to strike, and the Court has completely addressed the bases for which 3D again seeks to dismiss the Amended Antitrust Claim.  Following the Court's July 2 Order, EOS made minor modifications in the Amended Antitrust Claim, which are the basis of 3D's Motion to Strike.  EOS added only one section, in Paragraph 40(e)(1), which 3D now strenuously seeks to strike.  This one added section relates to recent disclosures in 3D's SEC filings, made by 3D after EOS filed its original Counterclaims, is that 3D is under investigation by a federal grand jury for possible criminal violations of the federal antitrust laws.  3D's ardor in seeking to strike the allegation related to the U.S. Department of Justice conducting a grand jury investigation into 3D's possible criminal violations of the antitrust laws is not surprising, given the nature of a grand jury investigation, but 3D's investigation by a grand jury for antitrust violations is relevant to and appropriate for EOS's Amended Antitrust Claim.  This allegation of the grand jury's investigation of 3D does not meet the Rule 12(f) standard of being "redundant, immaterial, impertinent, or scandalous" required for a motion to strike.  Being under investigation for possible criminal violations of the federal antitrust laws may be "scandalous," but this results from disclosure of a scandal that 3D

has itself made, and a grand jury's investigation of 3D for possible criminal violations of federal antitrust law is relevant to EOS's claims of 3D's anticompetitive conduct.

3.      Plaintiff's alternative motion to dismiss the Amended Antitrust Claim has already been directly considered by the Court in its July 2 Order, in which the Court ruled that EOS has pled a viable antitrust claim against 3D. Since then, nothing has changed, and 3D wastes the Court's resources in moving again on a decided issue.

4.      3D's motion to strike and motion to dismiss EOS's antitrust counterclaim should be denied.

## II.    3D FAILS TO MEET THE RULE 12(F) STANDARD FOR A MOTION TO STRIKE

5.      Plaintiff moves to strike three sections of the Amended Antitrust Claim: Paragraphs 40(e)(1)-(3), 44 and the last Sentence of Paragraph 46 of the Amended Antitrust Claim. Federal Rule of Civil Procedure 12(f) nominally allows the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

6.      It is well established, however, that motions to strike are viewed with disfavor and are infrequently granted:

> [b]oth because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under FED. R. CIV. P. 12(f) are viewed with disfavor and are infrequently granted. In order to succeed on a motion to strike surplus matter from an answer, it must be shown that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration . . . and that their presence in the pleading throughout the proceeding is to be prejudicial to the moving party.

*F.D.I.C. v. Niblo*, 821 F. Supp. 441, 448-49 (N.D. Tex. 1993). Similarly, other courts have determined that "[b]ecause striking a portion of the pleading is a drastic remedy and often used as a dilatory tactic, motions under Federal Rule of Civil Procedure 12(f) are infrequently granted.

. . . Courts have even less sympathy for them in antitrust litigation." *Daishowa Int'l v. North Coast Export Co.*, 1982 U.S. Dist. LEXIS 13018, 1982-2 Trade Cas. (CCH) ¶ 64,774 (N.D. Cal. 1982). *See also* 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1380 at 647-49 (2d ed. 1990).

7.    For its claims of monopolization against 3D under Section 2 of the Sherman Act, EOS has the burden of establishing that 3D has market or "monopoly" power, and that 3D has willfully acquired or maintained that monopoly power by conduct other than 3D's business acumen or by accident. (July 2, 2003 Order, at pp. 4, 10) (quoting elements of monopolization claim as stated in *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). For its claims of attempted monopolization, EOS has the burden of establishing that 3D had a specific intent to monopolize. (July 2, 2002 Order at p. 10) (quoting elements of attempted monopolization as stated in *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 474 (5th Cir. 2000)).

8.    In its Amended Antitrust Claim, EOS contends that 3D has engaged and is engaging in a pattern of conduct, the design and purpose of which was and is to exclude EOS and other companies from effectively competing in the U.S. It is the <u>combination</u> of <u>numerous separate anticompetitive acts</u> by 3D, as alleged in Paragraphs 28 through 41 of the Amended Antitrust Counterclaim Count V, that demonstrates 3D has used its monopoly power "to foreclose competition, to gain a competitive advantage, and to destroy a competitor." *See Avery Dennison Corporation v. Acco Brands, Inc.*, 2000 U.S. Dist. Lexis 3938 at 20, 2000-1 Trade Cas. (CCH) ¶ 72,882 (C.D. Cal. 2000) (in a case with factually similar market share and conduct as alleged by EOS, determining that a pattern of separate anticompetitive acts creates a triable issue of fact in monopolization and attempted monopolization claims). *See also City of Mishawaka v. American Elec. Power Co.*, 616 F.2d 976, 986 (7th Cir 1980) (holding that a pattern of separate

