*ORIGINAL*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

NOV 5 2003

CLERK, U S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| BOARD OF REGENTS, THE UNIVERSITY OF TEXAS SYSTEM, AND 3D SYSTEMS, INC. | § <br> § <br> § <br> § <br> § <br> § |
| Plaintiffs, | § |
| v. | § <br> § |
| EOS GmbH ELECTRO OPTICAL SYSTEMS, | § <br> § |
| Defendant. | § <br> § <br> § |

Civil Action No. A03 CA 113SS

**ANSWER OF 3D SYSTEMS, INC., 3D SYSTEMS CORPORATION, AND
BOARD OF REGENTS, THE UNIVERSITY OF TEXAS SYSTEM TO THE FIRST
AMENDED COUNTERCLAIMS OF EOS GMBH ELECTRO OPTICAL SYSTEMS**

Plaintiff and counterdefendant 3D Systems, Inc. and counterdefendant 3D Systems

Corporation (collectively, "3D Systems"), together with plaintiff and counterdefendant Board of

Regents, University of Texas System ("UT"), for their answer to the First Amended

Counterclaims ("counterclaims") of EOS GmbH Electro Optical Systems ("EOS"), admit, deny

and allege as follows:

1.      In response to paragraph 1 of EOS's counterclaims, 3D Systems admit that this

Court has jurisdiction over Counts V through VII, inclusive, of EOS's counterclaims, allege that

the License Agreement which is the subject of Counts I through IV of EOS's counterclaims has a

forum selection clause requiring "any action for relief based in whole or in part on this

Agreement (or the breach thereof) or otherwise relating in whole or in part to this Agreement

shall be filed in . . . the Federal and State Courts closest to . . . the place of business of 3D

99

Systems, Inc. in Valencia (Los Angeles County), California[,]" and deny every other allegation in paragraph 1.

2.    In response to paragraph 2 of EOS's counterclaims, 3D Systems are without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny the allegations in paragraph 2.

3.    In response to paragraph 3 of EOS's counterclaims, 3D Systems admit that 3D Systems, Inc. is a corporation organized and existing under the laws of the State of California, that 3D Systems Corporation is a corporation organized and existing under the laws of the State of Delaware, that 3D Systems, Inc. is owned in part directly and in part indirectly by 3D Systems Corporation, and that each has its principal place of business at 26081 Avenue Hall, Valencia, California.  3D Systems deny every other allegation in paragraph 3.

4.    In response to paragraph 4 of EOS's counterclaims, 3D Systems admit that DTM Corporation was a corporation organized and existing under the laws of the State of Delaware, that at one time DTM Corporation had a place of business at 1611 Headway Circle, Building 2, Austin, Texas 78754, and that DTM Corporation was merged into 3D Systems, Inc. on August 31, 2001.  3D Systems deny every other allegation in paragraph 4.

## COUNT I:  BREACH OF SETTLEMENT AGREEMENT AND LICENSE AGREEMENT BY 3D SYSTEMS

5.    No response is required to paragraph 5 of EOS's counterclaims.

6.    In response to paragraph 6 of EOS's counterclaims, 3D Systems admit that 3D Systems, Inc. is a party to a Settlement Agreement with EOS and to a License Agreement with EOS, both with effective dates of August 27, 1997, allege that 3D Systems Corporation is not a party to these agreements, and deny every other allegation in paragraph 6.

- 2 -

7.    In response to paragraph 7 of EOS's counterclaims, 3D Systems allege that the Settlement Agreement and License Agreement speak for themselves, and that each includes an integration clause that supersedes any prior agreements or representations not expressly set forth in the agreements. 3D Systems deny every other allegation in paragraph 7.

8.    In response to paragraph 8 of EOS's counterclaims, 3D Systems allege that the Settlement Agreement and License Agreement speak for themselves, and that each includes an integration clause that supersedes any prior agreements or representations not expressly set forth in the agreements. 3D Systems deny every other allegation in paragraph 8, and specifically deny that 3D Systems, Inc. has breached either the License Agreement or the Settlement Agreement.

