**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**
NOV 5 2003
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc., § § § § § Plaintiffs, § § v. § § EOS GmbH Electro Optical Systems, § § Defendant. § § | Civil Action No. A03 CA 113SS |

**PLAINTIFF 3D SYSTEMS, INC.'S MOTION TO COMPEL
THE DEPOSITION OF EXPERT ALLAN LIGHTMAN, PH.D.
AND REQUEST FOR EXPEDITED CONSIDERATION**

Plaintiff 3D Systems, Inc. ("3D Systems") respectfully files this Motion seeking to compel the deposition of defendant EOS GmbH Electro Optical Systems' ("EOS") expert Allan Lightman, Ph.D. ("Dr. Lightman"). Plaintiff further respectfully requests expedited consideration of this Motion in light of the upcoming *Markman* hearing, which is scheduled for November 24, 2003.

### I.
### INTRODUCTION

Dr. Lightman has a conflict acting as a testifying expert on behalf of defendant EOS in this litigation. Dr. Lightman has served as an expert for 3D Systems and its predecessor (*i.e.*, DTM Corporation) in two separate lawsuits. In one of the cases in which Dr. Lightman served as an expert for plaintiff 3D Systems, defendant EOS was (and continues to be) the opposing party. Dr. Lightman only terminated his relationship with 3D Systems in that pending case four

months ago. EOS has now hired Dr. Lightman as an expert in this case, and on October 27, 2003, submitted Dr. Lightman's declaration in support of EOS's opening *Markman* brief.

Plaintiffs first learned that EOS might be working with Dr. Lightman when he attended the October 17, 2003 technical tutorial, but only confirmed the nature of that relationship on October 27, 2003, when EOS filed its *Markman* brief and Dr. Lightman's accompanying declaration. (Cook Decl., ¶ 4.) Plaintiffs promptly served EOS with a Notice of Deposition of Dr. Lightman. (*See* Cook Decl., ¶¶ 5-6 & Exs. A, B.)

On October 30, 2003, EOS notified plaintiffs that Dr. Lightman "is not available to you for examination except on cross-examination in Court [sic] should we decide to put him on the stand." (Cook Decl., ¶ 7 & Ex. C.) The basis for EOS's refusal to permit Dr. Lightman to testify is the Court's scheduling order, which does not require service of expert designations until December 2003. (*Id.*)[1] Yet it is clear that, at least for purposes of the *Markman* construction, defendant EOS has designated Dr. Lightman as an expert.

3D Systems seeks to depose Dr. Lightman prior to the *Markman* hearing for two reasons. First, EOS has submitted his testimony in support of an argument EOS makes in its *Markman* brief, asking the Court to find that a claim term is "incapable of construction" and thus invalid for indefiniteness under 35 U.S.C. § 112. Simply put, if the Court intends to address this argument at the *Markman* hearing, the patentee should have the opportunity to depose Dr. Lightman in order to rebut that testimony and effectively cross-examine him at the hearing.

Second, Dr. Lightman possesses 3D Systems' privileged and confidential information that is relevant to the instant litigation. In the pending litigation between 3D Systems and EOS in California, for example, Dr. Lightman served only as a consulting expert to 3D Systems. In

---

[1] Contrary to prior practice of the parties in other litigation, EOS also refused to accept the deposition notice in lieu of a subpoena to their retained expert. (Cook Decl., ¶ 6.)

2

light of 3D Systems' (and before that DTM's) history with Dr. Lightman, it is shocking that Dr. Lightman is now acting as an expert for EOS in this litigation. 3D Systems thus seeks to depose Dr. Lightman to discover the extent to which he has communicated to EOS's counsel information he learned during his relationship with either 3D Systems or its predecessor, and to be able to raise any issues that flow from the circumstances of EOS's engagement of him as an expert, avoiding any delay in the prosecution of this litigation.

In short, 3D Systems would like the Court to order the following:

(1)   that Dr. Lightman appear for deposition no later than November 17, 2003, and that he produce at that deposition all of the documents described in his deposition notice (*i.e.*, Ex. A);

(2)   that plaintiffs Board of Regents, the University of Texas System ("UT") and 3D Systems be permitted to file a short supplemental response brief, no later than November 20, 2003, addressing those issues raised by Dr. Lightman's declaration (rather than have to cover them prematurely in their response brief, due November 10, 2003); and

(3)   that EOS's opposition to this Motion be required no later than November 10, 2003, to which 3D Systems will reply, if necessary, no later than November 12, 2003, in order to permit a ruling from the Court within the time remaining before the November 24, 2003 *Markman* hearing.

