

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
NOV 20 2003
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. A03 CA 113SS |
| EOS GmbH Electro Optical Systems, | § § | |
| Defendant. | § § § | |

**PLAINTIFF AND COUNTERCLAIM DEFENDANT 3D SYSTEMS, INC.'S MOTION
TO SEVER AND TRANSFER COUNTS I THROUGH IV
OF EOS'S FIRST AMENDED COUNTERCLAIMS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1
II. BACKGROUND .................................................................................................................... 2
    A. The Rise of Rapid Prototyping and Manufacturing and European Patent Litigation Against EOS ............................................................................................. 2
    B. EOS's Settlement and License Agreements with 3D Systems ............................... 3
    C. EOS's Commencement of the California Action..................................................... 3
    D. The California Court's First Rejection of the Claims .............................................. 4
    E. The California Court's Second Rejection of the Claims ......................................... 4
    F. EOS's Third Attempt to Bring the Claims............................................................... 5
III. THIS COURT SHOULD SEVER THE CLAIMS AND TRANSFER THEM TO THE CALIFORNIA COURT ................................................................................................. 5
    A. Under the First-Filed Doctrine, the California Court Should Adjudicate the Claims ...................................................................................................................... 5
    B. The Claims are Governed By a Mandatory Forum-Selection Clause Designating California as the Only Proper Forum ................................................... 7
IV. CONCLUSION....................................................................................................................... 9

## TABLE OF AUTHORITIES

Page

**Cases**

*Afram Carriers v. Moeykens*,
  145 F.3d 298 (5th Cir. 1998) .................................................................................................. 7

*Brunet v. United Gas Pipeline Co.*,
  15 F.3d 500 (5th Cir. 1994) .................................................................................................... 6

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) .................................................................................................. 5

*In re Ricoh Corp.*,
  870 F. 2d 570 (11th Cir. 1989) ............................................................................................... 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*,
  675 F.2d 1169 (11th Cir. 1982) .............................................................................................. 5

*Mitsui & Co. (USA), Inc. v. MIRA M/V*,
  111 F.3d 33 (5th Cir. 1997) .................................................................................................... 8

*Nelson v. Grooms*,
  307 F.2d 76 (5th Cir. 1962) .................................................................................................... 7

*Save Power Ltd. v. Syntek Finance Corp.*,
  121 F.3d 947 (5th Cir. 1997) .......................................................................................... 5, 6, 7

*Stewart Organization, Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ............................................................................................................. 7, 9

*The Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) .................................................................................................................... 7

*The Shaw Group, Inc. v. Natkin & Co.*,
  907 F. Supp. 201, 205 (M.D. La. 1999) ................................................................................. 8

*Toro Co. v. Alsop*,
  565 F.2d 998 (8th Cir. 1977) .................................................................................................. 6

*Transmirra Prod. Corp. v. Monsanto Chem. Co.*,
  27 F.R.D. 482 (S.D.N.Y. 1961) .............................................................................................. 7

*West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*,
  751 F.2d 721 (5th Cir. 1985) .................................................................................................. 6

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................................... 8, 9

28 U.S.C. § 1927 ........................................................................................................................... 2, 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

Federal Rule of Civil Procedure 21 .................................................................................. 6

## I. INTRODUCTION

This Motion is directed to Counts I through IV of the First Amended Counterclaim (the "Claims") filed here by defendant and counterclaimant EOS GmbH Electro Optical Systems ("EOS").[1] EOS has tried *no fewer than three times* to bring the Claims against plaintiff and counterclaim defendant 3D Systems, Inc. ("3D Systems") based on the alleged breach by 3D Systems of an August 27, 1997 License Agreement between EOS and 3D Systems ("License Agreement"). EOS has tried to do so twice in a California case that has been pending for nearly three years — *EOS GmbH Electro Optical Systems v. DTM Corp., et al.*, Case No. SACV 00-1230 DOC (MLGx) (the "California Action"). But both times it did so, the California court rejected the Claims *on the merits* and *as a matter of law*. Now, after losing twice in its chosen forum, EOS once again tries to bring the Claims here, using language that is a virtual "copy and paste" of the claims rejected in the California Action.

