ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

DEC 4 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc., | § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | Civil Action No. A03 CA 113SS |
| EOS GmbH Electro Optical Systems, | § § | |
| Defendant. | § | |

**REPLY IN SUPPORT OF MOTION OF PLAINTIFFS BOARD OF REGENTS, UNIVERSITY OF TEXAS SYSTEM AND 3D SYSTEMS, INC. TO COMPEL DEFENDANT'S DEPOSITION AND PRODUCTION OF DOCUMENTS**

Plaintiffs Board of Regents, University of Texas System ("UT") and 3D Systems, Inc.

("3D Systems") respectfully file this Reply in support of their Motion to Compel Deposition and

Production of Documents Requested from Defendant EOS GmbH Electro Optical Systems

("EOS") in anticipation of the hearing on this Motion set for December 10, 2003.

## TABLE OF CONTENTS

I.  DEFENDANT'S DEPOSITION SHOULD BE ORDERED AS REQUESTED. .................... 1

II. DEFENDANT SHOULD BE ORDERED TO PRODUCE DOCUMENTS
    AS REQUESTED ................................................................................................................ 3

    A.  The Court Should Order EOS to Produce All Responsive Documents No Later
        Than December 15. ................................................................................................ 4

    B.  The Court Should Order EOS to Produce *Only* Responsive Documents. ........................ 6

    C.  The Court Should Order Defendant to Specify By Production Number the
        Documents It Relies Upon In Response to Plaintiffs' Interrogatories and Its Rule 26
        Initial Disclosures. ................................................................................................ 9

    D.  It Would Not Be an Undue Burden for Defendant to Avoid Copying Documents
        Already Produced to 3D Systems In California. ................................................ 10

III. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

## STATUTES

35 U.S.C. § 102 ................................................................................................................4

35 U.S.C. § 103 ................................................................................................................4

35 U.S.C. § 112 ................................................................................................................4

Federal Rule of Civil Procedure 33 ................................................................................9

Federal Rule of Civil Procedure 34 .............................................................................4, 5

Gray Cary\AU\4118622.1
2502557-1

# I.
## DEFENDANT'S DEPOSITION SHOULD BE ORDERED AS REQUESTED.

The thrust of Defendant's Opposition is that, because Defendant has finally agreed to provide a Rule 30(b)(6) witness to testify at a deposition on December 17, 2003 in Munich, Germany, Plaintiffs' Motion to Compel the Rule 30(b)(6) deposition was premature and is now moot. Defendant ignores, however, that the Motion was filed because (i) tight deadlines for expert disclosures were facing Plaintiffs at the time, (ii) Defendant failed to timely respond to Plaintiffs' request for its position on the deposition (Cook Decl., ¶¶ 26-27), and (iii) Defendant had rebuffed every one of Plaintiffs' prior attempts to obtain discovery.

Moreover, although a date for the deposition has now been set, the relief sought in Plaintiffs' Motion remains at issue. Defendant omitted in its Opposition that it has *not* agreed to "produce a Rule 30(b)(6) designee(s) to testify on each of the categories specified in Plaintiffs' November 1[3], 2003 Deposition Notice." (Motion at 9-10.)

First, Defendant has refused to provide a designee to testify on Deposition Topics 10 and 11 on the grounds that they are irrelevant.[1] These topics concern EOS's knowledge of disparaging statements about 3D Systems posted anonymously to the Yahoo! internet bulletin board by EOS's Italian regional manager (*i.e.*, Topic 9), as well as other EOS communications to 3D Systems' suppliers, creditors, and investors that — if made by EOS — would appear to have been designed to improperly interfere with 3D Systems' business. This evidence is directly relevant to 3D Systems' affirmative defense of unclean hands (asserted in response to Defendant's counterclaims).

---

[1] *Compare* Cook Decl., Ex. Y [Deposition Notice], p.5 *with* Pratt Decl., Ex. 5 [EOS Objections], p.3. Citations to the "Cook Decl." refer to the evidence submitted with and in

<u>Second</u>, Defendant has objected to providing a designee to testify about certain portions of Deposition Topics 14 and 16, and specifically that portion that requires Defendant to provide a witness to explain how conduct alleged to be exclusionary in Defendant's antitrust counterclaim has ***affected Defendant***, on the grounds that it is premature.[2] Even assuming Defendant's alleged injury is "continuing and ongoing," Plaintiffs are entitled to discover the factual basis for Defendant's allegations of misconduct and resulting antitrust injury to itself.

