

ORIGINAL
FILED
DEC 4 2003
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. A03 CA 113 SS |
| EOS GmbH Electro Optical Systems, | § § | |
| Defendant. | § § | |

## SUPPLEMENTAL DECLARATION OF PHILIP E. COOK IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEPOSITION AND DOCUMENT PRODUCTION

I, Philip E. Cook, declare that:

1. I am a partner with the law firm of Jones Day, admitted *pro hac vice* and counsel of record for plaintiffs Board of Regents, The University of Texas System ("UT"), and 3D Systems, Inc ("3D Systems") in this action. I have personal knowledge of the facts stated herein and if called as a witness, could and would competently testify hereto.

2. In its Opposition to Plaintiffs' Motion to Compel, Defendant contends that the document requests propounded by Plaintiffs are broad and cover materials produced to 3D Systems in the California patent infringement litigation with Defendant. However, the patents that have been at issue in the California litigation (U.S. Patent Nos. 5,990,268 (the "'268 patent") and 6,136,948 (the "'948 patent")) disclose a laser sintering powder with certain characteristics. The products EOS sells or offers for sale in the United States that have been accused of infringing the '268 and '948 patents are ***nylon laser sintering powders.***

LAI-2076561v1
Gray Cary\AU\4118620 1
2502557-1

126

3.   In contrast, the products EOS sells or offers for sale in the United States that are accused of infringing the patents-in-suit here (*i.e.*, U.S. Patent Nos. 5,597,589 and 5,639,070) are **laser sintering machines:** the EOSint P380 and the EOSint P700. The '589 and '070 patents have completely different inventorship and ownership than the patents that are at issue in the California litigation.

4.   Each of Plaintiffs' document requests themselves, together with EOS's limited responses (November 21, 2003 Cook Decl., Ex. B, filed in support of Plaintiffs' Motion to Compel), show that there is very little overlap between the documents sought by Plaintiffs here and those relevant to the California litigation:

   a.   Documents expressly related *only* to accused laser sintering machines are sought by Request Nos. 1 (representative documents showing the machines), 2 (communications with US customers and prospects about the machines), 3 (design of the machines), 4 (advertising literature for the machines), 5 (training literature for the machines), 6 (US demonstrations of the machines), 7 (parties importing the machines), 8 (parties distributing or selling the machines), 12 (accounting records for machines), 13 (sales records for the machines), 20 (machine competitor literature or analysis), and 26 (manuals for the machines).

   b.   Documents expressly related *only* to the two patents-in-suit in this case are sought by Request Nos. 9 (Defendant's knowledge of the patents-in-suit), 10 (prior art Defendant intends to rely on to establish invalidity of the patents-in-suit), 18 (searches relating to the patents-in-suit), 23 (patents-in-suit or their inventor), 24 (Defendant's indemnification of infringement of the patents-in-suit), and 25 (third party's indemnity of Defendant for infringement of the patents-in-suit).

c. In addition to Defendant's general objection to limit all of its responses to its P-series machines (Ex. B, ¶ 7, pp.2-3), Defendant has also expressly limited its response to Request No. 16 (patents or other intellectual property rights for laser sintering) the same way.

d. Defendant has indicated it will not be producing any documents in response to Request Nos. 14 (disclosures to interested parties about laser sintering machines), 21 (infringement of the patents-in-suit by third parties), and 22 (documents identified in interrogatory responses).

e. The only documents that might have some overlap with issues raised in the California litigation are sought by Request Nos. 11 (Defendant's accounting methods), 15 (patent licenses for laser sintering machines); and 17 (Defendant's document retention policies).

5. When Defendant produced documents for 3D Systems' inspection in June 2002 in connection with the California litigation, the documents were produced in numbered boxes. After copies of the documents were provided to 3D Systems several months later, Defendant's counsel was able to identify various materials by production number *and box number* with specificity. Based on the type of information provided by Defendant, I believe some sort of index or inventory of the documents produced by Defendant in June 2002 must have been created by its counsel and used to provide this information.

6. On November 13, 2003, despite initially objecting to Defendant's request for an inspection, UT agreed to permit Defendant to inspect a UT laser sintering prototype known as "Bambi." Plaintiffs also agreed that Defendant could record that inspection videographically or

Gray Cary\AU\4118620 1
2502557-1
LAI-2076561v1

- 3 -

photographically, and asked for a reciprocal agreement. Defendant refused. Instead, in a November 20, 2003 email, Defendant's counsel Charles Kinne wrote as follows:

> We do not believe that EOS must agree "to a reciprocal condition for any machine inspections we may conduct from EOS in this case" as Phil requested, as a condition for the inspection we have requested of Bambi. We will consider any such request when it is made, but we do not see the need to agree to a blanket, hypothetical request without knowing the context in which 3D intends it. We are entitled to record this inspection, and would expect that you would be able to do so under similar circumstances, but we are not presented with those circumstances at this time.

