IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc., | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. A03 CA 113 SS |
| EOS GmbH Electro Optical Systems, | § § § | |
| Defendant. | § | |

## EOS'S REPLY TO 3D'S SUPPLEMENTAL MARKMAN BRIEF

During the Markman Hearing on 24 November 2003, the Court granted EOS leave to submit a short reply to 3D's Supplemental Markman Brief. This Reply addresses two of 3D's erroneous statements of law. First, claims are to be construed to determine their meaning as of the date of invention (the application filing date), not the patent's issue date, and second, courts have the discretion to consider indefiniteness as a part of the Markman process, because indefiniteness is a question of claim construction reserved for the trial court. Finally, EOS corrects a gross mischaracterization of Dr. Lightman's testimony regarding the inability to determine a sintering temperature.

### 1.     Claims are Construed to Determine Their Meaning as of a Patent's Filing Date

3D erroneously states that indefiniteness is determined as of the patent issue date, citing *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202-03 (Fed. Cir. 2002) at pages 6-7 of its brief. However, the law is clear that indefiniteness, as any other claim construction issue, is determined *as of the patent filing date*, not the issue date. Indeed, the *Texas Digital* case nowhere states the proposition that claim construction must be determined as of a patent's issue date; it

merely permitted the use of dictionaries available at the time the patent issued to interpret a claim term. *Id.*, at 1203.

The Federal Circuit has criticized this decision for this very reason, finding that *Texas Digital* was inconsistent with *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353 (Fed. Cir. 2000). *See Inverness Med. Switzerland GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1378 n.2 (Fed. Cir. 2002):

> Our decisions have not always been consistent as to whether the pertinent date [of the dictionary used to determine the meaning of a term] is the filing date of the application or the issue date of the patent ... . No party here has suggested that the pertinent sources changed between the application and issuance dates.

*Id.* (citations omitted). The *Inverness* court apparently saw no harm in using the dictionaries available at the time of issue because they would presumably provide the same definitions as those available at the time of filing.

Here, however, plaintiffs are expressly urging that the definition of "sinter" known in the art at the time the application was filed *should be ignored.* This is directly contrary to the overwhelming weight of authority, and will certainly lead to reversible error, as ***claim terms are to be construed as they would be understood by one skilled in the art at the filing date of the patent application.*** *Schering*, 222 F.3d at 1352-54 (when a claim term understood to have a narrow meaning when the application is filed later acquires a broader definition, the literal scope of the term is limited to what it was understood to mean at the time of filing); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1555 (Fed. Cir. 1997) (abrogated by the Federal Circuit *en banc* on other grounds in *Cybor v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) ("As a general rule, the construing court interprets words in a claim as one of skill in the art at the time of invention would understand them . . . . Therefore, the testimony of one skilled in the art about the meaning of claim terms at the time of the invention will almost always qualify as relevant evidence. FED. R.

EVID. 401; *Markman*, 52 F.3d at 981"); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("the focus in construing disputed terms in claim language is . . . what one of ordinary skill in the art at the time of the invention would have understood the term to mean").

The rule is no different when determining indefiniteness. Claims terms must be interpreted the same way in determining infringement and validity. *See, e.g., Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001) (a patent owner "cannot have an expression be limiting in [a validity] context and non-limiting in [an infringement context]").

### 2. Indefiniteness May be Considered During the Markman Process

Second, while the Court has the discretion to decide when or even whether to conduct a Markman hearing, it is not improper for a Court to determine indefiniteness during the Markman process. Plaintiffs cite (at footnote 1 of their brief) *Intervet America, Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050 (Fed. Cir. 1989), for the proposition that considering indefiniteness during Markman is improper – but the case was decided years before the *Markman* decision issued. To the contrary:

> A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.

*Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998). Although there is authority to suggest courts are not *required* to consider indefiniteness at Markman Hearings, *ASM America, Inc. v. Genus, Inc.*, No. C-01-2190-EDL, 2002 WL 1892200 (N.D. Cal. August 15, 2002), there is ample authority to support doing so. *See Broadcast Innov'n v. Echostar Communication*, 240 F. Supp. 2d 1127, 1135 (D. Colo. 2003) (indefiniteness considered during Markman hearing); *see also Chemical Separation Tech., Inc. v. United States*, 51 Fed. Cl. 771, 778 (Ct. Cl. 2002) (indefiniteness considered during Markman hearing). And, of course, in the

California litigation, Judge Carter initially found 3D's '268 patent to be indefinite after hearing evidence at the Markman hearing (he has withdrawn his ruling for reconsideration).

