IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc. | § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. A03 CA 113 SS |
| EOS GmbH Electro Optical Systems | § § § | |
| Defendant | § | |

### SUPPLEMENTAL FILING OF EOS WITH RESPECT TO PLAINTIFFS' MOTION TO DISQUALIFY DR. ALLAN J. LIGHTMAN IN NOTICE OF FILING DECLARATION OF MICHAEL C. SHELLABEAR, Ph.D. ON THE LIMITED NUMBER OF EXPERTS AVAILABLE

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to this Court's request at the hearing of December 10, 2003, EOS submits the attached Declaration of Michael C. Shellabear, Ph.D. in Support of EOS's Opposition to Plaintiffs' Motion to Disqualify Dr. Allan J. Lightman. Dr. Shellabear attests to the very limited number of experts available in this specialized field of so-called Laser Sintering technology, and particularly those having the desired range and depth of experience dating back to the early days of this technology. As Dr. Shellabear sets forth:

> I would estimate that, after eliminating those individuals who have an affiliation with EOS, 3D Systems, DTM or the University of Texas, there are only about six individuals who meet these criteria and would probably be able and willing to serve as an independent expert for EOS.

(Declaration of Michael C. Shellabear, Ph.D., ¶ 10.)

3D admits that it never employed Dr. Lightman as a consultant. As Mr. Cook stated in oral argument, "he fell through the cracks." As Mr. Graves said in his Declaration, 3D did not want to pay his going rate for consulting. Either way, given the extremely limited availability of experts in this field, there is no basis for denying EOS's ability to use Dr. Lightman as an expert to assist the Court and the jury in this action.

3D's motion to disqualify Dr. Lightman should be denied.

Respectfully submitted,

BROWN MCCARROLL, L.L.P.
1300 San Jacinto Center
98 San Jacinto Boulevard
P.O. Box 2063
Austin, Texas 78768-2063
(512) 476-4716
(512) 476-5139 (Telecopier)

By: _____
THOMAS H. WATKINS
State Bar No. 20928000
ALBERT A. CARRION, JR.
State Bar No. 03883100

MICHAEL H. BANIAK
MICHAEL D. GANNON
ANDREW PRATT
CHARLES C. KINNE
BANIAK PINE & GANNON
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 (Telecopier)

DAVID J. LAING
BAKER & MCKENZIE
815 Connecticut Avenue, NW, Suite 900
Washington, DC 20006
(202) 452-7023
(202) 452-7074 (Telecopier)

ATTORNEYS FOR DEFENDANT
EOS GMBH ELECTRO OPTICAL SYSTEMS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was provided to counsel of record by the method indicted below on this the 18th day of December 2003:

Philip E. Cook                                              *via Federal Express*
Robert W. Dickerson
JONES DAY
555 W. Fifth Street, Suite 4600
Los Angeles, California 90013-1025

Alan D. Albright                                            *via first-class mail*
Elizabeth J. Brown Fore
GRAY CARY WARE & FREIDENRICH, LLP
1221 South Mopac Expressway, Suite 400
Austin, Texas 78746-6875

_____
ALBERT A. CARRION, JR.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc., § § § § Plaintiffs, § § v. § § EOS GmbH Electro Optical Systems, § § Defendant. § | Civil Action No. AC3 CA 113 SS |

DECLARATION OF MICHAEL C. SHELLABEAR, PH.D.,
IN SUPPORT OF EOS'S OPPOSITION TO PLAINTIFFS' MOTION
TO DISQUALIFY DR. ALLAN J. LIGHTMAN

I, Michael C. Shellabear, Ph.D., declare as follows:

1. I am a Product Manager at EOS GmbH Electro Optical Systems (hereinafter "EOS"), the Defendant in the above-captioned matter.

2. I hold a Bachelor's degree and a Ph.D., both in Mechanical Engineering from Loughborough University of Technology, England, and have been working professionally in the field of Rapid Prototyping for more than ten years.

3. As a result of my ongoing duties and responsibilities at EOS, I have obtained a thorough understanding of the Rapid Prototyping ("RP") industry. I also have an in-depth knowledge of EOS's business, including an in-depth understanding of the structure and operation of the various products manufactured and sold by EOS.

