IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

DEC 23 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
         DEPUTY CLERK

| | |
|---|---|
| Board of Regents, The University of Texas System, and 3D Systems, Inc., § § § § Plaintiffs, § § v. § EOS GmbH Electro Optical Systems, § § Defendant. § § | Civil Action No. A03 CA 113SS |

### REPLY BRIEF OF PLAINTIFFS BOARD OF REGENTS, THE UNIVERSITY OF TEXAS SYSTEM, AND 3D SYSTEMS, INC. IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANT EOS'S EXPERT WITNESS ALLAN J. LIGHTMAN, PH.D.

Plaintiffs Board of Regents, University of Texas System ("UT") and 3D Systems, Inc. ("3D Systems"), in reply to the Opposition of EOS GmbH Electro Optical Systems ("EOS") to the Motion to Disqualify Expert Witness Allan J. Lightman (the "Opposition"), respectfully submit this Reply in support of their request that the Court disqualify EOS's expert witness Allan J. Lightman, Ph.D.

I.   **INTRODUCTION**

Dr. Lightman should be disqualified from acting as EOS's expert witness in the instant litigation. Disqualification is required because Dr. Lightman, having been retained by 3D Systems and its predecessor DTM[1] in past litigation substantially related to the present action, has "switched sides." *See Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 590-91

---

[1] In this Reply, Plaintiffs refer to 3D Systems and its predecessor DTM, collectively, as "3D Systems."

(D. Minn. 1986). Disqualification is also appropriate in this case because (1) it was objectively reasonable for 3D Systems to believe that its confidential relationship with Dr. Lightman still existed; and (2) while retained by 3D Systems, Dr. Lightman received or had reasonable access to 3D Systems' confidential or privileged information. *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996).

Nothing in EOS's Opposition changes the law or the facts outlined in Plaintiffs' Motion to disqualify Dr. Lightman. First, EOS ignores law that it was required to seek 3D Systems' consent before retaining Dr. Lightman and the failure to do so was improper conduct on the part of EOS's counsel. Second, EOS, in a declaration submitted after its Opposition, claims that there are only six potential experts who could be retained for this case. But even a cursory review of the publications and patents in the field of laser sintering technology proves this assertion to be untrue. Third, EOS attempts to claim that Dr. Lightman did not receive any confidential information in the California EOS Litigation. EOS's claims, however, are contrary to the evidence. Finally, the Fifth Circuit in *Koch Refining* has delineated when a party may have a continuing expectation of confidentiality. The relationship between 3D Systems and Dr. Lightman plainly meets this test.

Alternatively, if the Court does not disqualify Dr. Lightman, Plaintiffs respectfully request that the Court preclude any reference before the jury at the trial of this case that Dr. Lightman's work in the Midwest Litigation was conducted for DTM (or any party that is related in any way to Plaintiffs).

II.   **DR. LIGHTMAN SHOULD BE DISQUALIFIED AS EOS'S EXPERT.**

    A.   **EOS's Counsel Should Have Sought 3D Systems' Consent Before Retaining Dr. Lightman.**

In its Opposition, EOS characterizes Plaintiffs' contention that EOS's counsel acted improperly in its discussion with Dr. Lightman "most troubling." (Opposition, p. 7.) EOS, however, ignores applicable law. California law, which applies to the case in which Dr. Lightman was engaged by 3D Systems (the "California EOS Litigation"),[2] clearly requires a party seeking to retain an expert who was previously retained by an opposing party to notify that other party and get its approval or seek leave of court *first*. *See Shadow Traffic Network v. Superior Court*, 24 Cal. Rptr. 2d 693, 701 n.10 (Cal. Ct. App. 1994) ("plaintiff's lawyer should have clarified the situation with defense counsel *before* pursuing the matter with [the expert]").

