IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

Board of Regents, The University of Texas § 
System, and 3D Systems, Inc., §
§
                Plaintiffs, §
§              Civil Action No. A03 CA 113 SS
v. §
§
EOS GmbH Electro Optical Systems, §
§
                Defendant. §

**EOS'S SURREPLY IN OPPOSITION TO 3D'S MOTION TO
DISQUALIFY ALLAN J. LIGHTMAN, PH.D.**

EOS submits the following to rectify the erroneous statement of law presented by 3D's Reply Brief, submitted on 23 December 2003, two weeks after EOS submitted its opposition, and to respond to 3D's assertion that more than six potential expert witnesses were available to EOS.

A.    No "Law" Compelled EOS's Counsel to Seek 3D's Consent in One Litigation to Engage a Man that 3D Never Used as an Expert in a Different Litigation

3D asserts that California law compels disqualifying Dr. Lightman from this Texas case, and then cites *Shadow Traffic Network v. Superior Court of Los Angeles County*, 29 Cal. Rptr. 2d 693 (Cal. App. 1994), to support its disqualification motion. However, *Shadow Traffic* has been limited in scope by subsequent decisions of California's courts. For example, in *Western Digital Corp. v. The Superior Court of Orange County*, 71 Cal. Rptr. 2d 179 (Cal. App. 1998), the court ruled that while it may have been wise for the party opposing disqualification to have contacted the party seeking disqualification before using the expert, "failure [to do so] does not justify disqualification of the expert or of counsel." *Western Digital*, 71 Cal. Rptr. 2d at 189. Of course, in *Western*

*Digital*, the same expert firm was used *in the same litigation*, and the expert firm *had actually received confidential information* from the party seeking disqualification. Nevertheless, disqualification was unwarranted:

> Disqualification of an expert (and, by extension, the law firm that retained the expert) can only be justified where the moving party establishes the expert actually "possesses confidential attorney-client information materially related to the proceedings before the court."

*Western Digital*, 71 Cal. Rptr. 2d at 189 (citations omitted). Here, three of these three elements are missing: Dr. Lightman possesses no confidential attorney-client information of 3D's, what information he has is not material to the issues of this litigation, and nothing about his contact with 3D relates to proceedings before this court.

*Western Digital* also noted that *Shadow Traffic* held that a party's contact with an expert may create a rebuttable presumption that confidential information had been supplied to the expert and shared with opposing counsel. In *Shadow Traffic*, no effort was made to rebut the presumption. In contrast, Dr. Lightman has testified to and declared under penalty of perjury that he received no confidential information from 3D. Indeed, the letter he wrote terminating his agreement to serve 3D's counsel recites that very fact – *he had no confidential information to return to 3D*[1]. EOS's counsel has also declared that Dr. Lightman provided no confidential information to EOS.

Of course, even if *Shadow Traffic* is controlling, it has no bearing on this case because its facts are vastly different from those presented here. The *Shadow Traffic* case involved presentation of an expert firm who had been interviewed by the adversary *in the same litigation*. In contrast, the California case between 3D and EOS (UT is not a party) involves different patents and different

---

[1] In view of Dr. Lightman's letter terminating his agreement to serve 3D, in which he states he has received no confidential information, one wonders whether 3D could have a "reasonable expectation of confidentiality." Note that 3D did not respond to this letter, either in writing or by telephone.

2

claims. Discovery closed long before EOS contacted Dr. Lightman in this case, and trial is set for 02 March 2004. Dr. Lightman has had no role in the California case on either party's behalf.

In *Shadow Traffic*, the party first interviewing the expert firm averred that they had "explained [to the expert firm] about our theories of the case, and how we anticipated the expert testimony would fit in both at trial itself and in helping with trial preparation." The party further averred that after several conversations with the expert firm, they met with and interviewed the expert firm, and "[d]uring this meeting, [counsel] extensively discussed our litigation and trial strategies, our theories and legal analysis of this litigation, what assistance we desire of [the expert firm] to help us prepare for trial, how we expected the expert testimony to fit in at trial, and what charts and graphs we wanted them to prepare." *No contradicting evidence was offered*; neither the expert firm nor counsel resisting disqualification submitted a declaration to refute the averrals of the party first interviewing the expert firm.

