IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION



BOARD OF REGENTS, THE UNIVERSITY OF
TEXAS SYSTEM, and 3D SYSTEMS, INC.,

Plaintiffs,

-vs-                                                          Case No. A-03-CA-113-SS

EOS GmbH ELECTRO OPTICAL SYSTEMS,

Defendant.

## ORDER

BE IT REMEMBERED on the 2nd day of February 2004, the Court reviewed the file in the above-styled cause, and specifically Plaintiffs' Motion to Disqualify Defendant's Expert Witness Dr. Allan J. Lightman [#121]. After considering the motion, Opposition of Defendant to the Motion to Disqualify Expert Witness Dr. Allan J. Lightman filed by Plaintiffs [#137], Supplemental Filing of Defendant to Plaintiffs' Motion to Disqualify Dr. Allan J. Lightman in Notice of Filing Declaration of Michael C. Shellabear, Ph.D. on the Limited Number of Experts Available [#147], Reply Brief of Plaintiffs in Support of Motion to Disqualify Defendant's Expert Witness Dr. Allan J. Lightman [#150], Defendant's Sur-Reply in Opposition to Plaintiffs' Motion to Disqualify Dr. Allan J. Lightman [#153], the case file as a whole, and the applicable law, the Court enters the following opinion and order.

Federal courts have the inherent power to disqualify experts, although cases granting such disqualifications are rare. *See Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181

186

(5th Cir. 1996) (internal citations omitted). The Fifth Circuit has adopted a test to determine whether an expert should be disqualified. *Id.* In determining whether disqualification is appropriate, courts make the following inquiry:

> 1. Was it objectively reasonable for the first party who retained the expert to believe that a confidential relationship existed?
>
> 2. Did that party disclose any confidential information to the expert?

*Id.* An affirmative answer to both questions is required before the witness may be disqualified. *Id.* Finally, the party seeking disqualification bears the burden of proof. *Id.*

The Court believes it was objectively reasonable for 3D Systems to conclude a confidential relationship existed; Dr. Lightman admitted as much when he terminated his agreement with 3D Systems by letter. *See* Defendant's Response [#137], Exh. D. With respect to the second inquiry, Plaintiffs argue in their motion 3D Systems' counsel, Mr. Graves, discussed with Dr. Lightman the strengths and weaknesses in the California case, the claims of the patents in suit, and the characteristics of the EOS powder at issue. *See* Plaintiffs' Motion to Disqualify Defendant's Expert Witness Dr. Allan J. Lightman [#121], at 12-13. On the other hand, Defendant argues Mr. Graves' declaration does not support Plaintiffs' allegations, and Dr. Lightman's deposition testimony and declaration expressly refute Plaintiffs' allegations. *See* Defendant's Response [#137], at 2-3. Specifically, Defendant points to paragraph 7 of Mr. Graves' declaration, where he states:

> *Although I do not have specific recollection* of all of the subject matter covered during the two conversations I had with Dr. Lightman, I have considered *the nature and purpose* of these telephonic conversations, the amount of time that each of them took, the fact that I concluded at the end of the conversations that Dr. Lightman would be a good consultant for 3D Systems in the California EOS Litigation and was in fact retained as such, and what was, and continues to be, *my practice in interviewing and retaining expert consultants for litigation purposes, it is my belief that we discussed* ..."

*See* Declaration of Phillip E. Cook in Support of Plaintiffs' Motion to Disqualify Defendant's Expert Witness Dr. Allan J. Lightman [#123], Exh. D ¶ 7 (emphasis added). Further, Defendant shows Dr. Lightman declared the following in his declaration:

> *I am certain that we* [Mr. Graves and Dr. Lightman] *never discussed: anything about EOS powders or their characteristics, sphericity, particle size, or claim limitations of any patent claim. I am certain that we* [Mr. Graves and Dr. Lightman] *never discussed:* anything about the claims of either patent referenced, Mr. Graves' (or anyone else's) thoughts about which claims from the [patents] were to be asserted against anyone, or *anything remotely related to patent claims*.

*See* Defendant's Response [#137], Exh. B ¶ 7 (emphasis added). In addition, Defendant points to the following conversation from Dr. Lightman's deposition:

> Q. Do you recall whether Mr. Graves had told you at the time that he spoke with you about working for 3D whether test results had been run on the powder patents that were at issue in the California litigation?
>
> A. He didn't tell me anything.
>
> Q. It is your testimony that in no conversation with 3D Systems counsel, did they ever explain to you that they were suing EOS because it had brought powder material into the United States, is that your testimony?
>
> A. To my recollection, I do not recall having any conversation of that nature.

*See* Defendant's Response [#137], Exh. A, at 120:16-25, 121:19-25. Lastly, Defendant stresses when Dr. Lightman terminated his agreement with 3D Systems, Dr. Lightman stated the following in his letter:

> *As no confidential* [information] *has been transmitted to me by your firm*, there is no written technical information relevant to the terms of my consulting agreement. *Also, I have had no conversations with your firm or anyone else related to this case that involved any information other than acknowledgment of the existence of this case,* so there are no orally transmitted technical details that fall within the scope of confidentiality.

*See* Defendant's Response [#137], Exh. D (emphasis added). Based on this record, the Plaintiffs have not met their burden of proof to identify any specific information nor have Plaintiffs demonstrated the confidentiality of any information to which Dr. Lightman was allegedly exposed. Accordingly, the Court cannot find there is a conflict of interest.

Further, the balancing of competing policy objectives supports finding disqualification is not warranted. The policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. The main policy objectives militating against disqualification are ensuring parties have access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling. Courts have also expressed concern that if experts are too easily subjected to disqualification, unscrupulous attorneys and clients may attempt to create an inexpensive relationship with potentially harmful experts solely to keep them from the opposing party. *English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F.Supp. 1498, 1504 -1505 (D.Colo. 1993) (internal citations omitted).

In this case, it should be noted only six individuals meet the criteria of an expert witness in the field of laser sintering technology who are not affiliated with Plaintiffs. *See* Supplemental Filing of Defendant to Plaintiffs' Motion to Disqualify Dr. Allan J. Lightman in Notice of Filing Declaration of Michael C. Shellabear, Ph.D. on the Limited Number of Experts Available [#147] ¶ 10. The Court is aware it is not unusual for opposing experts in narrow fields of specialty to have had exposure to each others work or even to have worked together in the past. That is a fact of life where there is a limited number of experts in a given field. In such situations, the experts who testify at trial will be in a position of disputing the findings or conclusions of those with which they have

had prior or ongoing relationships. However, that is what expert witnesses do at trial; and cross-examination is designed to address these possible biases.

In sum, the Court finds Plaintiffs have not met their burden of establishing Dr. Lightman should be disqualified and thus the Court perceives no need to exercise the extreme remedy of disqualifying Dr. Lightman. However, because of the factual circumstances and in the interest of fair play, the Court will not permit Defendants to establish before the jury that Dr. Lightman has previously worked for 3D Systems or that Dr. Lightman has previously worked as a consultant in the field of laser sintering technology without appropriate notice and further order of this Court.

ORDERED:

Plaintiffs' Motion to Disqualify Defendant's Expert Witness Dr. Allan J. Lightman [#121] is DENIED.

The Parties shall not mention Dr. Lightman's previous work history for 3D Systems, without appropriate authorization of this Court.

The Motion of Plaintiffs for Leave to File Reply in Support of Motion to Disqualify Defendant's Witness Dr. Allan J. Lightman in Excess of Page Limit [#149] is GRANTED.

SIGNED this the 2nd day of February 2004.

SAM SPARKS
UNITED STATES DISTRICT JUDGE