anticompetitive acts by a company with monopoly power is sufficient to establish a monopolization claim); *Illinois ex rel. Hartigan v. Panhandle E. Pipeline Co.*, 730 F. Supp. 826, 908-09 (C.D. Ill. 1990) (holding that "it is not necessary to find that each allegedly anticompetitive act was in itself sufficient to demonstrate an abuse of monopoly power").

9.     3D seeks to strike three sections of EOS's amended antitrust counterclaim that form part of EOS's description of this pattern of anticompetitive behavior by 3D. EOS replies to each section that 3D moves to strike in numerical order in the Amended Antitrust Claim.

**A.     3D's Admitted Investigation by and Litigation with the U.S. Department of Justice for Antitrust Violations is Relevant and Material to EOS's Claims of 3D's Antitrust Violations.**

10.     EOS alleges facts in its Amended Antitrust Claim related to two separate investigations of 3D by the U.S. Department of Justice for violations of federal antitrust laws. One investigation, which resulted in litigation initiated by the Department of Justice, involved 3D's acquisition of a competitor in the rapid prototyping equipment industry (the "DOJ Antitrust Litigation"). EOS references the DOJ Antitrust Litigation in Paragraphs 40(e)(1)-(2) of its Amended Antitrust Claim. The second antitrust investigation of 3D relates to 3D's disclosure in recent SEC filings that 3D is under investigation by the Department of Justice and a federal grand jury for possible criminal violations of the federal antitrust laws (the "3D Antitrust Grand Jury Investigation"). 3D provides excerpts of its SEC filings and a declaration by one of its attorneys admitting that 3D has made public statements about being under investigation for possible criminal antitrust violations. *See* Declaration of Elizabeth J. Brown Fore, attached to 3D's Motion to Strike.

1.   **The DOJ Antitrust Litigation Allegation is Relevant and Material to EOS's Amended Antitrust Claim**

11.    EOS alleges that, in order to resolve a complaint filed by the U.S. Department of Justice seeking to enjoin 3D's violation of the antitrust laws, as alleged in Paragraphs 30 to 39 of EOS's Amended Antitrust Counterlaim Count V, and which 3D does not challenge, 3D settled the litigation with the Justice Department in a manner that "purposefully . . . and specifically did not select EOS" as a licensee of 3D's rapid prototyping patents "knowing that EOS would be the most effective and immediate competition" to 3D and "with the specific intent to . . . exclude EOS from entering the U.S. market." EOS Amended Antitrust Claim, Paragraph 40(e)(1).

12.    The sole case that 3D cites in support of its motion to strike this paragraph is *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365 (1991), which follows a line of decisions stating that attempts to lobby or to initiate litigation with a government agency, even if the aim is to cause a lessening of competition, is not subject to challenge under the antitrust laws. This is commonly described as the *"Noerr-Pennington"* doctrine, from two Supreme Court decisions that recognized that competitors could jointly lobby or litigate with a government agency, as an exercise of First Amendment rights, without being subjected to challenge under the antitrust laws. *See generally Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). *See also* July 2, 2003 Order at pp. 13-14 (discussing *Noerr-Pennington* in ruling dismissing EOS's claims based upon alleged vexatious litigation by 3D). The *"Noerr-Pennington"* line of cases, in effect, stands for the proposition that the exercise of First Amendment rights trumps the antitrust laws. *See generally* I P. AREEDA & D. TURNER, ANTITRUST LAW, ch. 2, ¶¶ 200-06 (1988 ed.) (discussing First Amendment rights that limit assertions of antitrust violations); ABA, ANTITRUST SECTION, ANTITRUST LAW DEVELOPMENTS 1223-36 (5th ed. 2002).

13.     Here, however, 3D's conduct in selecting a licensee of its patent portfolio, and the execution of that license agreement, in order to settle litigation initiated against 3D by the Justice Department is not within the limited scope of the *Noerr-Pennington* doctrine.  3D apparently assumes that, because as part of the settlement of the DOJ Antitrust Litigation the Department of Justice approved the licensee selected by 3D, this is a government action that exempts 3D's agreement with the licensee from antitrust claims by EOS.  3D is incorrect.  *See, e.g., In re Busipirone Patent Litigation*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002) (holding that the Food and Drug Administration's authorization of pharmaceutical companies' product in federally approved publication did not constitute petitioning activity that would be immune from antitrust scrutiny under *Noerr-Pennington*).