9.    In response to paragraph 9 of EOS's counterclaims, 3D Systems admit that, in connection with its August 2001 merger with DTM Corporation, the rights that at that time belonged to DTM Corporation under a license agreement between UT and DTM Corporation now belong to 3D Systems, Inc. by virtue of an agreement between UT and 3D Systems, Inc. 3D Systems further allege that, in a March 16, 2001 Order in litigation pending between EOS and 3D Systems, Inc. in the Central District of California, United States District Judge David O. Carter ruled that 3D Systems, Inc. retained the right under the 1997 agreements to make laser sintering products. In a February 6, 2002 Order, Judge Carter similarly ruled that the 1997 agreements did not exclude 3D Systems, Inc. from using its own patents in the laser sintering field. On two separate occasions, Judge Carter denied EOS the right to amend its pleadings and allege the same claims EOS alleges here as Counts I through IV in its counterclaims, finding that "EOS's proposed claims are futile" and that they "failed to state a claim upon which relief may be granted." 3D Systems deny every other allegation in paragraph 9, and specifically deny that

LAI-2042341v2

3D Systems, Inc. has breached either the License Agreement or the Settlement Agreement, or is violating EOS's alleged exclusive license.

10.    In response to paragraph 10 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 10, and specifically deny that 3D Systems, Inc. has breached either the License Agreement or the Settlement Agreement.

11.    In response to paragraph 11 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 11, and specifically deny that 3D Systems, Inc. has breached either the License Agreement or the Settlement Agreement.

12.    In response to paragraph 12 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 12, and specifically deny that 3D Systems, Inc. has breached either the License Agreement or the Settlement Agreement.

## COUNT II: LEGAL AND EQUITABLE ESTOPPEL AGAINST 3D SYSTEMS

13.    No response is required to paragraph 13 of EOS's counterclaims.

14.    In response to paragraph 14 of EOS's counterclaims, 3D Systems allege that the Settlement Agreement and License Agreement speak for themselves, and that each includes an integration clause that supersedes any prior agreements or representations not expressly set forth in the agreements.  3D Systems deny every other allegation in paragraph 14, and specifically deny that 3D Systems is legally or equitably estopped to assert the '589 and '070 patents against EOS.

15.    In response to paragraph 15 of EOS's counterclaims, 3D Systems allege that the Settlement Agreement and License Agreement speak for themselves, and that each includes an integration clause that supersedes any prior agreements or representations not expressly set forth in the agreements.  3D Systems deny every other allegation in paragraph 15, and specifically

- 4 -

deny that (a) EOS entered into the 1997 agreements in reliance on anything that 3D Systems, Inc.

said or did, which is belied by the sworn testimony of EOS's managing director, Dr. Hans

Langer; and (b) 3D Systems, Inc. is legally or equitably estopped to assert the '589 and '070

patents against EOS.

16.    In response to paragraph 16 of EOS's counterclaims, 3D Systems allege that the

Settlement Agreement and License Agreement speak for themselves, and that each includes an

integration clause that supersedes any prior agreements or representations not expressly set forth

in the agreements. 3D Systems deny every other allegation in paragraph 16, and specifically

deny that 3D Systems, Inc. is legally or equitably estopped to assert the '589 and '070 patents

against EOS.

17.    In response to paragraph 17 of EOS's counterclaims, 3D Systems allege that the

Settlement Agreement and License Agreement speak for themselves, and that each includes an

integration clause that supersedes any prior agreements or representations not expressly set forth

in the agreements. 3D Systems deny every other allegation in paragraph 17, and specifically

deny that (a) EOS relied on any anything that 3D Systems, Inc. said, which is belied by the

sworn testimony of EOS's managing director, Dr. Hans Langer; and (b) 3D Systems, Inc. is

legally or equitably estopped to assert the '589 and '070 patents against EOS.

18.    In response to paragraph 18 of EOS's counterclaims, 3D Systems allege that the

Settlement Agreement and License Agreement speak for themselves, and that each includes an

integration clause that supersedes any prior agreements or representations not expressly set forth

in the agreements. 3D Systems deny every other allegation of paragraph 18, and specifically

deny that 3D Systems, Inc. is legally or equitably estopped to assert the '589 and '070 patents

against EOS.

19.     In response to paragraph 19 of EOS's counterclaims, 3D Systems allege that the Settlement Agreement and License Agreement speak for themselves and that their terms do not give rise to any theory of legal estoppel. 3D Systems deny every other allegation in paragraph 19, and specifically deny that 3D Systems, Inc. is legally or equitably estopped to assert the '589 and '070 patents against EOS.

20.     In response to paragraph 20 of EOS's counterclaims, 3D Systems allege that the Settlement Agreement and License Agreement speak for themselves, deny every other allegation in paragraph 20, and specifically deny that (a) EOS relied on any anything that 3D Systems, Inc. said or did, which is belied by the sworn testimony of EOS's managing director, Dr. Hans Langer; and (b) 3D Systems, Inc. is legally or equitably estopped to assert the '589 and '070 patents against EOS.