## II.
## FACTUAL BACKGROUND

Laser sintering was first commercialized in the early 1990s by DTM Corporation, a start-up company that was based in Austin, Texas. DTM's products were based upon research conducted in the late 1980s in Austin at UT. DTM was licensed by UT to make and sell laser

3

sintering products. In August 2001, DTM was acquired by and merged into 3D Systems. As a result, 3D Systems acquired all of DTM's patents, and by virtue of an agreement with UT, 3D Systems is now the exclusive licensee for UT's laser sintering patents.

As explained below, the same Dr. Lightman who has provided a declaration on behalf of EOS has previously served as an expert for 3D Systems and its predecessor DTM as an expert in two different cases: the Midwest Litigation and the California EOS Litigation.

### A.     The Midwest Litigation

In 1996, DTM hired Dr. Lightman as an expert in connection with a patent infringement case that DTM filed against Midwest Composite Technologies, Inc., Midwest Fiberglass Supply, Inc., and Helmut Keidl (the "Midwest Litigation"). DTM accused the Midwest parties of infringing U.S. Patent No. 5,342,919 (the "'919 patent"), which involves claims for certain laser sintering materials. Dr. Lightman had a critical role in the Midwest Litigation for DTM. He spent over 100 hours, at a cost to DTM of over $30,000, consulting with and providing expert reports for DTM on, among other things, the Midwest's parties' use of laser sintering materials that were accused of infringing the '919 patent because of their specific characteristics or properties. (*See* Cook Decl., ¶¶ 8-9; Exs. D, E [Expert Report], & F [Rebuttal Report].)[2]

There is a substantial relationship between the issues that that Dr. Lightman was consulted on by DTM in the Midwest Litigation and those for which he has offered an opinion here in support of EOS's invalidity argument. In his new role as an expert for EOS, Dr. Lightman now attacks claim language from one of the patents-in-suit, U.S. Patent No. 5,639,070 ("'070 patent"), which describes "a temperature below the sintering temperature." In essence, he opines that one skilled in the art cannot determine "sintering temperature" from

---

[2] The '919 patent was at the time owned by DTM, and is now owned by 3D Systems as a result of the DTM merger in August 2001.

the '070 patent or what was known in the art. At Lightman's deposition, plaintiff intends to explore the relationship between this opinion and the work he performed as an expert for DTM in the Midwest Litigation.

One example is seen in the following assertions made by Dr. Lightman on behalf of his new client EOS:

> The '070 patent embodiments described a single material system in which the particles are joined by a spatially and temporally localized heat source: a scanning laser. This process would not sinter the material. It would join together the particles using a melt-flow-resolidification cycle (i.e., molding). . . . Under a classical definition of "sintering," which a person of ordinary skill in the art would have known and used, plastics and polymers are incapable of sintering.

(Lightman Decl., ¶¶ 8, 14.) This opinion is plainly related — if not contradicted outright — by the opinions Dr. Lightman offered on DTM's behalf in the Midwest Litigation. The '919 patent that was at issue in the Midwest Litigation covers certain laser-sinterable powder material. In his initial Expert Witness Report about infringement of the '919 patent, Dr. Lightman analyzed two types of nylon laser sintering powders (i.e., RILSAN D50 and D80, which fall within "plastics and polymers"), and stated that the D50 and D80 both met the claim limitation of "a bed of laser-sinterable material." (Cook Decl., Ex. E at p.1, lines 8-12.) Dr. Lightman also opined that the nylon material met the claim limitation of showing "a crystalline melting point Tm." (*Id.* at p.1, line 37 – p.2, line 3.) Thus, it appears that Dr. Lightman previously referred to "plastics and polymers" as capable of "sintering," and applied a definition of "sintering" that included melting, which is inconsistent with the expert opinion Dr. Lightman has submitted here. At bottom, the subject of Dr. Lightman's retention by EOS here is substantially related to the work in which he was involved for DTM in the Midwest Litigation.