The Court should reject EOS's latest attempt to relitigate these claims for two independent reasons. Under the first-filed rule, the court in the first-filed action must resolve the Claims. Because the California Action was filed nearly three years before the instant action, the Claims must be — and, indeed, already have been — resolved there. And, in the License Agreement's mandatory forum-selection clause, EOS agreed to litigate the Claims in California. Thus, they are not properly brought here.

In sum, EOS already has had two bites at the apple, and certainly does not deserve three. Nor should 3D Systems be required to incur the costs of once again demonstrating the lack of merit in the Claims, else the purposes behind the first-filed rule and the policies underlying the

---

[1] The Claims consist of four counts: (1) Breach of Settlement Agreement and License Agreement; (2) Legal and Equitable Estoppel; (3) Specific Performance; and (4) Breach of Fiduciary Duty.

1

enforcement of freely negotiated forum-selection clauses would be frustrated. Further, litigating these claims a third time would waste judicial resources, flaunt two final and definitive rulings from the California court, create the risk of inconsistent rulings and duplicative appellate proceedings, and multiply these proceedings unreasonably and vexatiously (which appears to have been EOS's intent). *See* 28 U.S.C. § 1927. The Court should sever Counts I through IV of EOS's counterclaims from this action and transfer them to the California Action.

## II. BACKGROUND

### A. The Rise of Rapid Prototyping and Manufacturing and European Patent Litigation Against EOS

Although there are various rapid prototyping technologies, most start with computer-assisted design (or "CAD") files created on a computer and use that data to create a physical, three-dimensional part. (Ex. 1 [Ervin Decl.], ¶ 4.) Two leading methods for rapid prototyping are laser sintering, which was developed and commercialized by Austin-based DTM Corporation ("DTM") based upon research conducted in the late 1980s at the University of Texas (who then exclusively licensed its laser sintering technology to DTM), and stereolithography, which was pioneered by 3D Systems in the mid-to late 1980s.

Benefiting from and, indeed, copying the pioneering work of UT and DTM, EOS began a laser sintering business from its headquarters in Germany (using the label "EOSint"), selling its first EOSint laser sintering machine in Europe in 1994. (Ex. 2 [Feb. 25, 2003 Langer Depo.] at 564:13-18; Ex. 1 [Ervin Decl.] at ¶ 5.) EOS similarly copied the pioneering efforts of 3D Systems, and began a stereolithography business (using the label "STEREOS"), selling its first STEREOS stereolithography machine in Europe in 1991. (Ex. 2 [Feb. 25, 2003 Langer Depo.] at 563:4-14, 563:24-564:10.) In the mid-1990s, EOS was sued repeatedly for patent infringement by DTM (for EOS's laser sintering products), and by 3D Systems (for EOS's stereolithography products). (Ex. 1 [Ervin Decl.] at ¶ 6; Ex. 3 [Alpert Decl.], ¶ 3.)

### B.  EOS's Settlement and License Agreements with 3D Systems

On August 27, 1997, EOS entered into (i) a Settlement, Purchase and Transfer Agreement ("Settlement Agreement") (Ex. 4); and (ii) a License Agreement ("License Agreement") (Ex. 5), which resolved all of the claims 3D Systems then had pending against EOS. EOS obtained rights to 3D Systems' extensive portfolio of stereolithography patents through the License Agreement, but only to the extent those patents might apply to the field of laser sintering. (Ex. 5, § 1.1.) The License Agreement contains a "non-assert" clause, which confirms 3D Systems' right to practice in the field of laser sintering without fear of infringing its licensed stereolithography patents.[2] Finally, the License Agreement includes a forum-selection clause:

> The parties agree that any action for relief based in whole or in part on this Agreement (or the breach thereof) or otherwise relating in whole or in part to this Agreement shall be filed in . . . the Federal and State Courts closest to . . . the place of business of 3D Systems, Inc. in Valencia (Los Angeles County), California . . . .