<u>Third</u>, Defendant's Opposition claims that allowing Plaintiffs to record the requested inspection would provide discovery Plaintiffs never asked for. (EOS Opp. at 3.) However, the Deposition Notice expressly states that the deposition will be recorded "by stenographic and/or videographic means." (Cook Decl., Ex. Y.) Plaintiffs have also reasonably requested that if desired by Plaintiffs, an expert be permitted to view the inspection. Despite this, Defendant's Opposition shows that it seeks to preclude Plaintiffs from videotaping their inspection of Defendant's accused infringing product(s) and to keep any expert witnesses from attending the inspection. (EOS Opp. at 3.)

Defendant's attempt to prevent Plaintiffs' "infringement" expert witness from having access to these critical facts is baseless. It is also entirely inconsistent with Defendant's demand just last month to record its inspection of a UT laser sintering prototype machine known as "Bambi." (Supp. Cook Decl., ¶ 6.) Perhaps a precursor to its position here, Defendant refused Plaintiffs' request for a reciprocal agreement at the time of that inspection, but did acknowledge that a request to record an inspection would be proper:

---

support of Plaintiffs' Motion. Citations to the "Supp. Cook Decl." refer to the evidence submitted with this Reply.

[2] *Compare* Cook Decl., Ex. Y [Deposition Notice], p.6 *with* Pratt Decl., Ex. 5 [EOS Objections], p.4.

> We do not believe that EOS must agree "to a reciprocal condition for any machine inspections we may conduct from EOS in this case" as Phil requested, as a condition for the inspection we have requested of Bambi. We will consider any such request when it is made, but we do not see the need to agree to a blanket, hypothetical request without knowing the context in which 3D intends it. ***We are entitled to record this inspection, and would expect that you would be able to do so under similar circumstances, but we are not presented with those circumstances at this time.***

(*Id.* & Ex. A; emphasis added.) Defendant was correct: it was entitled to record the inspection. And Plaintiffs are now entitled to make a similar recording of their inspection. Defendant's refusal is entirely inconsistent with its prior statement that Plaintiffs would be able to do so. It is hardly a coincidence that Defendant's prospective grant of permission for Plaintiffs to record their inspections has been withdrawn now that Defendant has completed and recorded its inspection of "Bambi."

## II.
## DEFENDANT SHOULD BE ORDERED TO PRODUCE DOCUMENTS AS REQUESTED

Plaintiffs' Motion asks the Court to order Defendant to produce all responsive documents (and only responsive documents) to Plaintiffs no later than December 15, 2003. Defendant's claim that delay is due solely to Plaintiffs' "dilly-dall[ying]" (EOS Opp. at 2) is, quite simply, belied by the record.[3] Defendant's claim that Plaintiffs should have engaged in further meet and confer before filing this Motion (*id.*) is equally specious. As shown below, Plaintiffs' Motion should be granted.

---

[3] Defendant's attempt to establish that Plaintiffs similarly frustrated discovery by objecting to 9 depositions that Defendant requested in September 2003 tells only part of the story. (EOS Opp. at 4.) Despite its initial objections, Plaintiffs made contact with all of the identified witnesses and began arranging to have each of them available for deposition as noticed. Defendant then unilaterally cancelled ***every one of the depositions*** under the guise that documents needed to be produced first. (Supp. Cook Decl., ¶ 7.)

## A.    The Court Should Order EOS to Produce All Responsive Documents No Later Than December 15.

Defendant's delay is beyond dispute. Even while this Motion has been pending, it still has produced only about 2,000 pages of documents (*i.e.*, not a single page in the interim), a mere fraction of the 400,000 pages of documents that Defendant claims would be produced pursuant to Plaintiffs' October 22, 2003 request. And it is beyond dispute that Defendant's delay is inexcusable.

Defendant's attempt to compare its production of documents to Plaintiffs' production, apparently as some sort of justification for its conduct here, is both factually incorrect and legally irrelevant. (*See* EOS Opp. at 4-5.) The inspections were conducted by Defendant because it asked to review documents before having them copied, which Plaintiffs accommodated. (Supp. Cook Decl., ¶ 9.) The dates that Defendant's counsel specified for their review, on a few days notice, was also accommodated. (*Id.*, ¶ 9.) All of the documents Defendant's counsel identified for copying have been delivered, together with privilege log for documents withheld from production. (*Id.*, ¶ 9.) Finally, Defendant has not raised any issues with Plaintiffs concerning their compliance, let alone filed a motion to compel any deficiencies. (*Id.*, ¶ 10.)