A true copy of Mr. Kinne's November 20, 2003 email is attached as Exhibit A.

7.  In response to Defendant's request in August 2002 to take 9 separate depositions, Plaintiffs initially objected to the timing of the discovery, but nevertheless diligently made contact with each of the identified witnesses and began making arrangements to have them available for deposition as noticed. Defendant chose not to take any of those depositions and cancelled every one of them, most under the guise that documents needed to be produced first. For witness Rodney Anderson, however, Plaintiffs had already produced all of his files and had scheduled a date for his deposition when Defendant took that deposition off calendar, too.

8.  Defendant has inspected over 255,000 pages produced by Plaintiffs, from over 982,500 pages that have been made available for Defendant's inspection. Where documents were produced that had previously been produced in connection with the California litigation, they were produced with a production or Bates number so that Defendant's counsel could immediately determine that it had already seen those documents.

9.  Defendant's counsel did not want all of the documents copied, but asked instead to review documents first, which Plaintiffs accommodated. Defendant's counsel asked on October 6, 2003 if it could be permitted to review Plaintiff's document productions on

October 8-11, 2003, which was also accommodated. To date, all of the documents Defendant's counsel specified for copying, totaling 143,974 pages, have been delivered to Defendant's counsel. Additionally, privilege logs listing 1,101 separate documents withheld from Plaintiffs' production pursuant to privilege or work product claims have been generated by Plaintiffs and delivered to Defendant's counsel.

10.   As far as I am aware, Defendant has not raised any issues with Plaintiffs concerning their compliance with Defendant's document requests, and Defendant has not filed a motion to compel any deficiencies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of December, 2003, at Los Angeles, California.

*[signature]*

_____
Philip E. Cook

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document was sent via United States certified mail, return receipt requested to the following counsel of record on this 4th day of December, 2003 by the following means:

| | |
|---|---|
| Thomas H. Watkins<br>Albert A. Carrion, Jr.<br>BROWN MCCAROLL LLP<br>98 San Jacinto Boulevard<br>San Jacinto Center, Suite 1300<br>Austin, Texas 78701<br>(512)476-4716<br>(512) 476-5139 Facsimile | *By First Class U.S. Mail* |
| Michael H. Baniak<br>Michael D. Gannon<br>Andrew F. Pratt<br>BANIAK PINE & GANNON<br>150 N. Wacker Drive, Suite 1200<br>Chicago, Illinois 60606<br>(312) 673-0360<br>(312) 673-0361 Facsimile | *By Overnight Delivery* |

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

                                                    */s/ Elizabeth J. Brown Fore*
                                                       Elizabeth J. Brown Fore

## Brown Fore, Elizabeth

**From:** Charles Kinne [ckinne@bpglaw.com]
**Sent:** Thursday, November 20, 2003 11:05 AM
**To:** 'Robert W Dickerson'; 'Andrew F. Pratt'
**Cc:** Acarrion@mailbmc.com; 'Michael H. Baniak'; 'Brown Fore, Elizabeth'; 'Michael D. Gannon'; lwilliams@bpglaw.com; 'Philip Cook'; 'Todd R Miller'
**Subject:** RE: Bambi Inspection


Rob -

We do not believe that EOS must agree "to a reciprocal condition for any machine inspections we may conduct from EOS in this case" as Phil requested, as a condition for the inspection we have requested of Bambi. We will consider any such request when it is made, but we do not see the need to agree to a blanket, hypothetical request without knowing the context in which 3D intends it. We are entitled to record this inspection, and would expect that you would be able to do so under similar circumstances, but we are not presented with those circumstances at this time.

Please confirm to me and to Albert that the Bambi inspection can proceed. Thank you.


Charlie Kinne
Baniak Pine & Gannon
150 N. Wacker Dr.; Suite 1200
Chicago, IL  60606
ph  312.673.0358
fax 312.673.0361
ckinne@bpglaw.com

-----Original Message-----
From: Robert W Dickerson [mailto:rwdickerson@JonesDay.com]
Sent: Wednesday, November 19, 2003 12:53 PM
To: Andrew F. Pratt
Cc: Acarrion@mailbmc.com; 'Michael H. Baniak'; 'Charles Kinne'; 'Brown Fore, Elizabeth'; 'Michael D. Gannon'; lwilliams@bpglaw.com; 'Philip Cook'; 'Todd R Miller'
Subject: RE: Bambi Inspection


Andrew:  FYI:  I checked with the folks in Texas re an inspection tomorrow.
They can accomodate one before 1 pm; not after.

Robert W. Dickerson, Esq.
JONES DAY
555 West 5th Street, Suite 4600
Los Angeles, CA 90013-1025
213-489-3939 office
213-243-2407 direct dial
213-243-2539 fax
213-610-1676 cell
rwdickerson@jonesday.com




                    "Andrew F. Pratt"

                    <apratt@bpglaw.com>        To: "'Robert W Dickerson'" <rwdickerson@JonesDay.com>

1