As set forth recently in *Honeywell Int'l v. Int'l Trade Comm'n*, 341 F.3d 1332 (Fed. Cir. 2003):

> If the court determines that a claim is not "amenable to construction," then the claim is invalid as indefinite under 35 U.S.C. § 112, ¶ 2. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). The definiteness requirement of § 112, ¶ 2 "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-72 (Fed. Cir. 2001) (citing *Solomon*, 216 F.3d at 1379). It requires "that the claims be amenable to construction, however difficult that task may be." *Exxon Research*, 265 F.3d at 1375. Because a claim is presumed valid, a claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted."

*Honeywell*, 341 F.3d at 1338-39.

The Markman context is a perfect setting for considering a claim interpretation issue such as indefiniteness, as experts are available to provide live testimony, arguments are fresh, and the Court can ask questions of both the witnesses and counsel. Nevertheless, the issue is preserved either for summary judgment or for trial, and EOS will proceed as indicated.[1]

### 3. 3D's Mischaracterization of Dr. Lightman's Testimony

3D's brief is replete with factual errors, too. For example, at page 7-8, 3D asserts that Dr. Lightman "admits that [one] could determine the sintering temperature at which material would fuse" and cites testimony *in which temperature is never even mentioned.* This would perhaps seem innocent, if not for the fact that 3D's counsel had been corrected on this very point later in the deposition:

> Q. Or as you testified earlier, whether you can actually identify the temperature, you could determine empirically by using material in a laser

---

[1] Of course, if the Court decides to reconvene the Markman hearing, EOS is more than willing to proceed.

- 4 -

sintering machine?

A.    We talked. There is confusion of two different things here.

Q.    Okay.

A.    I didn't say that.

Q.    You talked about the ability to be able to determine at what point materials melted and fused together and one way to do that with a new material might be to simply experiment with it?

A.    No, what I said was I could determine how much energy the laser had to deposit to cause the materials to fuse together. That's much different than assigning a temperature.

Q.    *That's fine. I apologize. I didn't intend to mischaracterize your testimony. I recall now that that is exactly what you said.*

Lightman Tr., at 93:15 – 94:8 (emphasis added).

3D *admitted* that Dr. Lightman did not say what they now falsely attribute to him, a mischaracterization in their own words. Yet, that is what they would have this Court believe.

In conclusion, EOS submits that once the errors presented by 3D's Brief are corrected, it is clear that EOS's claim interpretation should be adopted and certain claims held indefinite.

                Respectfully submitted,

                */s/ [signature]*

                Thomas H. Watkins
                State Bar No. 20928000
                Albert A. Carrion, Jr.
                State Bar No. 03883100
                BROWN MCCARROLL, L.L.P.
                1300 San Jacinto Center
                98 San Jacinto Boulevard
                P.O. Box 2063
                Austin, Texas 78768-2063
                (512) 476-4716
                (512) 476-5139 (Telecopier)

Michael H. Baniak
Charles C. Kinne
BANIAK PINE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 (Telecopier)

David J. Laing
BAKER & MCKENZIE
815 Connecticut Avenue, NW, Suite 900
Washington, DC 20006
(202) 452-7023
(202) 452-7074 (Telecopier)

ATTORNEYS FOR DEFENDANT
EOS GMBH ELECTRO OPTICAL SYSTEMS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was provided to counsel of record by the method indicated below on this the 4th day of December 2003:

| | |
|---|---|
| Philip E. Cook<br>Robert W. Dickerson<br>JONES DAY<br>555 W. Fifth Street, Suite 4600<br>Los Angeles, California 90013-1025 | *via Federal Express* |
| Alan D. Albright<br>Elizabeth J. Brown Fore<br>GRAY CARY WARE & FREIDENRICH, LLP<br>1221 South Mopac Expressway, Suite 400<br>Austin, Texas 78746-6875 | *via first-class mail* |

_____
THOMAS H. WATKINS

SANJAC.2200899.1
50163.1