4. I have been directly involved in intellectual property issues at EOS since at least 1994 and have had overall responsibility for this area since early 1996. This has included the various patent office oppositions and litigations in which we have needed the assistance of technical experts. Through my direct involvement with RP since 1991 and

my literature searches also for the period prior to that, I have a good awareness of who the key players in the field of rapid prototyping (RP) have been since the inception of RP, and therefore I also have a good knowledge of the technical experts available in the field of rapid prototyping and laser sintering (as it is referred to) as it applies to that field. In fact, I am involved in the selection of such experts on behalf of EOS.

5. The laser sintering technology at issue is not something that can simply be considered to be within the expertise of a physicist or engineer who has not worked in the field, for example. There are many interrelated parameters and issues that impact the successful operation of these commercial machines, including materials science, thermodynamics, laser optics, mechanics, software, etc. This type of knowledge is not known outside of the field; for example, it varies greatly from conventional sintering or other conventional manufacturing processes. This is why we have found it extremely important to locate competent people with the requisite background in the field.

6. The significance of many of the issues in laser sintering has only become understood as time has gone on. In the early days of laser-sintering, not only were many of the issues unknown, but also some wrong assumptions were made and invalid theories developed. This is witnessed by the fact that some of the developments which were considered important at the time, such as a downdraft of temperature-controlled gas through the powder bed, are no longer used in any commercial laser sintering systems. Because some of the knowledge which has in the meantime become generally accepted in the field was not known in the early days (e.g., 1980s), it is important that any expert who is required to consider historical issues has been actively involved in the field for many years in order to judge what the skilled person would have understood in the relevant timeframe. This of course rules out many potential experts.

7. For most of the timeframe since RP started, EOS and DTM (now 3D Systems) have been the only significant players in the commercial laser sintering market. As a consequence, the pool of potential independent experts is already greatly limited, since

many of those with the relevant qualifications have an affiliation (past or present) with either EOS or DTM. In academia, the number of institutions that have been engaged in significant research in the field is likewise very limited. In the U.S., that research was largely concentrated at the University of Texas in Austin (UT), with additional work being done at the University of Dayton and MIT. Due to their close relationship with DTM, the UT personnel have obviously not been available to EOS as potential experts, and as we have learned, many of them have a financial interest in the UT patents licensed to 3D Systems.

8. I understand that 3D Systems has already engaged at least three experts in its litigations in the U.S. Dr. Joel Barlow, formerly of UT, who has authored many publications on laser-sintering including co-authoring one of the main text books, has been retained by 3D in the California action against EOS. Dr. Brent Stucker, who has been one of the most prolific authors of laser-sintering publications in recent years, has also engaged by 3D, as has Friedrich Prinz, who has extensive experience in the field over many years.

9. The kind of personal knowledge and professional expertise described above is simply not available in many persons, let alone in individuals capable and willing to provide expert testimony. Examples of suitable experts would include the authors of RP textbooks covering laser sintering, chairpersons of RP conferences and committee members of independent RP organizations who have been working in this field for many years and have first-hand experience of laser-sintering. I have reviewed such sources including the main RP textbooks and the RP conferences from the early 1990s, and I have extensive experience in meeting and talking with such individuals at major RP conferences.

10. I would estimate that, after eliminating those individuals who have an affiliation with EOS, 3D Systems, DTM or the University of Texas, there are only about six individuals who meet these criteria and would probably be able and willing to serve as an independent expert for EOS.

3

11. Dr. Allan Lightman is one of just a few people who can qualify as experts with knowledge spanning what may be considered the major period of history of laser sintering. His work at the University of Dayton in the late 80's and through the 90's was with some of the earliest powder, liquid and other machines then beginning to be commercialized. He was one of the Chairs of the University of Dayton's Conference on Rapid Prototyping over its earliest years since at least 1990, and as his résumé reveals, one of the major authors of articles and one of the major presenters at professional meetings during this same timeframe.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

_____
Michael C. Shellabear, Ph.D.

16 th December 2003

4