In *Shadow Traffic*, defendant's attorneys, who retained an expert previously interviewed by plaintiff for the same lawsuit and failed to notify plaintiff's attorneys, were disqualified from further representing their client in the litigation. *Id.* at 705. The court held that a lawyer must clarify the situation with opposing counsel before retaining the expert. *Id.* at 703 ("The point is clear: a brief but professional exchange can expeditiously resolve the issue and avoid needless litigation."). The *Shadow Traffic* court imposed this bright-line rule, in part, because it noted that it is difficult to rule out unconscious use of information provided by the opposing counsel or party. *Id.* at 704 ("Even assuming that [the retaining attorney] did not expressly ask [the expert] about the contents of his discussion with [opposing counsel] and that [the expert] did not

---

[2] Lead counsel for EOS here, Baniak Pine & Gannon, have been admitted *pro hac vice* in the California EOS Litigation. Thus, they are subject to the United States District Court for the Central District of California's Local Rule 83-3.1.2, which adopts "the Rules of Professional Conduct for the State Bar of California, and the decisions of any court applicable thereto."

explicitly disclose the information to [the retaining attorney], [the retaining attorney] could still obtain the benefit of the information because the data, consciously or unconsciously, could shape or affect the analysis and advice [the expert] rendered to [the retaining party]."). *See also Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1250 (E.D. Va. 1991) ("[C]ounsel...should take care to ascertain all the facts concerning the prior retention or attempted retention and the nature of all disclosures" before engaging an expert.).

### B.    3D Systems Has Not Acted Improperly In Retaining Its Experts.

In addition to establishing that EOS's lead counsel improperly hired Dr. Lightman without first contacting 3D Systems, *Shadow Traffic* addresses the concern that a party could "deplete the pool of available experts simply by quickly interviewing all of the available experts, even though it had no intention of retaining all of them." *Shadow Traffic*, 24 Cal. Rptr. 2d at 700 n.9. In *Shadow Traffic*, however, the court found no evidence in the record to substantiate that such conduct had occurred. *Id.; see also Wang Labs.*, 762 F. Supp. at 1248-49 (suggesting a two-part inquiry a trial court can make to prevent attorneys from engaging in the impermissible practice of retaining consultants, merely to preclude opposing counsel from doing so"). Here, EOS's Opposition contends that counsel for Plaintiffs may have "interviewed many, many potential experts in an effort to tie up the industry." (Opposition, p. 3.) But EOS's Opposition contained no evidence whatsoever to support this bald assertion, and its subsequent submission of such "evidence" fails to credibly support its claim. Additionally, where, as here, it is objectively reasonable for 3D Systems to conclude that a confidential relationship existed with Dr. Lightman and confidential information was disclosed to him, 3D Systems has satisfied *Wang Labs.*' two-part inquiry and negated EOS's implication that 3D Systems may have acted improperly in retaining its experts. *See Wang Labs.*, 762 F. Supp. at 1248-49.

### C.   EOS's Claim that There are Only Six Potential Experts Available Is Wrong.

On December 10, 2003, this Court permitted EOS to supplement its Opposition and submit evidence regarding the availability of experts in the field of laser sintering technology. EOS has now submitted the Declaration of Michael C. Shellabear, Ph.D. in an attempt to show that EOS had to hire Dr. Lightman. Dr. Shellabear's declaration claims that there are only six individuals who meet the criteria of an expert witness in the field of laser sintering technology and are not affiliated with the Plaintiffs in this case. (Shellabear Decl., ¶ 10.) But the fact that there are at least six remaining individuals itself deflates EOS's argument that Plaintiffs attempted to "tie up the industry." Nor does EOS provide an explanation for why one or more of these six potential experts were not contacted and retained by EOS in this matter, instead of Dr. Lightman, who was an expert that had been retained by 3D Systems in two prior cases.

Further, using Dr. Shellabear's definition of one with appropriate background in the field as defined in his declaration, Dr. Shellabear's assessment of the array of potential experts is simply wrong.[3] Using that definition, there are many more than six individuals who are potential experts for this case. (Stucker Decl., ¶¶ 6-8 [attached as Ex. A].) For example, authors of scientific articles related to selective laser sintering are potential experts. (Stucker Decl., ¶ 6-7 [attached as Ex. A].) (*Id.*) Additionally, inventors of selective laser sintering patents meet Dr. Shellabear's definition. (Stucker Decl., ¶ 8.) Exhibit 1 to Dr. Stucker's declaration is a list of 52 patents related to selective laser sintering. Each patent has between one and five co-inventors. (*Id.*) Even a cursory review of the publications and patents in the laser sintering field shows that,

---

[3] Plaintiffs do not waive their right to object to the qualifications, methodology or conclusions of any individual experts retained by EOS in this action.

after eliminating experts affiliated with the Plaintiffs in this case, the number of potential experts is far more than EOS's claimed "six."

### D. EOS's "Evidence" Does Not Refute The Fact That Dr. Lightman Received 3D Systems' Confidential Information in the California EOS Litigation.