Here, although 3D has tried to pattern the Graves Declaration after the evidence supporting disqualification in the *Shadow Traffic* case, the effort fails: Mr. Graves cannot recall (what did not happen). At best, Mr. Graves' declaration does not prove anything. Dr. Lightman's recall is clear. No confidential information of any kind was relayed to him in the California case. Paragraph by paragraph, Dr. Lightman expressly rejects Mr. Graves' assumptions as to what must have transpired between them. Contrast, as the court did in *Toyota Motor Sales, U.S.A., Inc. v. The Superior Court of Los Angeles County*, 54 Cal. Rptr. 2d 22, 24-25 (Cal. App. 1996), the clarity of recall between Dr. Lightman and Mr. Graves. In *Toyota Motor Sales*, the reviewing Court noted the detailed, explicit averrals of the expert which refuted the lawyers' generalized assertions, and confirmed the trial court's refusal to disqualify the expert, noting the propriety of determining credibility, even in the face of conflicting declarations.

3

Finally, note that the party seeking disqualification brought its motion *two days* after learning of the expert's intended role; 3D waited more than six weeks.

3D also cites *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246 (E.D. Va. 1991), to support disqualification. Again, the facts presented in *Wang* differ dramatically from those presented here. As in *Shadow Traffic*, the expert was retained by both sides *in the same litigation.* Additionally, in *Wang*, the expert performed services for and received confidential, work-product information from the party seeking disqualification:

- he received from counsel "the patents in issue, some materials pertinent to the infringement issue, and a lengthy, detailed memorandum [counsel] prepared concerning the patents' prosecution history;"
- he received an outline of the potential defenses to the claim that counsel had prepared;
- he participated in several telephone calls with counsel regarding the technical aspects of the case;
- he reached an opinion that the patents in suit were invalid, and indicated that in reaching that opinion, he had read "the Work-Product information" counsel had sent him; and
- he invoiced the party seeking disqualification for his work, and was paid.

*Wang*, 762 F. Supp. at 1247.

Both cases 3D cites involve experts interviewed or retained by both parties to the same litigation, who were sought for the same issues. Dr. Lightman never worked for 3D in California and he never received confidential information from 3D. EOS presents him to this Court regarding the patents-in-suit here, neither of which is at issue in California.

**B.    3D Avoids Answering the Question Put by the Court:
How Many Experts Meet the Qualifications Required of Dr. Lightman?**

3D submits the Declaration of Brent Stucker to suggest to this Court that more than six experts are available from which EOS could have chosen an expert. Of course, Dr. Stucker does not actually tell the Court how many acceptable experts are available; instead, he attaches a list of titles

and authors he found during a computer generated literature search, offering no information about (1) the particular fields of expertise each author claims; (2) whether each author has a tie to 3D or to EOS; and, most tellingly, (3) which of the authors listed 3D had contacted to "engage" them, as they "engaged" Dr. Lightman. Dr. Stucker's declaration does not answer how many suitable experts are available in the field germane to this litigation.

EOS has directly answered how many "Lightman-quality" experts there are, but *how many of them did 3D contact during the California litigation?* 3D does not say, although it could easily do so. Instead, 3D asks the Court to rely on surmise, "beliefs" and questionable "law" to disqualify EOS's expert of choice.

The motion should be denied.

Respectfully submitted,

_____
Michael H. Baniak
Charles C. Kinne
**BANIAK PINE & GANNON**
150 N. Wacker Drive, Suite 1200
Chicago, Illinois 60606
(312) 673-0360
(312) 673-0361 (Telecopier)

Thomas H. Watkins
Albert A. Carrion, Jr.
**BROWN MCCARROLL, L.L.P.**
1300 San Jacinto Center
98 San Jacinto Boulevard
P.O. Box 2063
Austin, Texas 78768-2063
(512) 476-4716
(512) 476-5139 (Telecopier)

**ATTORNEYS FOR DEFENDANT
EOS GMBH ELECTRO OPTICAL SYSTEMS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was provided to counsel of record by the method indicated below on this the 30th day of December 2003:

Philip E. Cook                                                                          *via Federal Express*
Robert W. Dickerson
**JONES DAY**
555 W. Fifth Street, Suite 4600
Los Angeles, California 90013-1025

Alan D. Albright                                                                       *via first-class mail*
Elizabeth J. Brown Fore
**GRAY CARY WARE & FREIDENRICH, LLP**
1221 South Mopac Expressway, Suite 400
Austin, Texas 78746-6875

_____
THOMAS H. WATKINS

SANJAC:2486859.1
50163.1