14.     EOS alleges (and, following the Court's July 2, 2003 Order, clarifies in the Amended Antitrust Counterclaim) that to limit Department of Justice scrutiny of 3D's business practices and to settle litigation, 3D licensed a company that 3D knew would be an ineffective competitor in the manufacturing equipment markets with the specific intent of limiting competition in the United States.  This was a commercial agreement with another company, not the initiation of lobbying or litigation with the United States.  This commercial agreement is not the limited government-petitioning, First Amendment activity protected by *Noerr-Pennington*. 3D's licensing of intellectual property is a commercial act that is part of the pattern of conduct that EOS alleges violates Section 2 of the Sherman Act.  (*See* July 2, 2003 Order at p. 4) (stating elements of a monopolization claim); *accord United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); and *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 474 (5th Cir. 2000) (identifying the elements of an attempted monopolization claim).

2.    **3D's Investigation by A Federal Grand Jury for Criminal Violations of the Antitrust Laws is Relevant and Material to EOS's Claims of 3D's Antitrust Violations**

15.    In Paragraph 40(e)(3) of its Amended Antitrust Claim, EOS alleges that 3D is under investigation by a federal grand jury for possible criminal violations of the antitrust laws. 3D acknowledges in its Memorandum in Support of its Motion to Strike that 3D in "May 2003 received a subpoena from the U.S. Department of Justice to provide documents to a grand jury investigating antitrust and related issues within our industry." (3D's Mem. in Supp., at p. 8) (quoting language in a 3D filing with the SEC).

16.    3D seeks to strike this allegation by arguing that it is "a crude, transparent attempt to cast aspersions and to permit discovery into a sensitive but irrelevant matter." (3D's Mem. in Supp., at p. 8). EOS acknowledges the obvious sensitivity of being under investigation for possible criminal violations of the federal antitrust laws, but it is hard to imagine a topic more relevant to an antitrust claim against 3D than 3D's being under investigation by a grand jury for possible antitrust violations.

17.    3D claims that the grand jury investigation is irrelevant because 3D "[has] been advised that we currently are not a target of the grand jury investigation." (3D's Mem. in Supp., at p. 8). This is a meaningless fact at the initiation of a grand jury investigation. "Target" is a term of art in federal prosecuting, and the U.S. Attorney's Manual defines "target" as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." U.S. ATTORNEYS' MANUAL § 9-11.150. A "target," in other words, is a person or corporation that is about to be indicted by a grand jury. 3D does not claim that it is not a "subject" of the grand jury's investigation, which federal prosecutors define as "a person whose conduct is within the scope of the grand jury's investigation." U.S. ATTORNEYS' MANUAL § 9-11.150.

18.    3D also argues that "the grand jury has not excluded EOS from competing in the United States," so 3D contends the grand jury investigation cannot be relied upon to support an antitrust injury to EOS, and "the grand jury does not add anything" to EOS's antitrust claim against 3D. (3D's Mem. in Supp., at p. 8). Of course, EOS is not making the nonsensical argument ascribed by 3D that the grand jury has excluded EOS from competing in the United States. The fact of the grand jury investigation of 3D is not an allegation of injury to EOS. The fact of 3D being under investigation by the grand jury for antitrust violations could, however, support EOS's claims of 3D's antitrust violations. At a minimum, the grand jury investigation is a clear indication of, at least, a pattern of conduct that 3D has engaged in that has, in the last three years, caused the Justice Department to initiate two separate investigations of 3D for antitrust violations, including the current grand jury investigation of 3D for possible criminal violations of the antitrust laws.[1] What the grand jury is specifically investigating about 3D is unknown to EOS according to the secrecy granted to grand jury proceedings by Federal Rule of Criminal Procedure 6(e). 3D now strenuously seeks to strike any mention of the grand jury investigation from the Amended Antitrust Claim, but the apparent results of the pattern of anticompetitive conduct that EOS alleges 3D has committed are fully appropriate for an antitrust claim under Rule 12 review.