21.     In response to paragraph 21 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 21.

### COUNT III: SPECIFIC PERFORMANCE AGAINST 3D SYSTEMS

22.     No response is required to paragraph 22 of EOS's counterclaims.

23.     In response to paragraph 14 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 23.

24.     In response to paragraph 14 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 24.

### COUNT IV: BREACH OF FIDUCIARY DUTY BY 3D SYSTEMS

25.     No response is required to paragraph 25 of EOS's counterclaims.

26.     In response to paragraph 26 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 26, and specifically deny that the Settlement Agreement or the License Agreement between EOS and 3D Systems, Inc. create a fiduciary or confidential relationship.

- 6 -

27.    In response to paragraph 27 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 27.

## COUNT V:  ANTITRUST VIOLATION OF THE
## SHERMAN AND CLAYTON ACTS BY 3D SYSTEMS

28.    No response is required to paragraph 28 of EOS's counterclaims.

29.    In response to paragraph 29 of EOS's counterclaims, 3D Systems admit that in the United States, 3D Systems, Inc. manufactures and sells certain types of rapid prototyping systems, including some machines that involve laser technology, and that in the United States, 3D Systems, Inc. sells materials and provides services, warranty sales, and rentals related to certain of the machines that involve laser technology.  3D Systems deny every other allegation in paragraph 29, and specifically deny that Laser RP Systems is a relevant market under the antitrust laws.

30.    In response to paragraph 30 of EOS's counterclaims, 3D Systems admit that in the United States, 3D Systems, Inc. manufactures and sells certain rapid prototyping machines and related equipment and services.  3D Systems deny every other allegation in paragraph 30, and specifically deny that either Laser RP Systems or Industrial RP Systems is a relevant market under the antitrust laws.

31.    In response to paragraph 31 of EOS's counterclaims, 3D Systems admit that on August 31, 2001 DTM Corporation was merged into 3D Systems, Inc. and that, prior to that merger, DTM Corporation designed, manufactured, marketed, and serviced rapid prototyping systems that involve laser technology.  3D Systems deny every other allegation in paragraph 31, and specifically deny that Laser RP Systems is a relevant market under the antitrust laws.

32.    In response to paragraph 32 of EOS's counterclaims, 3D Systems admit that one definition of rapid prototyping could be the creation of parts from a computer-based model by

automated means, that some rapid prototyping machines can cost hundreds of thousands of dollars, and that various rapid prototyping machines are able to create functional prototypes, tooling inserts, and low-volume production quantities of parts. 3D Systems deny every other allegation in paragraph 32, and specifically deny that either Laser RP Systems or Industrial RP Systems is a relevant market under the antitrust laws.

33.    In response to paragraph 33 of EOS's counterclaims, 3D Systems admit that DTM Corporation and 3D Systems, Inc. agreed to merge, and that on August 31, 2001, DTM Corporation was merged into 3D Systems, Inc. 3D Systems allege that the "Merger Agreement" as defined in paragraph 33 and any other agreement or document related to the merger speak for themselves, and deny every other allegation in paragraph 33.

34.    In response to paragraph 34 of EOS's counterclaims, 3D Systems admit that on August 31, 2001, DTM Corporation was merged into 3D Systems, Inc. and that as a consequence, DTM Corporation ceased to exist as a separate legal entity and thus no longer competed with 3D Systems, Inc. 3D Systems deny every other allegation in paragraph 34.

35.    In response to paragraph 35 of EOS's counterclaims, 3D Systems admit that EOS manufactures and sells rapid prototyping machines that involve laser technology, and that EOS sells materials and provides certain services associated with those machines. 3D Systems allege that EOS has recently stated, in an October 21, 2003 press release, that EOS "has continued to increase it market share in the laser-sintering market, including in the United States — where we now have more than 30 customers for our laser-sintering products — and has further strengthened its leading position in the laser-sintering market worldwide. In the first half of 2003 we sold nearly twice as many laser-sintering systems as any other company . . . ." 3D

Systems deny every other allegation in paragraph 35, and specifically deny that either Laser RP Systems or Industrial RP Systems is a relevant market under the antitrust laws.

36.    In response to paragraph 36 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 36, and specifically deny that either Laser RP Systems or Industrial RP Systems is a relevant market under the antitrust laws.

37.    In response to paragraph 37 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 37, and specifically deny that either Laser RP Systems or Industrial RP Systems is a relevant market under the antitrust laws.