5

B.  **The California EOS Litigation**

3D Systems also hired Dr. Lightman as a consulting expert in May 2002 in connection with patent infringement litigation against EOS, a case that is currently pending in California (the "California EOS Litigation"). (Cook Decl., ¶ 10 & Ex. G.) EOS initiated that litigation, suing DTM for infringing certain patents. Following the DTM merger, 3D Systems has defended patent infringement claims that EOS brought against DTM, and 3D Systems has itself asserted a counterclaim against EOS, accusing it of infringing U.S. Patent Nos. 5,990,268 (the "'268 patent") and 6,136,948 (the "'948 patent") by importing and selling certain laser sintering materials.

So, in addition to the original relationship that Dr. Lightman had with DTM and the issues he had worked on in the Midwest Litigation, Dr. Lightman had a substantial relationship with DTM's successor, 3D Systems, in litigation against EOS. Moreover, there is a substantial relationship between the matters on which Dr. Lightman was consulted by DTM and 3D Systems and his work for EOS here. Notably, the '268 and '948 patents are continuations-in-part of the '919 patent that was at issue in the Midwest Litigation, and thus share the same common disclosures Dr. Lightman studied and analyzed in connection with his work for DTM. Indeed, 3D Systems contacted and engaged Dr. Lightman as a consulting expert in the California EOS litigation in large part *because* of his prior work in the Midwest Litigation. Although Dr. Lightman terminated his consulting relationship with 3D Systems in connection with the California EOS Litigation in July 2003, he did so a mere four months before filing his declaration for EOS in this case, and with self-serving statements that suggest he was even then anticipating switching sides. (Cook Decl., ¶ 11 & Ex. H.)

More importantly, EOS is represented in the California EOS Litigation by the same counsel who represent it in this litigation. EOS has attacked the validity of the '268 and '948 patents in the California EOS Litigation by claiming that certain properties or characteristics of the laser sintering materials claimed in those patents are ambiguous and incapable of construction, and thus invalid for indefiniteness under 35 U.S.C. § 112. That is the same argument EOS is making here, with the support of 3D Systems (and before that DTM's) former expert.

### III.
### 3D SYSTEMS IS ENTITLED TO DEPOSE DR. LIGHTMAN ON THOSE SUBJECTS CONTAINED IN HIS SUBMITTED DECLARATION.

The Federal Rules of Civil Procedure acknowledge that "effective cross-examination of an expert witness requires advance preparation," especially in patent cases. FED. R. CIV. P. 26, 1970 Advisory Committee's Notes. For this reason, the Federal Rules require that a party proffer its expert for deposition. See FED. R. CIV. P. 26(b)(4)(A) (providing that "a party may depose any person who has been identified as an expert whose opinions may be presented at trial.").[3] As explained by the advisory committee, the rules governing expert depositions were promulgated because:

> [t]he lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take[.] . . . Effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.

---

[3] Although a *Markman* hearing is not a trial, it can be as important as trial because of the potential to effectively resolve the issues of infringement. *Vivid Tech., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[I]t is well recognized that the construction of the claims may resolve some or all of the issues of infringement."). For this reason, it is crucial that the parties be as prepared for the *Markman* hearing as they would be for the trial of the case.

7

*Id.* Patent cases are singled out as those cases in which expert depositions are particularly important: "a prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent." *Id.*

EOS has made an argument seeking, improperly during the *Markman* process,[4] a finding that the '070 patent is invalid for indefiniteness under 35 U.S.C. § 112. EOS has filed, with the sole support of Dr. Lightman's testimony, a challenge to the claim limitation "a temperature below the sintering temperature" in the '070 patent, claiming that the clause is ambiguous and thus incapable of construction. But before the Court considers this issue, plaintiff should be permitted to depose Dr. Lightman on, among other things, the basis for Dr. Lightman's opinion of indefiniteness and whether other opinions he has expressed during his service as an expert for 3D Systems are consistent with his opinions here. And, the Court should permit the plaintiff to conduct this inquiry in a deposition rather than at the *Markman* hearing itself, where the time constraints will be relatively severe. Indeed, it remains unclear that EOS will even expose Dr. Lightman to the risk of cross-examination at the *Markman* hearing. (*E.g.*, Cook Decl., Ex. C (EOS would only allow cross-examination of Dr. Lightman "should we decide to put him on the stand").)

## IV.
## 3D SYSTEMS IS ENTITLED TO DEPOSE DR. LIGHTMAN TO DETERMINE THE EXTENT OF HIS COMMUNICATIONS WITH EOS OR ITS COUNSEL.