(Ex. 5, § 8.6.)[3]

### C.  EOS's Commencement of the California Action

On December 14, 2000, EOS filed a complaint for patent infringement in the United States District Court for the Central District of California against DTM, thus commencing the California Action. 3D Systems was ordered to be joined as an involuntary plaintiff because it

---

[2] That clause states that EOS "expressly agrees not to assert against LICENSOR [3D Systems], or vendees or customers, mediate or immediate, of LICENSOR [3D Systems], any claims for infringement based on the manufacture, use, sale or offer for sale of any apparatus made or sold by LICENSOR [3D Systems] under the Licensed Patents, at any time, for any reason, during the term of this License Agreement." (Ex. 5, § 2.1(a).)

[3] The License Agreement was entered into pursuant to the Settlement Agreement, which expressly provides that EOS and 3D Systems "will enter into a separate license agreement . . . ." (Ex. 4, art. 5.) The Settlement Agreement also makes clear that, to the extent there are any inconsistencies between the License Agreement and the Settlement Agreement concerning EOS's license rights, the terms of the License Agreement control. (*Id.*)

was the owner of the licensed stereolithography patents and, under the terms of the License Agreement, was found to be a necessary party. On August 31, 2001, 3D Systems and DTM merged, with 3D Systems as the surviving corporation. As a result, the parties were ordered re-aligned, with 3D Systems named as a defendant.

### D. The California Court's First Rejection of the Claims

EOS first tried to litigate the Claims in November 2001, when it sought leave to include the Claims in an amended complaint in the California Action. (Ex. 6 [Proposed Fourth Amended Complaint].) The California court denied EOS's motion in February 2002, finding as a matter of law that the Claims were "futile" and "without merit." (Ex. 7 [Feb. 6, 2002 Order].) In a detailed ruling, the court explained that the Claims were all premised on EOS's contention that it had a right under the License Agreement to exclude 3D Systems from practicing in the field of laser sintering. (*Id.* at 10.) EOS's premise was flatly rejected: "[T]he license agreement does not prevent 3D from practicing in the art [of laser sintering]. *Ipso facto*, there was no promise in the agreement by 3D to not practice in the art." (*Id.* at 10-11.)

### E. The California Court's Second Rejection of the Claims

Undeterred, EOS tried for a second time to assert the Claims in the California Action, this time under the guise of "counter-counterclaims" (which EOS did not need to seek leave of court to file). (Ex. 8 [EOS's Counter-Counterclaims].) The California court rejected the Claims a second time and, at 3D Systems' request, struck the pleading containing the Claims, stressing the finality of its prior order:

> The Court [in rejecting the Claims the first time] stated 'EOS's proposed claims are futile.' Thus, it is clear that the Court's decision was based on an issue of law, namely that the proposed claims failed to present a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Because the allegations in the counterclaim are identical, they too fail to state a claim upon which relief may be granted.

(Ex. 9 [Mar. 18, 2002 Order] at 5.)

### F. EOS's Third Attempt to Bring the Claims

This action was not filed until February 26, 2003, well after EOS attempted to assert the Claims in the California Action. After losing twice in the California Action, EOS now tries to allege the Claims here (*i.e.*, Counts I through IV of EOS's First Amended Counterclaims). (Ex. 10.) The Claims are a mere "cut and paste" of the same pleadings rejected by the California court, with only very minor changes in language.

## III. THIS COURT SHOULD SEVER THE CLAIMS AND TRANSFER THEM TO THE CALIFORNIA COURT

### A. Under the First-Filed Doctrine, the California Court Should Adjudicate the Claims.

The first-filed rule provides that where there are two federal cases involving the same issues and parties, the court with the first-filed action should decide the controversy. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947 (5th Cir. 1997) ("the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) ("In the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case . . . ."). The proper course of action is for the district court in the second-filed action to transfer the case to the first-filed court. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). It is improper to deny a motion to transfer where the parties and issues are substantially the same in first and second-filed cases. *See Save Power Ltd.*, 121 F.3d at 949-50. This rule is based on fundamental principles of judicial economy and comity. *Id.* at 950. It

serves "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.*[4]