In contrast, Defendant has, for instance, failed to produce even those documents its counsel necessarily relied on when preparing and filing its counterclaims months ago. In Count VII of its initial Counterclaims (filed March 25, 2003) and its Amended Counterclaims (filed July 17, 2003), Defendant alleges that the patents-in-suit are invalid under 35 U.S.C. §§ 102, 103 and/or 112. Yet in its September 16, 2003 Response to Interrogatory No. 9 (Ex. C, p.9), Defendant *refused to identify any prior art*, claiming "it has not completed its investigation regarding prior art relevant to the patents in suit." Similarly, Defendant has not yet produced any documents in response to Request No. 10 seeking "any prior art EOS intends to use in this action

to establish the invalidity of the patents-in-suit." (Ex. B, p.7.) The suggestion that these documents are in Germany and "most are in daily use" as a basis for their unavailability (EOS Opp. at 5) strains credibility,[4] and demonstrates the extent to which Defendant is willing to go to obstruct proper discovery and Plaintiffs' trial preparation in this case.

Defendant's Opposition mistakenly claims that the Motion seeks to prohibit Defendant from producing documents "as they are kept in the ordinary course of business." FED. R. CIV. P. 34(b); EOS Opp. at 7. Not true. The Opposition shows, however, that Defendant is improperly attempting to use its right under Rule 34(b) to gather as many documents as it can and dump them, all at once, on Plaintiffs' doorstep. Because Plaintiffs expect that most of those will be German-language documents, Defendant's strategy seems to be to temporarily withhold and then mix together documents that are most likely maintained in separate files (like prior art, for instance, which Defendant's counsel must have had in its possession since September 16, 2003). It would impose an unreasonable burden on Plaintiffs to have to first segregate, and then review, analyze and, to the extent required, translate Defendant's documents. What Plaintiffs seek by their Motion is simply to compel the Defendant to product those documents that have already been segregated by Defendant in the ordinary course of business and to produce them in that manner — as separate files that are labeled as such.

In sum, Defendant should be ordered to produce its documents by December 15, 2003, and in a manner that preserves and identifies any segregation of files that exist as a result of the way Defendant keeps them "in the ordinary course of business."

---

[4] Indeed, the notion that all of the documents would have been available for Plaintiffs' physical inspection during a period of days but for some reason cannot be collected for copying the same way is inconceivable.

**B.    The Court Should Order EOS to Produce *Only* Responsive Documents.**

Defendant's Opposition does not address Plaintiffs' concerns, expressed in its Motion,

that (i) of the 22,000 pages Defendant identified from its California production in a November 12

letter (Ex. F), many appear to have little to do with this case; or (ii) that during an October 15

telephone call, Defendant's counsel indicated that the documents that would be provided for

inspection in Germany were the "same documents" as those provided for inspection in

connection with the parties' California litigation.  (Motion at 2 n.3; *id.* at 3-4 & Cook Decl.,

¶ 11.)  As the Motion explained,

> [t]he sheer volume of EOS's document production is suspect, as is
> EOS's representation that it consists of the same documents
> produced for inspection in the California litigation.  3D Systems'
> document requests ask only for documents relevant to the issues in
> this case, and the California litigation involves a number of
> distinct, separate issues.  The inference that is easily drawn is that
> EOS is simply attempting to overwhelm Plaintiffs with wholly
> irrelevant documents that, because they will be primarily in the
> German language, will be expensive and time-consuming to
> review.  (Motion at 5 n.6.)

Defendant's silence on this issue in its Opposition is telling, and its conclusory claim that any

overlap between its production in the California case and its production here is due to the breadth

of Plaintiffs' document requests (EOS Opp. at 8-9) fails to withstand scrutiny.  In fact, the two

cases are very different, and Plaintiffs' document requests here are tailored specifically to the

issues unique to this case.