In *Shadow Traffic*, the court held that "communications made to a potential expert in a retention interview can be considered confidential and therefore subject to protection from subsequent disclosure even if the expert is not thereafter retained as long as there was a reasonable expectation of such confidentiality." *Shadow Traffic*, 24 Cal. Rptr. 2d at 700. This is consistent with Dr. Lightman's written agreement in the California EOS Litigation (Lightman Depo. Ex. 7 [attached to Motion as Ex. A]) and Mr. Graves' declaration that his initial conversation with Dr. Lightman was predicated on confidentiality. (Graves Decl., ¶ 6 [attached to Motion as Ex. D].)

In its Opposition, EOS makes broad claims about the facts regarding what information was communicated between the parties, but ignores details. For instance, EOS claims that its lead counsel had no discussion of EOS's position in California with Dr. Lightman. (Opposition, p. 4.) However, EOS fails to refute the evidence that EOS's counsel discussed DSC curves and the term "window" with Dr. Lightman, (Lightman Depo. at 11:20-12:9, 137:23-138:20), which are relevant to the California EOS Litigation. Dr. Lightman also admitted during his deposition that his copy of the '919 patent, with its notes and marginalia, was shown to Mr. Gannon. (Lightman Depo. at 10:9-20.) Notably, Mr. Gannon was at that deposition and did not suggest anything to the contrary, or even ask Dr. Lightman to change his position. Yet, both Dr. Lightman and Mr. Gannon now claim in the declarations they submitted with EOS's Opposition that Mr. Gannon never looked at Dr. Lightman's copy of the patent. (Lightman

Decl., ¶ 4; Gannon Decl., ¶ 3 [attached to Opposition as Exs. B & C].) EOS's "evidence" is simply not credible.

Further, Dr. Lightman's unequivocal denial in his declaration that none of the things Mr. Graves claims to have discussed with him were in fact discussed is likewise not credible. (Lightman Decl., ¶ 7.) In his deposition, Dr. Lightman admitted that he did not recall whether he was interviewed at all by Mr. Graves. (Lightman Depo., 118:16-18.) Dr. Lightman also did not recall discussing his prior communications with EOS (Lightman Depo., 121:1-8), but he signed a retainer agreement in the California EOS Litigation stating that this was discussed. (Lightman Depo. Ex. 7.) Dr. Lightman's denials in his declaration now are startlingly clear for someone who was unable to recall very much during his deposition. As such, EOS has failed to refute Plaintiffs' evidence that Dr. Lightman did indeed receive confidential information from 3D Systems in the California EOS Litigation.

### E.    3D Systems Is Entitled to a Continuing Expectation of Confidentiality.

This Court must determine whether 3D Systems and Dr. Lightman had a "relationship which permitted the retaining party reasonably to expect that any communication would be maintained in confidence by the expert." *Koch Refining*, 85 F.3d at 1182 (internal quotations omitted). Such a relationship exists "when the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of the retaining party's modus operandi, patterns of operations, decision-making process, and the like." *Id.* 3D Systems retained Dr. Lightman as an expert in a patent infringement case in 1996. His work in that litigation totaled over 100 hours and he was paid over $30,000. (Lightman Depo. at 135:20-136:15 & Ex. 12.) In May 2002, 3D Systems again retained Dr. Lightman as a consulting expert for the California EOS Litigation.

In *Koch Refining*, the Fifth Circuit held that the district court did not err in finding that a party who had paid an expert $8,000 and received several written reports from him had a reasonable expectation of confidentiality with the expert and that such expectation *continued after the expert was discharged* by the retaining party. *See Koch Refining*, 85 F.3d at 1182. As in *Koch Refining*, the relationship between 3D Systems and Dr. Lightman is more appropriately described as a "long-standing series of interactions" than one of a consultative nature. *See id.* Accordingly, Dr. Lightman should be disqualified in the present litigation.

EOS further claims that because Dr. Lightman was designated as a testifying expert in the Midwest Litigation and supplied his reports under Federal Rule of Civil Procedure 26, 3D Systems is no longer entitled to any expectation of confidentiality. (Opposition, p. 5.) EOS's proposition is not supported by *Koch Refining*. In that case, the retaining party designated its expert as a "will call" testifying expert but did not call him at trial. *Koch Refining*, 85 F.3d at 1181. As noted above, the court held that the retaining party had a continuing expectation of confidentiality. *Id.* at 1182. As in *Koch Refining*, Dr. Lightman provided reports in the Midwest Litigation but was never deposed or called at trial. Thus, 3D Systems' expectation of confidentiality should continue.