---

[1] Likewise, the cases 3D cites to are inapposite because they deal only with a party's standing to bring suit over a failed bid to purchase a franchise in one instance and a failed bid to purchase stock in another, as opposed to a defendant's pattern of anticompetitive conduct. *See Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300, 304 (5th Cir. 1984) (plaintiff lacked standing to bring antitrust claims over its inability to purchase franchise); *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984) (plaintiff lacked standing to bring antitrust claims over its inability to purchase stock).

**B.     EOS's Allegation that Customers Have Paid Higher Prices for Rapid Prototyping Systems is A Material Allegation of Competitive Harm to the Industry**

19.     3D argues to strike allegations in Paragraph 44 of EOS's Amended Antitrust Claim that U.S. customers of rapid prototyping systems have paid higher prices as a result of 3D's anticompetitive conduct in the market for rapid prototyping systems.  This is not an allegation of injury to EOS; it is an allegation of the effect that 3D's pattern of conduct to exclude competition has had on the market.  In *Aspen Skiing Co v. Aspen Highlands Skiing Co.*, 452 U.S. 585, 605 (1985), which involved claims of exclusion of competition as does EOS's Amended Antitrust Claim, the Supreme Court clearly stated that to assess anticompetitive conduct, not only the injuries caused to the plaintiff, but also the effects of defendant's conduct on the competition in the market must be taken into account.  Market impact is often most clearly demonstrated by analyzing effects on consumers:

> The question whether [3D's] conduct may properly be characterized as exclusionary cannot be answered by simply considering the effect on [EOS]. In addition, it is relevant to consider its impact on consumers and whether it has impaired competition in an unnecessarily restrictive way.  If a firm has been attempting to exclude rivals on some basis other than efficiency, it is fair to characterize its behavior as predatory.  It is, accordingly, appropriate to examine the effect of the challenged pattern of conduct on consumers, on [3D's] smaller rival [EOS], and on [3D] itself.

*Aspen Skiing*, 472 U.S. at 605.  *See also Avery Dennison Corporation vs. Acco Brands, Inc.*, 2000 U.S. Dist. Lexis 3938 at 20, 2000-1 Trade Cas. (CCH) ¶ 72,882 (C.D. Cal. 2000) (stating that higher prices for consumers resulting from an anticompetitive pattern of conduct by firm with 75% market share to exclude competition from the market,  although not a cause of injury to plaintiff, were relevant when assessing summary judgment motion).[2]

---

[2] 3D only cites to a single, unpublished decision, *Viacom Int'l Inc. v. Tele-Communications, Inc.*, No. 93 CIV. 6658 (LAP), 1994 WL 561377 (S.D.N.Y. Oct. 12, 1994), which deals only with whether the expenditure of funds can constitute the antitrust injury, but this case does not suggest that this Court cannot take such effects on competition into consideration to determine the effects 3D's anticompetitive and exclusionary conduct has had.

20.    The Court correctly noted in its July 2 Order that EOS cannot claim antitrust injury based solely upon the higher prices that U.S. consumers paid for rapid prototyping systems. (July 2, 2003 Order, at p. 9). The allegation in Paragraph 44 does not relate to EOS's antitrust injury, but rather to the effects on competition in the market as a whole that 3D's pattern of exclusionary conduct has caused. EOS is not able to and will not seek to claim damages as a result of higher prices paid by U.S. customers. EOS is not a customer of 3D. However, the effect of 3D's conduct on prices paid by U.S. customers is an appropriate and relevant, even necessary, allegation of the anticompetitive effect on the markets involved.

**C.    EOS's Allegations that it Has Incurred Greater Costs Than Would Have Been Required But For 3D's Antitrust Violations that Excluded EOS from the U.S. Market Are Valid Claims For Antitrust Damages**

21.    In its July 2 Order, the Court stated that "EOS's expenditure of resources to break into the U.S. market for RP Systems is simply a cost of doing business; any business must expend resources to break into a new market in a new country." (July 2, 2003 Order, at p. 9). The Court also permitted EOS to replead its claimed injury, which EOS has done in Paragraph 46 of its Amended Antitrust Claim, and which 3D now seeks to strike.