38.    In response to paragraph 38 of EOS's counterclaims, 3D Systems admit that, as a consequence of the August 31, 2001 merger of DTM Corporation into 3D Systems, Inc., DTM Corporation no longer competes with 3D Systems, Inc. 3D Systems deny every other allegation in paragraph 38.

39.    In response to paragraph 39 of EOS's counterclaims, 3D Systems admit that on June 6, 2001, the Department of Justice filed a complaint in the District of Columbia challenging the acquisition of DTM Corporation by and merger with 3D Systems (i.e., the "Justice Department Antitrust Litigation"). 3D Systems further alleges that the subject matter of this paragraph is irrelevant in light of the Court's October 16, 2003 Order reiterating that EOS's lost bid to become 3D Systems, Inc.'s licensee pursuant to the consent decree entered in the "Justice Department Antitrust Litigation" does not constitute antitrust injury and striking from EOS's counterclaims paragraphs 40(e)(1)-(3), 44, and the last sentence of paragraph 46. 3D Systems deny all other allegations in paragraph 39.

40.    In response to paragraph 40 of EOS's counterclaims, 3D Systems do not respond to those allegations in paragraph 40(e)(1)-(3), which were stricken by the Court in its

October 16, 2003 Order. 3D Systems deny all other allegations in paragraph 40, and specifically deny that either Laser RP Systems or Industrial RP Systems is a relevant market under the antitrust laws.

41.    In response to paragraph 41 of EOS's counterclaims, 3D Systems deny all of the allegations in paragraph 41, and specifically deny that EOS has suffered any cognizable antitrust injury or damage that has been caused by 3D Systems, Inc.'s conduct.

42.    In response to paragraph 42 of EOS's counterclaims, 3D Systems admit that EOS (a) manufactures and sells rapid prototyping machines and related equipment involving laser technology, (b) sells certain powder materials used in laser sintering machines, (c) provides certain services associated with laser sintering machines, and (d) has sold powder material used in laser sintering machines and has sold laser sintering machines in the United States. 3D Systems are without knowledge or information sufficient to form a belief as to the truth of the allegations relating to EOS's plans with respect to the United States market since 1997 and, on that basis, deny that allegation. 3D Systems deny every other allegation in paragraph 42, , and specifically deny that either Laser RP Systems or Industrial RP Systems is a relevant market under the antitrust laws.

43.    In response to paragraph 43 of EOS's counterclaims, 3D Systems admit that original equipment manufacturers, governmental entities, and service bureaus have been among the types of customers that have purchased various rapid prototyping machines and have used those machines to create parts for various purposes, including prototypes. 3D Systems deny all other allegations in paragraph 43, and specifically deny that either Laser RP Systems or Industrial RP Systems is a relevant market under the antitrust laws.

44.    3D Systems do not respond to those allegations in paragraph 44, which were stricken from EOS's counterclaims by the Court in its October 16, 2003 Order.

45.    In response to paragraph 45 of EOS's counterclaims, 3D Systems are without knowledge or information sufficient to form a belief as to the truth of the allegations relating to 3D Systems' competitors (i.e., "RP Competitors"), and particularly the profitability of RP Competitors or the reasons why RP Competitors may not sell their products in the United States, and on that basis, deny those allegations. 3D Systems deny every other allegation in paragraph 45, and specifically deny that RP Competitors are limited to those companies in the Laser RP Systems or Industrial RP Systems markets alleged by EOS, or that 3D Systems' conduct has unlawfully excluded competitors in any relevant market.

46.    In response to paragraph 46 of EOS's counterclaims, 3D Systems do not respond to those allegations contained in the last sentence of paragraph 46, which were stricken by the Court in its October 16, 2003 Order. 3D Systems are without knowledge or information sufficient to form a belief as to the truth of the allegations relating to EOS's profitability and, on that basis, deny those allegations. 3D Systems deny every other allegation in paragraph 46, and specifically deny that 3D Systems' conduct has excluded competition in any relevant market..

47.    In response to paragraph 47 of EOS's counterclaims, 3D Systems admit that some rapid prototyping machines that involve laser technology, and that some materials used in such machines, are manufactured or produced outside of the United States. 3D Systems deny every other allegation in paragraph 47.

48.    In response to paragraph 48 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 48 of EOS' Counterclaims.

49.     In response to paragraph 49 of EOS's counterclaims, 3D Systems deny every allegation in paragraph 49 of EOS' Counterclaims.