Federal courts have the inherent power to disqualify expert witnesses. *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996). In cases like this one, where an expert witness has "switched sides," the Fifth Circuit has held that this situation is a "clear

---

[4] *E.g., Intervet Am., Inc. v. Kee-Vet Labs., Inc.* 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("Ambiguity, undue breadth, vagueness, and triviality are matters which go to claim *validity* for failure to comply with 35 U.S.C. § 112, ¶ 2, not to interpretation or construction.") (emphasis in original).

case for disqualification" of the expert. *Id.* Disqualification may be required merely because of Dr. Lightman's prior retention by 3D Systems and/or its predecessor, DTM. *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 590–91 (D. Miss. 1986) (disqualifying testing laboratory as defendant's expert witness where it had been engaged by plaintiff in the past and matters in the current case were "substantially related" to the prior work with plaintiff). And, even if his retention by EOS here is not deemed "switching sides," disqualification may still be required if (i) it was objectively reasonable for 3D Systems to believe that a confidential relationship with Dr. Lightman existed; and (ii) Dr. Lightman received or had reasonable access to 3D Systems' (or its predecessors) confidential or privileged information. *Koch Refining Co.*, 85 F.3 d at 1182.

Before moving to disqualify Dr. Lightman or seeking any other relief appropriate to the circumstances, whether here or in the pending California EOS Litigation — and indeed before producing all of the evidence that might warrant such disqualification — 3D Systems believes it prudent first to take Dr. Lightman's deposition. This would permit 3D Systems to probe, among other things, communications between Dr. Lightman and EOS or its counsel, and identify any other steps 3D Systems may have to take in order to protect its interests.

## V.
## CONCLUSION

Dr. Lightman has, on two separate occasions, been retained as an expert by 3D Systems (or its predecessor DTM) on issues that are substantially related to those in this case and on which he has now offered an opinion for EOS. Dr. Lightman's deposition should be ordered so that (i) plaintiffs can adequately prepare and advocate their position on the issue in the pending *Markman* proceedings that EOS supports with Dr. Lightman's testimony; and (ii) 3D Systems

can determine the extent to which its interests may be compromised in this or other pending litigation with EOS where EOS is represented by the same counsel of record.

In sum, EOS should be compelled to produce Dr. Lightman at a deposition no later than November 17, 2003, and he should be ordered to produce at that deposition all of the documents set forth in his deposition notice. In addition, to ensure that this Motion can be heard on an expedited basis, EOS's opposition to this Motion should be filed no later than November 10, 2003, to which 3D Systems will reply, if necessary, no later than November 12, 2003. Finally, plaintiffs UT and 3D Systems request that they be permitted to file a short supplemental response brief to EOS's Opening *Markman* brief, no later than November 20, 2003, addressing those issues raised by Dr. Lightman's declaration.

## CERTIFICATE OF CONFERENCE

The parties have conferred and defendant opposes this Motion.

Dated: November 5, 2003

*Philip E. Cook, by permission*
PHILIP E. COOK (admitted *pro hac vice*)
Calif. State Bar No. 149067
ROBERT W. DICKERSON (admitted *pro hac vice*)
Calif. State Bar No. 89367
JONES DAY
555 West Fifth Street, Suite 4600
Los Angeles, CA 90013-1025
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

ALAN D ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
GRAY, CARY, WARE & FREIDENRICH LLP
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-6875
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

Attorneys for Plaintiffs
BOARD OF REGENTS, THE UNIVERSITY OF
TEXAS SYSTEM and 3D SYSTEMS, INC.

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent to the following counsel of record on this 5th day of November, 2003. in the following manner:

| | |
|---|---|
| Thomas H. Watkins<br>State Bar No. 20928000<br>Albert A. Carrion, Jr.<br>State Bar No. 03883100<br>HILGERS & WATKINS P.C.<br>98 San Jacinto Boulevard<br>San Jacinto Center, Suite 1300<br>Austin, Texas 78701<br>(512)476-4716<br>(512) 476-5139 Facsimile | *Via United States Mail* |
| Michael H. Baniak<br>Michael D. Gannon<br>Andrew F. Pratt<br>BANIAK PIKE & GANNON<br>150 N. Wacker Drive, Suite 1200<br>Chicago, Illinois 60606<br>(312) 673-0360<br>(312) 673-0361 Facsimile | *Via Overnight Delivery* |

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

_____
ELIZABETH J. BROWN FORE

Gray Cary\AU\4117157.1
2502557-1