Where less than all of the claims asserted in the second-filed action are substantially similar to those alleged in the first-filed action, the district court in the second-filed action should sever the substantially similar claims under Rule 21 of the Federal Rules of Civil Procedure and transfer the severed claims to the first-filed court. Fed. R. Civ. P. 21 ("any claim against a party may be severed and proceeded with separately.");[5] *see, e.g., Toro Co. v. Alsop*, 565 F.2d 998 (8th Cir.), *cert. denied*, 435 U.S. 952 (1977). In *Toro*, for example, a lawn equipment manufacturer sued one of its competitors in Kansas for patent infringement. Two years later, the competitor brought an action against the manufacturer in Minnesota for alleged antitrust violations which included a single count for declaratory relief of the invalidity of the patents involved in the Kansas action. On the manufacturer's motion, the district court severed the patent invalidity claim from the Minnesota action and transferred that claim to the Kansas court. The district court found that transfer of the claim would conserve judicial resources, promote judicial administration, and possibly result in a speedier trial on the claim in Kansas. *Id.* at 999-1000. On appeal, the Eighth Circuit noted that the district court's decision would be reversed only on a showing of "manifest judicial arbitrariness," and summarily upheld the severance and transfer of the claim under Rule 21. *Id.* at 1000-01.

Here, the Claims are more than "substantially similar" to those EOS sought to bring in the first-filed California Action. They are almost a verbatim copy of them. (*Compare* Exs. 6, 8 & 10.) Accordingly, the Court should sever the Claims from this action and transfer them to the

---

[4] Federal district courts are required to take care to avoid interference with each other's affairs. *West Gulf Maritime Assoc. v. ILA Deep Sea Local* 24, 751 F.2d 721, 728 (5th Cir. 1985).

[5] District courts have broad discretion under Rule 21 to sever claims. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).

California Action under the first-filed rule.[6] *See, e.g., Transmirra Prod. Corp. v. Monsanto Chem. Co.*, 27 F.R.D. 482, 483 (S.D.N.Y. 1961) (severing a counterclaim in a later-filed action that was, with minor exceptions, "an exact copy of" claims alleged in an earlier action, and observing that "if the motion to sever is not granted, the very same issues will be litigated in two separate trials involving the same defendant.") It would be an unnecessary waste of judicial resources for this Court to decide these same issues yet again, especially in light of the California court's two prior rulings that the Claims lack merit as a matter of law. It would also create a risk of conflicting rulings and duplicative appellate review, and would unfairly subject 3D Systems to the further cost of defending against the Claims (beyond this necessary response). The first-filed rule prevents EOS from imposing those burdens on this Court and 3D Systems.

### B. The Claims are Governed By a Mandatory Forum-Selection Clause Designating California as the Only Proper Forum.

Forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) ("[E]nforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers the vital interests of the justice system.") (Kennedy, J., concurring). The Fifth Circuit has recognized that the burden of proving unreasonableness of a forum-selection clause "is a heavy one and is carried *only* by a showing that the clause results from fraud or overreaching, that it violates strong public policy, or that enforcement of the clause deprives plaintiff of his day in court." *Afram Carriers v. Moeykens*,

---

[6] The fact that EOS and 3D Systems are not the only parties to the two actions is irrelevant. *Save Power Ltd.*, 121 F.3d at 951 (complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action); *Nelson v. Grooms*, 307 F.2d 76, 78-79 (5th Cir. 1962).

145 F.3d 298, 301 (5th Cir. 1998) (citing *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (emphasis added).)

When a litigant, like EOS here, brings claims in a forum other than the one designated in a forum-selection clause, a court should — absent extraordinary circumstances — transfer the claims to the designated forum. 28 U.S.C. § 1404(a). Section 1404(a) gives district courts broad discretion to transfer actions in the interest of justice and for the convenience of parties and witnesses. *Id.* The exercise of that discretion is almost always appropriate where the parties have agreed to a forum-selection clause. Indeed, "the very existence of the [forum-selection] clause places upon the court a duty to enforce the parties' contractual obligations under the 'interests in justice'." *Arctic Equip. of Tex., Inc. v. IMI Cornelius, Inc.*, 2001 U.S. Dist. Lexis 2674, at *6 (N.D. Tex. 2001). As the Eleventh Circuit has observed, "[t]he venue mandated by a choice of forum clause rarely will be outweighed by other [Section] 1404(a) factors." *In re Ricoh Corp.*, 870 F. 2d 570, 573 (11th Cir. 1989) (recognized by *The Shaw Group, Inc. v. Natkin & Co.*, 907 F. Supp. 201, 205 (M.D. La. 1999).)