First, the patents that were at issue in the California litigation at the time of the June 2002

inspection of Defendant's documents (U.S. Patent Nos. 5,990,268 (the "'268 patent") and

6,136,948 (the "'948 patent")) disclose a laser sintering powder with certain characteristics.  The

products EOS sells or offers for sale in the United States that were accused of infringing the '268

and '948 patents are ***nylon laser sintering powders.***  (Supp. Cook Decl., ¶ 2.)  In contrast, the

Gray Cary\AU\4118622.1
2502557-1

products EOS sells or offers for sale in the United States that are accused of infringing the patents-in-suit here (*i.e.*, U.S. Patent Nos. 5,597,589 and 5,639,070) are *laser sintering machines:* the EOSint P380 and the EOSint P700. (*Id.*, ¶ 3.)[5]

Second, every one of Plaintiffs' document requests, especially when considered with Defendant's limited responses (*i.e.*, Ex. B), show that there is very little overlap between the documents sought by Plaintiffs here and those relevant to the California litigation:

    a.    Documents expressly related *only* to accused laser sintering machines are sought by Request Nos. 1 (representative documents showing the machines), 2 (communications with US customers and prospects about the machines), 3 (design of the machines), 4 (advertising literature for the machines), 5 (training literature for the machines), 6 (US demonstrations of the machines), 7 (parties importing the machines), 8 (parties distributing or selling the machines), 12 (accounting records for machines), 13 (sales records for the machines), 20 (machine competitor literature or analysis), and 26 (manuals for the machines).

    b.    Documents expressly related *only* to the two patents-in-suit in this case are sought by Request Nos. 9 (Defendant's knowledge of the patents-in-suit), 10 (prior art Defendant intends to rely on to establish invalidity of the patents-in-suit), 18 (searches relating to the patents-in-suit), 23 (patents-in-suit or their inventor), 24 (Defendant's indemnification of infringement of the patents-in-suit), and 25 (third party's indemnity of Defendant for infringement of the patents-in-suit).

---

[5] In addition, the '589 and '070 patents have completely different inventorship and ownership than the patents that are at issue in the California litigation. (Supp. Cook Decl., ¶ 3.)

Gray Cary\AU\4118622 1
2502557-1

    c.      In addition to Defendant's general objection to limit all of its responses to its P-series machines (Ex. B, ¶ 7, pp.2-3), Defendant also expressly and similarly limited its response to Request No. 16 (patents or other intellectual property rights for laser sintering).

    d.      Defendant has indicated it will not be producing any documents in response to Request Nos. 14 (disclosures to interested parties about laser sintering machines), 21 (infringement of the patents-in-suit by third parties), and 22 (documents identified in interrogatory responses).[6]

(Supp. Cook Decl., ¶ 4 & Ex. B.) At bottom, the only documents that might have some overlap with issues raised in the California litigation are sought by the remaining categories of Plaintiffs' document request: Request Nos. 11 (Defendant's accounting methods), 15 (patent licenses for laser sintering machines); and 17 (Defendant's document retention policies). (*Id.*) Documents responsive to these requests alone do not explain Defendant's stated intent to produce the same documents here that it did in connection with the California case.

    In short, because of the burden that Defendant apparently intends to impose on Plaintiffs by producing a substantial quantity of irrelevant documents, and the manifest error of Defendant's claim that "Plaintiffs apparently made no attempt to draft their documents [sic]

---

[6] Plaintiffs do not intend by their Motion to waive any further challenge to Defendant's written responses, including Defendant's refusal to produce documents in response to Request Nos. 14, 21, or 22. For instance, many of Defendant's statements of compliance merely indicate that "representative documents will be provided," or that "responsive, non-privileged documents will be provided" without indicating that all responsive documents are going to be produced. (*E.g.*, EOS Response to Request Nos. 9, 10.) Although the volume of Defendant's anticipated production suggests that little if anything is being held back, Plaintiffs reserve the right to further move to compel documents or complete statements of compliance if Defendant's document production turns out to be merely a self-selected sample of only those documents Defendant unilaterally decides it wants to disclose.

8

requests in this case in a manner that avoids duplication" (EOS Opp. at 8), Defendant should be ordered to produce *only* those documents responsive to Plaintiffs' discovery requests.

### C. The Court Should Order Defendant to Specify By Production Number the Documents It Relies Upon In Response to Plaintiffs' Interrogatories and Its Rule 26 Initial Disclosures.

Defendant's Opposition claims — without specifically identifying any documents — that "most" of those documents upon which Defendant relied when it invoked Federal Rule of Civil Procedure 33(d) to answer Plaintiffs' interrogatories "have been produced or are otherwise in Plaintiffs' possession." (EOS Opp. at 6, n.4.)[7] However, Rule 33(d) mandates that when a party relies on documents in lieu of providing interrogatory responses, it must specify responsive documents "in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." FED. R. CIV. P. 33(d). Defendant has yet to specify the documents purportedly in Plaintiffs' possession that answer Interrogatory Nos. 1, 2, 3 and 6.