Even if this Court were to determine that any claim of confidentiality has been waived, EOS is still not entitled to obtain information given to Dr. Lightman in the Midwest Litigation because EOS was not a party to the Midwest Litigation. The cases cited by EOS in its Opposition refer to the procedures outlined in Federal Rule of Civil Procedure 26 for *a party* to obtain discovery from an expert witness. *See Commerce & Indus. Ins. Co. v. Grinnell Corp.*, C.A. No. 97-0775, 1999 WL 731410, at *1 (E.D. La. Sept. 20, 1999); *TV-3, Inc. v. Royal Ins. Co. of Am.*, 194 F.R.D. 585, 586-587 (S.D. Miss. 2000). Any waiver of confidentiality in the

Midwest Litigation once Dr. Lightman was designated as a testifying expert certainly does not extend to EOS in the present litigation.

### III. IN THE ALTERNATIVE, EOS SHOULD BE PRECLUDED FROM MENTIONING THAT DR. LIGHTMAN WAS DTM'S EXPERT IN THE MIDWEST LITIGATION.

If the Court determines that Dr. Lightman should not be disqualified from acting as EOS's expert witness in the instant litigation, Plaintiffs request that the parties be prevented from making any reference before the jury at trial of this matter that Dr. Lightman's work in the Midwest Litigation was a result of his being retained by DTM (or any party related in any way to Plaintiffs). Additionally, Plaintiffs request that the parties be ordered to redact any references to DTM from Midwest Litigation documents that are presented to the jury. Dr. Lightman's work in the Midwest Litigation, however, is highly relevant to the instant litigation and should be admissible for impeachment purposes.

### IV. CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiffs' Motion, Plaintiffs UT and 3D Systems respectfully request that the Court (i) disqualify defendant EOS's expert witness Allan J. Lightman, Ph.D.; (ii) strike from the record his October 23, 2003 declaration filed in support of EOS's Opening *Markman* Brief; (iii) order that all copies of materials Defendant or any of its representatives (including its attorneys) have received from Dr. Lightman be returned to him, including electronic copies; and (iv) order that no further communications take place between Defendant or any of its representatives (including its attorneys) and Dr. Lightman on the subject matter of this case or the California EOS Litigation.

In the alternative, if this Court does not disqualify Dr. Lightman, Plaintiffs respectfully request that the Court (i) issue an order precluding any reference before the jury that Dr.

Lightman's work in the Midwest Litigation was conducted on behalf of DTM; and (ii) order the parties to redact from any Midwest Litigation documents that are published to the jury all references to DTM.

Dated: December 23, 2003

*Philip E. Cook, by permission* EJBF
PHILIP E. COOK (admitted *pro hac vice*)
Calif. State Bar No. 149067
ROBERT W. DICKERSON (admitted *pro hac vice*)
Calif. State Bar No. 89367
JONES DAY
555 West Fifth Street, Suite 4600
Los Angeles, CA 90013-1025
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

ALAN D ALBRIGHT
Federal Bar No. 13048
Texas State Bar No. 00973650
ELIZABETH J. BROWN FORE
Texas State Bar No. 24001795
GRAY, CARY, WARE & FREIDENRICH LLP
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-6875
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

Attorneys for Plaintiffs
BOARD OF REGENTS, THE
UNIVERSITY OF TEXAS SYSTEM,
and 3D SYSTEMS, INC.

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document was sent to the following counsel of record on this 23rd day of December, 2003 in the following manner:

| | |
|---|---|
| Thomas H. Watkins<br>Albert A. Carrion, Jr.<br>BROWN MCCARROLL LLP<br>98 San Jacinto Boulevard<br>San Jacinto Center, Suite 1300<br>Austin, Texas 78701<br>(512)476-4716<br>(512) 476-5139 Facsimile | *Via United States Mail* |
| Michael H. Baniak<br>Michael D. Gannon<br>Andrew F. Pratt<br>BANIAK PINE & GANNON<br>150 N. Wacker Drive, Suite 1200<br>Chicago, Illinois 60606<br>(312) 673-0360<br>(312) 673-0361 Facsimile | *Via Overnight Delivery* |

Attorneys for Defendant
EOS GMBH ELECTRO OPTICAL SYSTEMS

*[Signature]*
ELIZABETH J. BROWN FORE