22.    EOS has repled its claim regarding costs to enter the U.S. market for RP Systems to make clear that EOS does not claim antitrust damages for costs related to entry into the U.S. market that any new competitor would incur. Such costs to establish a U.S. market presence that any business would incur would include items such as modifying equipment to comply with U.S. electrical and regulatory standards, establishing a sales force and a distribution system, advertising and promotion costs, and related items. EOS states clearly here, so that the Court and the parties will not waste time unnecessarily, that EOS claims damages related to U.S. entry only to the extent its costs were increased as a result of 3D's antitrust violations that EOS may

prove as this claim proceeds. EOS recognizes that a substantial portion of its expenses to enter into the U.S. market for RP Systems would have been incurred notwithstanding the pattern of exclusionary conduct that EOS alleges. EOS has not quantified this claim, as it is not required at this stage of this litigation. (July 2, 2003 Order, at p. 8) (citing *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876 (3d Cir. 1995)).

**III.    3D'S MOTION TO DISMISS EOS'S AMENDED ANTITRUST CLAIM SHOULD BE DENIED, AS THE COURT HAS ALREADY DENIED THIS REQUEST BY 3D IN THE COURT'S JULY 2 ORDER**

23.    3D moves to dismiss the Amended Antitrust Claim on grounds that 3D has already argued, and that this Court has already denied. It its July 2 Order, the Court held that, in EOS's first antitrust Counterclaim in Count V, EOS has sufficiently pled an antitrust claim against 3D under Section 2 of the Sherman Act and that EOS has sufficiently pled antitrust injury as a result of EOS's allegation that it has been excluded from the U.S. market for RP Systems as a result of 3D's conduct. (July 2, 2003 Order at p. 11). These are the same bases upon which 3D moves again to dismiss EOS's antitrust claim.

24.    According to the Court's July 2, 2003 Order, EOS made the amendments to its antitrust counterclaims required or suggested by the Court. EOS deleted its Count VI, which was based upon EOS's allegations that 3D has engaged in vexatious, bad-faith litigation in an attempt to decrease competition. The Court ruled that EOS did not adequately plead such a claim, and EOS deleted the claim in its Amended Antitrust Claim. The Court ruled that the University of Texas was not properly a defendant in EOS's alleged antitrust claim, and EOS deleted UT as a defendant. The Court invited EOS to replead its claims of injury, and EOS has repled those claims in an effort to focus more clearly upon the antitrust claims in this litigation, though such clarity is difficult before any discovery has been taken. These deletions, and the three relatively

minor modifications that form the basis of 3D's motion to strike as discussed above, are the only amendments that EOS made in its Amended Antitrust Claim.

25.     The Court's July 2, 2003 Order concluded that EOS sufficiently pled an antitrust claim against 3D.  Nothing else has changed in the pleadings or record of this case since July 2. As a result, EOS respectfully defers to the Court's ruling in its July 2, 2003 Order in support of EOS's opposition to 3D's motion to dismiss the antitrust claims.  With its motion, 3D attempts to ask the Court to re-examine four categories of allegations of unlawful conduct made by EOS.  As demonstrated above, 3D's pattern of conduct must be examined as a whole in EOS's monopolization and attempted monopolization claims. *See, e.g.*, *Mishawaka*, 616 F.2d 976. 3D's attempts to reargue these issues are a waste of the Court's and the parties' resources and attention.

## IV.    CONCLUSION

26.     For these reasons, 3D's motion to strike sections of EOS's Amended Antitrust Claim or to dismiss the claim should be denied.

Respectfully submitted,

HILGERS & WATKINS, P.C.
1300 San Jacinto Center
98 San Jacinto Boulevard
P.O. Box 2063
Austin, Texas 78768-2063
(512) 476-4716
(512) 476-5139 (Telecopier)

By: _____

THOMAS H. WATKINS
State Bar No. 20928000
ALBERT A. CARRION, JR.
State Bar No. 03883100

- 12 -

MICHAEL H. BANIAK
MICHAEL D. GANNON
ANDREW PRATT
BANIAK PINE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 (Telecopier)

ATTORNEYS FOR DEFENDANT
EOS GMBH ELECTRO OPTICAL SYSTEMS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was provided to counsel of record by the method indicted below on this the 17th day of September 2003:

Philip E. Cook                                              *via certified mail*
Robert W. Dickerson
JONES DAY
555 W. Fifth Street, Suite 4600
Los Angeles, California 90013-1025

Alan D. Albright                              *via facsimile and certified mail*
Elizabeth J. Brown Fore
GRAY CARY WARE & FREIDENRICH, LLP
1221 South Mopac Expressway, Suite 400
Austin, Texas 78746-6875

John A. Herfort                                             *via certified mail*
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
47th Floor
New York, New York 10166

THOMAS H. WATKINS

- 13 -