## COUNT VI: DECLARATORY JUDGMENT OF INVALIDITY

50.     No response is required to paragraph 50 of EOS's counterclaims.

51.     In response to paragraph 51 of EOS's counterclaims, UT and 3D Systems deny every allegation in paragraph 51.

52.     In response to paragraph 52 of EOS's counterclaims, UT and 3D Systems deny every allegation in paragraph 52.

## COUNT VII: DECLARATORY JUDGMENT OF NON-INFRINGEMENT

53.     No response is required to paragraph 53 of EOS's counterclaims.

54.     In response to paragraph 54 of EOS's counterclaims, UT and 3D Systems deny every allegation in paragraph 54.

55.     In response to paragraph 55 of EOS's counterclaims, UT and 3D Systems deny every allegation in paragraph 55.

## AFFIRMATIVE DEFENSES

1.     EOS's counterclaims, and each Count alleged in them, fail to state claims upon which relief can be granted.

2.     Counts I through IV of EOS's counterclaims have already been asserted against 3D Systems twice, and EOS's assertion of the identical claims here constitutes an abuse of process, malicious prosecution, and subjects EOS and/or its counsel to liability for excess costs under 28 U.S.C. § 1927.

3.     Counts I thorough IV of EOS's counterclaims are subject to the first-filed rule and should be transferred to litigation pending in California where EOS already has asserted these claims on two occasions.

LAI-2042341v2

4.    Counts I through IV of EOS's counterclaims are subject to an enforceable forum selection clause, requiring those claims to be litigated in federal or state courts in Los Angeles County, California.

5.    Counts I through IV of EOS's counterclaims are barred by the doctrines of res judicata and/or collateral estoppel.

6.    Counts I through IV of EOS's counterclaims are barred by the Statute of Frauds.

7.    Count V of EOS's counterclaims is barred to the extent it is based upon alleged conduct that is outside the applicable limitations period, and thus is barred by the Statute of Limitations.

8.    Count V of EOS's counterclaims is barred because EOS has not suffered and is not threatened with suffering any antitrust injury or damage by reason of any conduct by 3D Systems.

9.    Count V of EOS's counterclaims is barred because none of 3D Systems' conduct constitutes monopolization, attempted monopolization, an unreasonable restraint of trade, or has produced or is likely to produce any effect prohibited by the antitrust laws.

10.    On information and belief, EOS is not entitled to any relief because each Count in its counterclaims is barred, in whole or in part, by unclean hands, waiver, laches, acquiescence and/or estoppel.

**WHEREFORE,** UT and 3D Systems pray for judgment on EOS's counterclaims as follows:

a.    That on Counts I through V, counterclaimant take nothing by its counterclaims, and that they be dismissed with prejudice;

b.    That on Counts VI and VII, the '589 and '070 patents be declared not invalid and infringed;

c.    That an injunction enter against further infringement of the '589 and '070 patents by EOS;

d.    That UT and 3D Systems be awarded damages for past infringement, and that such damages be trebled; and

e.    That UT and 3D Systems be awarded their attorney's fees and costs of suit, and such other and further relief as the circumstances warrant and the Court deems just.

- 14 -

Dated:  November 5, 2003

_____
PHILIP E. COOK (admitted *pro hac vice*)
Calif. State Bar No. 149067
ROBERT W. DICKERSON (admitted *pro hac vice*)
Calif. State Bar No. 89367
JONES DAY
555 West Fifth Street, Suite 4600
Los Angeles, CA  90013-1025
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

ALAN D ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
GRAY, CARY, WARE & FREIDENRICH LLP
1221 South MoPac Expressway, Suite 400
Austin, TX  78746-6875
Telephone:  (512) 457-7000
Facsimile:  (512) 457-7001

Attorneys for Plaintiffs
BOARD OF REGENTS, THE
UNIVERSITY OF TEXAS SYSTEM,
and 3D SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent to the following counsel of record on this _5th_ day of November, 2003. in the following manner:

Thomas H. Watkins                    *Via United States Mail*
State Bar No. 20928000
Albert A. Carrion, Jr.
State Bar No. 03883100
HILGERS & WATKINS P.C.
98 San Jacinto Boulevard
San Jacinto Center, Suite 1300
Austin, Texas 78701
(512)476-4716
(512) 476-5139 Facsimile

Michael H. Baniak                    *Via Overnight Delivery*
Michael D. Gannon
Andrew F. Pratt
BANIAK PIKE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 Facsimile

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

ELIZABETH J. BROWN FORE