Here, EOS's obligation to litigate the Claims in California is clear. The License Agreement designates the "Federal and State Courts" closest to Valencia, California as the proper forum for any action based in whole or in part on an alleged breach of the License Agreement. Each of the Claims is predicated on an alleged breach of the License Agreement, and thus should be (and, indeed, have been) litigated in California. There is nothing unreasonable about enforcing the forum-selection clause here. EOS cannot contend in good faith that there was fraud or overreaching involved. The forum-selection clause in the License Agreement was negotiated by EOS and 3D Systems. EOS was represented by counsel throughout the negotiations and was able to protect its own interests. Also, far from "violat[ing] strong public policy," enforcement of the clause would "protect [3D Systems'] legitimate

expectations and further[ ] the vital interests of the justice system." *Stewart Org.*, 489 U.S. at 33 (Kennedy, J., concurring). Finally, a transfer to California obviously will not deprive EOS of its day in court because EOS *already* has had its day in court in its agreed forum — twice. If EOS is unhappy with the outcome in the California forum, it can pursue appropriate appellate remedies, but cannot seek redress in a new forum in violation of its contractual obligations.[7] The Court should enforce the forum-selection clause in the License Agreement by severing the Claims from this action and transferring them to the California Action.

## IV. CONCLUSION

For each of the reasons set forth above, 3D Systems respectfully requests that the Court sever the Claims from this action and transfer them to the California Action. 3D Systems expressly reserves the right to seek its attorney's fees and costs associated with this Motion pursuant to 28 U.S.C. § 1927.

### CERTIFICATE OF CONFERENCE

The parties have conferred and defendant opposes this Motion.

---

[7] All of the factors under 28 U.S.C. § 1404(a) — interest of justice, convenience of parties, and convenience of witnesses — favor transfer of the Claims. The interests of justice, as explained above, require EOS to litigate the Claims in the forum it agreed to in the License Agreement. As for the convenience of witnesses and the parties, the California court already has ruled that the Claims fail as a matter of law, so witness testimony on the Claims will not be required, but certainly it would not be convenient for 3D Systems to litigate again in this case the Claims that already have been rejected twice in the California Action. Plainly, EOS's decision to reassert the Claims here has nothing to do with anyone's convenience, but instead is based upon its losses in California and its apparent intent to unnecessarily multiply these proceedings.

Dated: November 20, 2003

*Philip E. Cook, by permission* *Elizabeth J. Brown Fore*
PHILIP E. COOK (admitted *pro hac vice*)
Calif. State Bar No. 149067
ROBERT W. DICKERSON (admitted *pro hac vice*)
Calif. State Bar No. 89367
JONES DAY
555 West Fifth Street, Suite 4600
Los Angeles, CA 90013-1025
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

ALAN D ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
GRAY, CARY, WARE & FREIDENRICH LLP
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-6875
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

Attorneys for Plaintiffs
BOARD OF REGENTS, THE
UNIVERSITY OF TEXAS SYSTEM,
and 3D SYSTEMS, INC.

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document was served in the following manner to the following counsel of record on this 20th day of November, 2003.

Thomas H. Watkins  
Albert A. Carrion, Jr.  
HILGERS & WATKINS P.C.  
98 San Jacinto Boulevard  
San Jacinto Center, Suite 1300  
Austin, Texas 78701  
(512)476-4716  
(512) 476-5139 Facsimile  

*Via Certified Mail*

Michael H. Baniak  
Michael D. Gannon  
BANIAK PIKE & GANNON  
150 N. Wacker Drive, Suite 1200  
Chicago, Illinois 60606  
(312) 673-0360  
(312) 673-0361 Facsimile  

*Via Federal Express and Electronic Mail*

Attorneys for Defendant  
EOS GMBH ELECTRO OPTICAL SYSTEMS

*Elizabeth Brown Fore* (signature)  
ELIZABETH J. BROWN FORE

Gray Cary\AU\4116529.1  
2502557-1