Similarly, Defendant's Opposition indicates that Plaintiffs "have virtually all of EOS's Rule 26 disclosures." (EOS Opp. at 9.)[8] However, for paragraphs 5 and 10 of those disclosures (*i.e.* Pratt Decl., Ex. 1 at 3), which identify "[m]aterials pertinent to the structure and operation of the accused EOS products and methods" and "[d]ocuments relating to damages incurred by EOS as a result of Plaintiffs' unlawful activities," Plaintiffs are at a complete loss to identify which documents Defendant is referring to, whether produced in connection with the California litigation, otherwise in Plaintiffs' possession, or still to be produced here.

---

[7] According to Defendant, of the documents that Defendant relies upon when answering Plaintiffs' interrogatories under Rule 33(d), only "invoices for parts and updated marketing materials" have not been produced. (EOS Opp. at 10.)

[8] Defendant claims that the only Rule 26 disclosure documents that have yet to be produced are "supplemental financial documents." (*Id.* at 9-10.)

Gray Cary\AU\4118622 1
2502557-1

Again, Defendant's tactic of waiting until it has a complete set of documents collected and ready for delivery before it provides this required information is improper, and prompt identification of these documents by production number should be ordered.

> **D.    It Would Not Be an Undue Burden for Defendant to Avoid Copying Documents Already Produced to 3D Systems In California.**

Defendant's Opposition claims that by identifying approximately 23,000 pages of documents it produced in the California litigation that it deems produced here, Plaintiffs have already obtained the relief they seek in their Motion, and it is, "to that extent, moot." (EOS Opp. at 8.) The Opposition also claims it would be an undue burden to force Defendant to conduct a page-by-page comparison of documents it is producing here to avoid any overlap. (*Id.* at 7-8.) First, as shown above, there is little overlap between the documents relevant to the California litigation and those requested here. Second, based upon information Defendant provided about its document production in the California litigation, Defendant certainly has prepared an inventory or index of the documents that were produced there. (Supp. Cook Decl., ¶ 5.) Third, Defendant necessarily should have identified and collected documents because they were responsive to the document requests and interrogatories propounded here, and thus knows both their source and the reason they were being identified for production. That information can be compared to the information Defendant has about the records it produced for inspection in the California case and duplicates simply avoided.

> # III.
> # CONCLUSION

Seeking to shift the blame for Defendant's intransigence, the Opposition ignores the record and claims that Plaintiffs are responsible for Defendant's failure to timely or completely comply with proper discovery requests. For the reasons stated in the Motion and those explained

above, Plaintiffs ask the Court to order Defendant: (1) to produce all responsive documents (and

only responsive documents) to Plaintiffs' counsel's office in Los Angeles no later than

December 15, 2003; (2) not to re-copy and produce documents already provided in the California

litigation, but instead to identify by production number those documents upon which EOS relies

in this case; and (3) to appear for its initial Rule 30(b)(6) deposition on December 17, 2003 and

provide testimony on all of the subjects as noticed.


Dated:  December 4, 2003                     Respectfully submitted,



*Philip E. Cook, by permission Elizabeth J. Brown Fore*

PHILIP E. COOK (admitted *pro hac vice*)
Calif. State Bar No. 149067
ROBERT W. DICKERSON (admitted *pro hac vice*)
Calif. State Bar No. 89367
JONES DAY
555 West Fifth Street, Suite 4600
Los Angeles, CA  90013-1025
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

ALAN D ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
GRAY, CARY, WARE & FREIDENRICH LLP
1221 South MoPac Expressway, Suite 400
Austin, TX  78746-6875
Telephone:  (512) 457-7000
Facsimile:  (512) 457-7001

Attorneys for Plaintiffs
BOARD OF REGENTS, THE
UNIVERSITY OF TEXAS SYSTEM,
and 3D SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was sent to the following counsel of record on this 4th day of December, 2003 in the following manner:

Thomas H. Watkins                    *Via United States Mail*
Albert A. Carrion, Jr.
BROWN MCCARROLL LLP
98 San Jacinto Boulevard
San Jacinto Center, Suite 1300
Austin, Texas 78701
(512)476-4716
(512) 476-5139 Facsimile

Michael H. Baniak                    *Via Overnight Delivery*
Michael D. Gannon
Andrew F. Pratt
BANIAK PINE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 Facsimile

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

ELIZABETH J. BROWN FORE

Gray Cary\AU\4118622 1
2502557-1